**EXHIBIT A**

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA

-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                                                     **NOTICE OF MOTION**

      -against-

                                                     SCI No. 2400N/09

JOSE DEJESUS GRANADOS,                        Refer to: Hon. James McCormack

                           Defendant.

-----------------------------------------------------------X

       PLEASE TAKE NOTICE that upon the annexed affirmation of Thomas F. Liotti.,

attorney for the defendant, dated April 16, 2015, together with the affidavits of Jose DeJesus

Granados, sworn to April 16, 2015, the affidavit of Lucia Tobon, sworn to April 13, 2015, the

affidavit of Leyda Cruz, sworn to April 13, 2015 and upon all prior proceedings heretofore had

herein, the undersigned will move this Court, Nassau County Court, 262 Old Country Road,

Mineola, New York 11501 on May 11, 2015 at 9:30 o'clock in the forenoon thereof, or as soon

thereafter as counsel may be heard for an order as follows:

       1.       Why an order, pursuant to C.P.L. §440.10(1)(h) should not be made and entered

herein vacating the conviction of Jose DeJesus Granados and dismissing the conviction or,

alternatively, ordering a new trial for him in all respects; and

       2.       For such other and further relief as may seem just and proper to the Court.

       PLEASE TAKE FURTHER NOTICE, that the defendant, Jose DeJesus Granados,

reserves his right, pursuant to C.P.L. §255.20(2), to make all further motions predicated upon the

1

answer to the instant motion.

Dated: Garden City, New York
   April 16, 2015

           THOMAS F. LIOTTI, ESQ.
           LAW OFFICES OF THOMAS F. LIOTTI
           Attorneys for Defendant
           600 Old Country Road, Suite 530
           Garden City, New York  11530
           (516) 794-4700


TO:  MADELINE SINGAS
    ACTING DISTRICT ATTORNEY, NASSAU COUNTY
    262 Old Country Road
    Mineola, New York 11501

2

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
----------------------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK,

                    -against-                          AFFIRMATION IN SUPPORT

JOSE DEJESUS GRANADOS,                                 SCI No. 2400N/09

                              Defendant.
----------------------------------------------------------------X

   THOMAS F. LIOTTI, ESQ., an attorney duly admitted to practice in the courts of the

State of New York, does hereby affirm the following under penalties of perjury:

   1. I am the attorney for the above named defendant, and as such I am fully familiar

with the facts of this case and submit this affirmation in support of the defendant's Motion to

vacate his judgments of conviction and dismissing the convictions, or, in the alternative, ordering

a new trial. I am not aware of any prior CPL §440 motions having been filed or if any direct

appeals or writs of error *coram nobis* and *habeas corpus* having been previously filed by this

defendant *pro se* or by any other attorney.

   2. Upon information and belief, the defendant is currently incarcerated in the Nassau

County Correctional Center under Case No. 15-MJ-00228(SIL) where he has been in custody

since March 12, 2015 and where it is alleged that he is an alien who was previously denied

admission and deported but who is alleged to have returned to the United States without

permission in violation of 8 *U.S.C.* §§1326(a) and 1326(b). A copy of the federal felony

complaint is attached as Exhibit "A". The defendant has not yet been indicted. I am representing

him on those federal charges as well.

   3. The defendant's date of birth is December 25, 1975 and his native country is El

1

Salvador. He is not a United States citizen.

4.     I have been retained to represent the defendant in regard to the vacatur of his
pleas, sentence and convictions here in Nassau County, New York. I have also been retained to
represent him with respect to the federal charges against him but not his immigration matters
which will follow. Accordingly, I have inspected his Court files in the County Court Clerk's
Office. Defendant was previously convicted of felony charges in New York and is herewith
moving to vacate those pleas and sentences. He has not made application to do so since the
Supreme Court of the United States' holding in *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010).
That case provided that a failure to advise a defendant of the collateral consequences of his plea
including deportation is ineffective, thus violating a defendant's Sixth Amendment rights under
the Constitution of the United States.

5.     Upon information and belief, the defendant-movant has a family here in the United
States including wife, Leyda Carolina Cruz, a permanent resident and Valeria Emely Granados, a
child with his wife, age 13. On September 16, 2014 the movant initiated, *pro se*, a divorce action
against his wife in Nassau County Supreme Court, Index No. 2014-202726. The movant's wife
and daughter reside in Carle Place, New York. The complaining witness Michelle Reyes is the
daughter of the movant's wife's sister. It is contended that the alleged victim was put up to
fabricating the story by the movant's wife and her sister because the movant has been estranged
from his wife for eight to nine years.

6.     The question in this case is whether his pleas and sentences here in New York
either because they were entered in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969) and not
in conformance with our State standard of *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61

(1983) and secondly, the defendant was not advised of the collateral consequences of his pleas and sentences here in New York and whether *Padilla, supra* should be given retroactive effect in this case.

7.      Prior to November 17, 1990 the United States law would allow someone such as the defendant to become a permanent resident if he had lived in the United States for seven years. In 1990 §212(c) of the Nationality Act (INA) prohibited a long standing permanent resident to have a legal status here if convicted of an aggravated felony and having served five (5) years in jail. The defendant was never apprised of his eligibility to apply for permanent residence or how subsequent enactments such as the Anti-terrorism and Effective Death Penalty Act of April 24, 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 have made re-entry into the United States and permanent legal residence here nearly impossible to achieve. See also, *Rankine v. Reno*, 319 F.3d 93 (2003); *Vartelas v. Holder*, 132 S.Ct. 1479 (2012) and *U.S. v. Gill*, 748 F.3d 491 (2014).

8.      The defendant has been incarcerated for a month and has a severe economic hardship warranting a vacatur of these charges and a dismissal of them. See an Editorial, Locked Away in Immigration Jails, The New York Times, February 24, 2014 at A18 attached hereto as Exhibit "B". See also, John Eligor and Damien Cave, Paying Price, 16 Years Later for an Illegal Entry, The New York Times, March 20, 2014 at 17 and 18.

9.      The defendant is now claiming actual innocense; a violation of his Constitutional rights and a necessity defense in that our failed immigration policies force millions to live and work under the radar in order to survive economically.

10.      The defendant's prior criminal history now the subject of this motion involves

3

pleas of guilty to two E felonies before Justice McCormack on November 12, 2009 (a copy of

those minutes are attached as Exhibit "C") with sentencing thereafter on January 9, 2010 (a copy

of those minutes are attached as Exhibit "D"). The defendant's original docket number on the

felony complaint was 15998/2009. The Judge was Hon. James P. McCormack. A copy of the

defendant's certificate of disposition is attached hereto as Exhibit "E". The defendant was

sentenced to time served (he was arrested on June 22, 2009); ten years of probation; an order of

protection was entered; the defendant was determined to be a Level One Sex Offender and fully

paid $1,425 for a Crime Victim's Assistance Fee; DNA registration; a surcharge and Sex Offender

Registration of $1,050.00. The defendant was then deported.

11.     He was represented by counsel but not given all of his *Boykin* rights or advised of

the collateral consequences of his plea.

12.     Since 1995 the CPL has provided that trial judges should advise an immigrant

defendant of the possible deportation consequences of the plea. That was not done here in either

of the defendant's two prior felony cases. On November 19, 2013 the New York Court of

Appeals decided *People v. Peque*, 22 N.Y.3d 168, 980 N.Y.S.2d 280 (2013). The five Judge

majority of the Court held that trial judges must caution non-citizen defendants that they may be

deported before allowing them to plead guilty to a felony. Chief Judge Lippman and Judge Rivera

held that the remedy of vacating the pleas was appropriate since due process rights were involved.

See also, Spiros A. Tsimbinos, New York Court of Appeals Deals with Consequences of Padilla

Decisions, NYSBA Criminal law Newsletter, Spring, 2014, vol. 12, no. 2 at 6 and 7.

13.     The defendant also waived his right to appeal, not "knowingly, voluntarily or

intelligently." Thus he did not perfect any appeals.

4

14.     *Padilla* was not given retroactive effect in *People v. Baret*, 99 A.D.3d 408, 409

(1st Dept. 2012), 23 N.Y.2d 777, 992 N.Y.S.2d 738 (2015).  See also, Sheila L. Baritista,

Retroactivity of Padilla v. Kentucky in New York State, NYSBA New York Criminal Law

Newsletter, Spring, 2014, vol. 12, no. 2 at 8 and 9 (attached hereto as Exhibit "F").  It appears

that the *Baret* case may now be in direct appeal to the Supreme Court of the United States.

15.     The failure to adequately advise a defendant of the fact that a plea of guilty would

subject him to removal from the United States is violative of the rule established in *Boykin v.*

*Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969); see also, *U.S. v. Udeagu*, 110 F.R.D. 172 (1986)

where it was determined that there are certain fundamental rights that every person accused of a

crime has and which may only be waived "knowingly, voluntarily and intelligently".  See also,

*People v. Woodard*, 188 Misc.2d 7 (2002).  In *Udeagu, supra* represented by this defense

counsel, Judge Jack Weinstein found that the defendant had not been apprised of his post-release

guidelines and vacated the plea.

16.     Mr. Granados was denied many constitutional rights during these proceedings.

The most important is effective assistance of competent counsel.  Every defendant who faces

criminal charges is entitled to effective assistance of competent counsel.  See, *McMann v.*

*Richardson*, 397 U.S. 759, 771 (1970), see also, *Reece v. Georgia*, 350 U.S. 85, 90 (1955),

*Powell v. Alabama*, 287 U.S. 45 (1932).  *McMann* defines effective assistance of counsel to be

that which falls within the range of competence demanded of attorneys in criminal cases.

However, the *McMann* standard is only one-half of the evaluation of the claim of effective

assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984) the Court developed a

two prong standard for assessing the defendant's claim of ineffective assistance of counsel.  The

first prong applied the *McMann* test, requiring the defendant to prove that "counsel's

representation fell below the objective standard of reasonableness." *Id.* at 688. The second prong

requires that the defendant show "there is a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under

Article I, Section 6 of the New York Constitution, the State of New York has developed a

slightly different test for ineffective assistance of counsel from that employed by the Supreme

Court in *Strickland v. Washington.* See, *People v. Claudio*, 629 N.E.2d 384, 386 ("nonetheless,

the basic purposes and constitutional interests at stake under both constitutional guarantees of an

adequate legal defense in a criminal case are the same. (1) the preservation of our unique

adversarial system of criminal justice, the underlying supposition of which 'is that partisan activity

on both sides of the case will best promote the ultimate objective that the guilty be convicted and

the innocent go free' *United States v. Chronic*, 466 U.S. 648, 655, 104 S.Ct. 2039, 2045,

L.Ed.2d 657 quoting from *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45

L.Ed.2d 593 and (2) the corrective necessity to provide a defendant with an advocate sufficiently

competent to ensure the fairness of the adversarial criminal process. *United States v. Morrison*,

449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.ed.2d 564.") See also, *Jenkins v. Coombe*, 821 F.2d

158 (1987) where nominal representation was sufficient to set aside a conviction and *Lopez v.

Scully*, 58 F.3d 38 (2d Cir.1995) where defense counsel ceased to advocate and the conviction

was overturned. This defense counsel represented both defendants. This defense also represented

*Jenkins* and *Lopez*, *supra*.

17.    Ineffective assistance of counsel may "render a guilty plea involuntary, and hence

invalid." *Ventura v. Meachum*, 957 F.2d. 1048, 1058 (2d. Cir. 1992). See, *United States v.

6

*George*, 869 F.2d. 333, 335-336 (7th Cir. 1989) (An "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily.); *see also Downs-Morgan v. United States*, 765. F.2d. 1534 (11th Cir. 1985).  Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.  *Hill v. Lockhart,* 474 U.S. 52 (1985).  Mr. Jose DeJesus Granados did not have the benefit of effective assistance of counsel during his plea and sentencing.  His legal representation was definitely not "within the range of competence demanded of attorneys of criminal cases" and granted to all people by the Sixth Amendment.  See, *McMann* at 771.  It also did not meet the initial prong of the *Baldi* test for effective assistance of counsel.  See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).

18.     It is antithetical that if a lawyer violates his ethical duty to his client that he has provided effective assistance of counsel in his cause.  The initial prong of the *Baldi* test for effective assistance of counsel requires that counsel advocate in a partisan manner on behalf of Mr. Granados.  This did not happen.  While representing Mr. Granados his former attorneys never advised him about the collateral consequences of deportation.  As a result of this failure they failed to meet the initial prong of the *Baldi* case.

19.     Mr. Granados's former counselor also did not meet the second *Baldi* prong of effective assistance of counsel during his plea negotiations because his counsel did not provide him with sufficiently competent representation to ensure fairness.  See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).  Mr. Granados's counsel was clearly not

7

sufficiently competent to provide him with <u>fairness</u> in the adversarial criminal process nor did he

even attempt to advocate zealously. They effectively forced Mr. Granados to take the pleas in

order to dispose of the case expeditiously. This conduct violates multiple disciplinary rules and

ethical codes of conduct. *See* DR 1-102 and 5-105(B).

20.     It is very clear from the plea minutes attached to the defendant's motion herein

that the defendant did not "knowingly, voluntarily and intelligently" admit to a prior felony

conviction since minutes of it were not available, defense counsel failed to do a proper

investigation and the Court did not make a proper inquiry.

21.     Mr. Granados's pleas should be rendered involuntary because they did not meet

the standard set forth in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005) (a valid guilty plea requires

that the defendant have a complete understanding of the charges against him or her). A guilty

plea will be sustained in the absence of any factual recitation of the underlying circumstances of

the crime if the pleading defendant is represented by *able* and active counsel, and there is no

suggestion in the record that the plea was improvident or baseless. *People v. Nixon*, 21 NY2d.

338, 350 (NY 1967); *People v. Doceti*, 175 A.D.2d. 256 (2d. Dept. 1991); *cf. People v. Seeber*, 4

NY3d. 780 (NY 2005) (an explicit admission of guilt as to every element of the crime does not

have to be incorporated into the allocution of every valid plea). However, Mr. Granados did not

have able or effective counsel because he did not fully inform him of the effect of his guilty pleas,

specifically that he would be subject to deportation. (See Granados affidavit annexed hereto)

22.     The guilty plea tendered by the defendant was not knowingly, voluntarily and

intelligently made in that his attorney did not apprise him of the probability that he could be

deported, this constitutes ineffective assistance of counsel, *per se.*

8

23.     Ultimately, what we are faced with in this situation is a non-lawyer, with a limited understanding of the law in general and an even more limited understanding of New York and immigration law, who, on the advice of counsel, simply pled guilty with absolutely no comprehension of the consequences of that plea, because his attorney did not advise him of same. The defendant's guilty plea is violative of the rule established in *Strickland, Boykin* and *Padilla* and should be given back. The defendant has less than an American high school education from El Salvador with no understanding of our culture, language or system of justice.

24.     On March 31, 2010 the Supreme Court handed down a 7-2 decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). One of the cases relied upon in the instant CPL §440 motion, because Mr. Granados's former attorneys failed completely to advise their client about the effect a conviction for statutory rape with a level one sexual offender registration and ten (10) years probation would have on his ability to remain in this Country.

25.     In *Padilla*, the Court held that a defense lawyer failed to provide his non-citizen client effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) when he did not warn him that he was almost certain to be deported if he pled guilty. It was the first time the Court applied the *Strickland* standard to a lawyer's failure to advise a client about a consequence of conviction that is not part of the sentence imposed by the Court.

26.     Defense counsels' lack of advisement with respect to deportation falls squarely under the *Strickland* ineffective assistance of counsel standard. A review of Mr. Granados's plea minutes makes clear that he was never advised, on the record, about <u>any</u> collateral consequences resulting from a guilty plea. As a result, Mr. Granados's removal status falls squarely under the decision in *Padilla*.

9

27.     Had Mr. Granados been properly advised rather than simply being rushed to the slaughter, he certainly would have sought out other options including going to trial. As it stands, he is facing more jail and facing removal from the United States.

28.     The People have historically also misread or misunderstood the holdings in *Strickland v. Washington*, 466 U.S. 668 (1984) and its state equivalent, *People v. Baldi*, 54 N.Y.2d 137, 444 N.Y.S.2d 893 (1981) in light of *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and *Padilla v. Kentucky*, 130 S.Ct.1473 (2010). *Jenkins* provides that merely nominal representation may be ineffective so that the two prong *Strickland, supra* test of a departure from customary practice or standards within the community that made a difference in the outcome has been supplemented by *Jenkins* and what is considered to now be the *per se* rule on collateral consequences.

29.     *Jenkins* and *Padilla* also change the hereto ruling of the New York Court of Appeals in *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61, 459 N.E.2d 170 (1983) which had held that there is "no catechism of rights of which a defendant must be afforded" at the time of his plea. Now the catechism exists.

30.     Furthermore, it does not appear that a Spanish interpreter was properly sworn or even certified and at Mr. Granados's plea and sentencing hearings.

31.     At the time of his plea on November 12, 2009 the defendant was prosecuted by an SCI not a grand jury indictment. The defendant had no prior criminal record. He was not properly advised of his right to have the case presented to a grand jury where he could testify in his own behalf. See CPL §190.50. He was not informed of the role of the grand jury or that he could testify before it.

10

32.     The defendant was not informed of the fact that the complainant was the only witness against him and that there was no rape kit evidence or DNA to corroborate the so-called victim's version of the event. See, 2004, Co-Author of <u>DNA: Forensic and Legal Applications,</u> published by John Wiley & Sons, Inc., Hoboken, New Jersey.

33.     Defense counsel did not advise his client of his right to go to trial or of his right to cross-examine the complainant. See, Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. Leah Blumberg, <u>Cross-Examining Children in Sexual Abuse Cases</u>, The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18; Liotti, Thomas F., <u>The Cross Examination of Child Witnesses</u>, Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21; Liotti, Thomas F., <u>The Cross-Examination of Experts in Civil and Criminal Cases</u>, The Attorney of Nassau County, September, 2005 at 3, 10 and 13 and Liotti, Thomas F. and Skelos, Peter B., <u>Credibility Questions for Prosecution Experts On Syndromes in Cases of Rape, Child Abuse</u>, Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 and 7.

34.     There is no record of a supporting deposition or even of what the People were prepared to prove. There is no medical evidence indicated. Clearly the defendant's best defense of which he was not advised, was to deny the charges and subject the fifteen year old defendant to direct and cross-examination.

35.     The defendant pled guilty to two E felonies and gained literally nothing by pleading guilty. Any competent defense counsel would have advised him to go to trial.

36.     By pleading guilty to these charges, the defendant was subjected to jail (time served), probation; Level One Sex Offender registration requirements and mandatory deportation.

11

His attorney at the time consented to the Level One designation without a hearing. This ineffective assistance of counsel is remarkable but made even more so because the defendant showed literally no understanding of the plea and its collateral consequences.

37.     The Court's perfunctory inquiry of the defendant and his allocution merely consisted of "yes" and "no" responses which did not verify that the defendant understood the nature and consequences of the plea or that he was entering it "knowingly, voluntarily and intelligently" especially since his attorney stood next to him and told him what to say.

38.     On the issue of deportation the Court inquired:

> The Court:      Do you understand that by pleading guilty today in
>                 this case, your plea may result in deportation or
>                 denial of naturalization?
>
> Defendant:      Yes.

Record of November 12, 2009 at 5, lines 15-18.

39.     The Court and defense counsel may not have been aware of it at the time but aside from the due economic conditions in El Salvador to which the defendant would be returned, the country is in a perpetual state of civil war. It is also engulfed by the highest crime rate in Central America including murder and gangs who threatened this defendant with death if he did not pay them.

40.     The defendant was not aware of the statutory rape laws in this country and the complaining witness stalked him and repeatedly attempted to seduce him and showed him pictures of numerous naked men with whom she claimed to have had sexual relations.

41.     Defense counsel did not file a §190.50 notice or retain an investigator. Defense counsel did not visit the scene or speak to any witnesses or even the police concerning his client.

12

He did not investigate whether there was any evidence of the alleged victim fabricating or of her motives to lie.

42.       Neither the Court nor defense counsel demonstrated an understanding of deportation or that immigration counsel had even been consulted.

WHEREFORE, it is for the aforementioned reasons that the defendant moves this Court to grant the relief requested giving Mr. Granados his pleas back and for such other and further relief as to this Court may seem just and proper.

Dated: Garden City, New York
         April /6th, 2015

THOMAS F. LIOTTI

13

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA

------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

<u>AFFIDAVIT</u>

   -against-

SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

               Defendant.

------------------------------------------------------------X

STATE OF NEW YORK)
              )SS:
COUNTY OF NASSAU )


      JOSE DEJESUS GRANADOS, being duly sworn deposes and states the following to be true under the penalties of perjury:

      1.     I am the defendant in this matter where I am in jail at the Nassau County Correctional Facility due to my alleged wrongful re-entry into the United States following my involuntary deportation in 2010 which came after my pleas and convictions to the matters referred to herein.

      2.     I am innocent of the charges referred to herein but unfortunately had a lawyer who did not properly advocate for me.

      3.     I did not understand what was transpiring, my rights and the collateral consequences of my plea and sentence.

1

4.      I was deported to my native country of El Salvador which is in a constant state of civil war and engulfed by gangs.  I came to this country to escape from El Salvador where my life was threatened if I did not join the gangs.  The gangs there told me that they would kill me and my family members if I did not join them.  I told my attorney at the time, Mr. Thomas McCullough of these facts and that I should receive political asylum here but he did not protect me.  The gangs were following me and two of my cousins after I had been deported.  I came back to the United States to escape.  My two cousins were killed by the gangs.

5.      When I waived my rights to have my case presented to the grand jury, I had no idea what that meant.

6.      I am not a violent person or a criminal.  I believe that all women should be treated with the utmost respect regardless of their age.

7.      The police attributed an oral statement to me which I never made, to wit: "The defendant admits to oral and sexual intercourse with the victim."

8.      I was not given an opportunity to testify in the grand jury; I had no prior criminal record; there was no DNA or eyewitnesses; there was a single date involving alleged crimes by me, namely January 3, 2009.  There were no lab or medical reports and there was a lengthy delay in the "cry out" by the victim of many months.  I never even saw a supporting deposition by her. In fact I was never really accused by Michelle Reyes, the fifteen year old at the time.  Instead, I was wrongfully accused by my wife's sister.

9.      My attorney at the time was paid for by me but later was assigned to represent me on appeal pursuant to County Law §18-b.  Yet he took no appeal and did not file any papers on my behalf.

2

10.     At the time of my plea, the Spanish interpreter was not translating.  At the time of

my sentence there was no Spanish interpreter even present.

_____
JOSE DEJESUS GRANADOS

Sworn to before me this

16th day of April, 2015

_____
Notary Public

THOMAS F. LIOTTI
Notary Public, State of New York
No. 02LI6030933
Qualified in Nassau County
Commission Expires Sept. 23, 20 _18_

3

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
-----------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                            AFFIDAVIT

     -against-                            SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

                    Defendant.
-----------------------------------------------------------X

STATE OF NEW YORK)
                )SS:
COUNTY OF NASSAU )

      LUCIA TOBON, being duly sworn deposes and states the following to be true under the penalties of perjury:

      1.    I am a friend of the defendant in this matter and speak both Spanish and English. I am a United States citizen. I have lived in the United States since 1988. I was married to the defendant's cousin.

      2.    I am acting as an interpreter for the defendant and his current lawyer, Thomas F. Liotti.

      3.    I have reviewed the plea and sentencing minutes for the defendant's prior case. I am certain that he was not fully advised of his rights by his lawyer or interpreter at the time. There were many words such as "naturalization" and procedures which he did not and does not understand.

                                      LUCIA TOBON

Sworn to before me this
13th day of April, 2015

      Notary Public

JEAN M. LAGRASTA
Notary Public, State of New York
No. 30-4669304
Qualified in Nassau County
Commission Expires Oct. 30, 2018

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
--------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                          <u>AFFIDAVIT</u>

        -against-                         SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

                        Defendant.
--------------------------------------------------------------X

STATE OF NEW YORK)
                 )SS:
COUNTY OF NASSAU )

        LEYDA CRUZ, being duly sworn deposes and states the following to be true under the

penalties of perjury:

        1.      I am the wife of the defendant herein and I reside at 467 Mineola Avenue, Carle

Place, New York and I am also a permanent resident of the United States of America.

        2.      My sister is Mayra Cruz who is the mother of Michelle Reyes, the alleged victim in

the underlying statutory rape case.  Michelle Reyes is my niece.

        3.      I have been advised by my sister that my niece, Michelle Reyes, has been

hospitalized at North Shore University Hospital and diagnosed as a paranoid schizophrenic with

hallucinations for which she takes medication.  She has also been diagnosed as bi-polar.

        4.      My sister also told me that sometime after the alleged rape on January 3, 2009

when it was reported to the police by her because my husband would not marry her daughter, my

niece was taken to a medical doctor who determined that she was still a virgin.  She also told me

that a Detective Trujillo had investigated the case and was aware of the medical doctor's report

1



but did not disclose it to the defense.

5.      I am aware that my niece was stalking my husband. He informed me of that fact. I reprimanded my niece for doing that and my sister and I argued about it to the point where we have not spoken since.

6.      My husband is a good father and was a good provider. I do not believe that he had sex with my niece. He is a good man and I wish him only good will as he does me.

7.      My niece sent text messages to a lot of men. I believe that she fabricated this story as well as others.

8.      I am giving this affidavit to my husband's attorney by my own free will because it is the truth.

_____
LEYDA CRUZ

Sworn to before me this

/3rd day of April, 2015

_____
Notary Public

JEAN M. LAGRASTA
Notary Public, State of New York
No. 30-4689384
Qualified in Nassau County
Commission Expires Oct. 31, 20/8

2

EXHIBIT A

NB:KDE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOSE DE JESUS GRANADOS,
       also known as
       "Jose De Jesus Granados Benitez," and
       "Jose Benitez,"

            Defendant.

- - - - - - - - - - - - -X

**C O M P L A I N T**

(8 U.S.C. §§ 1326(a) and
1326(b)(2))

EASTERN DISTRICT OF NEW YORK, SS:

       DENNIS CARROLL, being duly sworn, deposes and states that he is a

Deportation Officer with the Department of Homeland Security, United States Immigration and

Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

       On or about March 12, 2015, within the Eastern District of New York, the

defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez"

and "Jose Benitez," being an alien who had previously been arrested and convicted of an

aggravated felony, and was thereafter excluded and removed from the United States, and who had

not made a re-application for admission to the United States to which the Secretary of the

Department of Homeland Security, successor to the Attorney General of the United States, had

expressly consented, was found in the United States.

       (Title 8, United States Code, Sections 1326(a) and 1326(b)(2))

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Deportation Officer with ICE and have been involved in the investigation of numerous cases involving the illegal reentry of aliens.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the ICE investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2.      On March 12, 2015, the defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez" and "Jose Benitez," was arrested by ICE officers.

3.      ICE officials had run a criminal history report and found that the defendant, a citizen of El Salvador, had previously been removed from the United States on or about November 9, 2010.

4.      On November 12, 2009, the defendant was convicted in Nassau County Court for Rape in the Third Degree, in violation of New York Penal Law § 130.25(2), and Criminal Sexual Act in the Third Degree, in violation of New York Penal Law § 130.40(2), both aggravated felony offenses.   The defendant was sentenced to ten years' probation for both convictions.

5.      An ICE official determined that the defendant's fingerprints taken from his March 12, 2015 apprehension match those associated with his November 9, 2010 removal. Further, these fingerprints were submitted into the Integrated Automated Fingerprint

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

Identification System, which indicated that the fingerprints correspond to a unique FBI number that is associated with the defendant's November 9, 2010 removal and November 12, 2009 convictions.[2]

6.      A search of immigration records has revealed that there exists no request by the defendant for permission from either the United States Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States after removal.

WHEREFORE, your deponent respectfully requests that the defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez" and "Jose Benitez," be dealt with according to law.

DENNIS CARROLL
Deportation Officer
United States Immigration and Customs
Enforcement

Sworn to before me this
12nd day of March, 2015

THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

---

[2]      Certified copies and comparisons of the defendant's fingerprint cards from the March 12, 2015, November 9, 2010, and November 12, 2009 incidents are currently pending.

EXHIBIT B

Case 2:16-cv-02212-JFB   Document 1-1   Filed 05/03/16   Page 28 of 57 PageID #: 246

# The New York Times

**ARTHUR OCHS SULZBERGER JR.,** *Publisher, Chairman*

*Founded in 1851*

**ADOLPH S. OCHS**
*Publisher 1896-1935*

**ARTHUR HAYS SULZBERGER**
*Publisher 1935-1961*

**ORVIL E. DRYFOOS**
*Publisher 1961-1963*

**ARTHUR OCHS SULZBERGER**
*Publisher 1963-1992*

**JILL ABRAMSON,** *Executive Editor*
**DEAN BAQUET,** *Managing Editor*
**TOM BODKIN,** *Deputy Managing Editor*
**JANET ELDER,** *Deputy Managing Editor*
**LAWRENCE INGRASSIA,** *Deputy Managing Editor*

**SUSAN CHIRA,** *Assistant Managing Editor*
**REBECCA L. CORBETT,** *Assistant Managing Editor*
**IAN FISHER,** *Assistant Managing Editor*
**MICHELE McNALLY,** *Assistant Managing Editor*
**MATTHEW PURDY,** *Assistant Managing Editor*

**ANDREW ROSENTHAL,** *Editorial Page Editor*
**TRISH HALL,** *Deputy Editorial Page Editor*
**TERRY TANG,** *Deputy Editorial Page Editor*

**MARK THOMPSON,** *Chief Executive Officer*
**MICHAEL GOLDEN,** *Vice Chairman*
**JAMES M. FOLLO,** *Chief Financial Officer*
**KENNETH A. RICHIERI,** *General Counsel*
**DENISE F. WARREN,** *Executive V.P., Digital Products*
**ROLAND A. CAPUTO,** *Executive V.P., Print Products*
**MEREDITH KOPIT LEVIEN,** *Executive V.P., Advertising*

**YASMIN NAMINI,** *Chief Consumer Officer*
**MARC FRONS,** *Chief Information Officer*
**WILLIAM T. BARDEEN,** *Senior Vice President*
**THOMAS K. CARLEY,** *Senior Vice President*
**TERRY L. HAYES,** *Senior Vice President*
**R. ANTHONY BENTEN,** *Controller*
**LAURENA L. EMHOFF,** *Treasurer*
**DIANE BRAYTON,** *Secretary*

## Locked Away in Immigration Jails

You can find examples of federal detainees held inexplicably for years without criminal charges or bond hearings much closer to home than Guantánamo Bay, Cuba.

In Southern Florida, five Sri Lankan men were held without bond for more than three years as they sought asylum, saying they had been promised leniency in return for aiding a federal investigation of the smuggling ring that brought them into the country illegally. As The Times reported recently, the average stay for an immigrant in federal custody is a month.

In Springfield, Mass., a federal district judge in January ordered a bond hearing for a Jamaican immigrant and military veteran who had been held in Massachusetts jails, fighting deportation, for more than 15 months without ever receiving a bond hearing. The judge, Michael Ponsor, this month granted class-action status to all immigration detainees in Massachusetts who have been held without bond hearings for six months or more.

Last April, the United States Court of Appeals for the Ninth Circuit, in California, upheld a lower court's order requiring the government to grant bond hearings to immigrants who have been held six months without such a hearing. The American Civil Liberties Union, which had brought that class-action lawsuit, said the decision would potentially allow thousands of people to get a day in court across the Ninth Circuit, where an estimated one-fourth of all immigration detainees are held each year.

These rulings reflect the growing understanding — in the federal courts, if not at Immigration and Customs Enforcement — that the constitutional guarantee of due process demands that a detainee have a hearing within a "reasonable" time and that more than six months is not reasonable by any definition.

The Obama administration, in expanding the surge of immigration enforcement begun under President George W. Bush, has detained and deported nearly two million people. The overwhelming majority are dealt with swiftly and summarily, without ever receiving a hearing before an immigration judge. Others who challenge their deportation, like the Sri Lankans, wait for years to get a resolution of their cases. Still others, lacking aggressive lawyers, languish forgotten in federal lockups across the country.

Automatically granting bond hearings to immigration detainees, many of whom pose no threat, is the least the government can do. This does not mean their release is inevitable or even likely. And it doesn't mean that dangerous criminals would be let loose on the streets.

President Obama, who has repeatedly promised to do more to fix the broken immigration laws, on his own if necessary, can ensure that the six-month rule is adopted in immigration courts nationwide. Beyond granting bond hearings, the government should use more humane and cost-effective alternatives to detention, like ankle bracelets and home monitoring. Locking people up indefinitely is not a path to a more rational immigration system.

EXHIBIT C

1    SUPREME COURT OF THE STATE OF NEW YORK
            COUNTY OF NASSAU :   PART 48

2    ----------------------------------------x
    THE PEOPLE OF THE STATE OF NEW YORK

3

4

           -against-                 SCI No. 2400N/09

5

6    JOSE GRANADOS,

7                     DEFENDANT.

    ----------------------------------------x

8                 Mineola, New York
                 November 12, 2009

9

10   B E F O R E:   HON. JAMES P. McCORMACK
                 Acting Supreme Court Justice

11

12

    A P P E A R A N C E S:

13

14           HON. KATHLEEN RICE
           District Attorney of Nassau County

15           BY:  JOSEPH LaROCCA, ESQ.
           Assistant District Attorney

16           For the People

17

18           THOMAS McKELLAR, ESQ.
           37-06 82nd Street

19           Jackson Heights, New York  11372
           Attorney for Defendant

20

21   ALSO PRESENT:  Mercedes Lokich
                Official Spanish Interpreter

22

23               P L E A

24

25           Kathi A. Fedden
           Official Court Reporter

1           THE CLERK:   People of the State of New York

2    versus Jose Granados.

3           Appearances please, Counsel.

4           MR. McKELLAR:   Thomas McKellar, 37-06 82nd

5    Street, Jackson Heights, New York.

6           MR. LaROCCA:   ADA Joe LaRocca for the People.

7    Good morning.

8           THE COURT:   Good morning.

9           THE CLERK:   Note the presence of the Spanish

10   Language interpreter.   Madam interpreter, please put

11   your appearance on the record.

12          THE INTERPRETER:   Mercedes Lokich, Spanish

13   interpreter.

14          THE COURT:   Good morning, Mercedes.

15          THE CLERK:   You are Jose Granados?

16          THE DEFENDANT:   Yes.

17          THE CLERK:   I have been instructed by the

18   Honorable James McCormack, sitting as a local criminal

19   court judge, to advise you that you have the right to a

20   felony hearing on the charges contained in this felony

21   complaint.   Do you waive the right to that felony

22   examination and consent to this case being held for the

23   action of the grand jury?

24          THE DEFENDANT:   Yes.

25          THE COURT:   All of you can have a seat.

1          MR. McKELLAR:  Thank you, Judge.

2          THE CLERK:  The District Attorney of Nassau

3    County has filed a Superior Court Information against

4    you.  Under the Constitution of the State of New York,

5    you have the right to be prosecuted by indictment.  Do

6    you wish to waive that right and proceed by Superior

7    Court Information?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The waiver is approved.

10         THE CLERK:  The District Attorney of Nassau

11   County has filed Superior Court Information number 2400N

12   of 2009 for the crimes of rape in the third degree and

13   criminal sexual act in the third degree.

14         You are advised of your right to counsel

15   throughout all stages of these proceedings and you are

16   also advised that if you have any prior felony

17   convictions, you may be subject to a mandatory term of

18   imprisonment.  How do you plead, guilty or not guilty?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Before we affirm your plea,

21   Mr. Granados, People do you want to be heard?

22         MR. LaROCCA:  Yes, thank you, your Honor.

23         Your Honor, the defendant is charged under the

24   Superior Court Information with one count of rape in the

25   third degree and one count of criminal sexual act in the

Kathi A. Fedden, Sr. Court Reporter

Proceedings                                                4

1        third degree, both E felonies.  The People anticipate

2        pleas of guilty to both those charges in satisfaction of

3        the charges under Docket 15998 of 2009.

4                    In return for those pleas, the People

5        recommend a probationary sentence, a stay away order of

6        protection on behalf of the minor complainant in this

7        case, the appropriate adjudication for the Sex Offender

8        Registry Act and a waiver of the defendant's right to

9        appeal.

10                   The plea and the proposed sentence have been

11       discussed with the complainant and the family and

12       they're satisfied and willing to go forward under these

13       circumstances.  There have been no other promises.  We

14       recommend it as being in the interest of justice.

15                   THE COURT:  Mr. McKellar.

16                   MR. McKELLAR:  Judge, the defense joins in all

17       respects and my client has authorized me to enter a plea

18       of guilty to both counts of the Superior Court

19       Information.

20                   (Whereupon, the defendant, Jose Granados, was

21       duly sworn by the Clerk of the Court.)

22                   THE COURT:  I'm going to ask you a series of

23       questions, Mr. Granados.  If there is anything you do

24       not understand, please tell me.

25                   If at any point in time you need to speak to

1    Mr. McKellar, your attorney, indicate that as well.

2            I'm also going to ask that all your answers be

3    in Spanish, which will be interpreted to me in English

4    by the interpreter.  Do we understand each other?

5            THE DEFENDANT:  Yes.

6            THE COURT:  How old are you?

7            THE DEFENDANT:  Thirty three.

8            THE COURT:  Do you read and write English?

9            THE DEFENDANT:  A little.

10           THE COURT:  Is Spanish your natural language?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Are you a citizen of the United

13   States?

14           THE DEFENDANT:  No.

15           THE COURT:  Do you understand that by pleading

16   guilty today in this case, your plea may result in

17   deportation or denial of naturalization?

18           THE DEFENDANT:  Yes.

19           THE COURT:  What was the highest grade you

20   completed in school?

21           THE DEFENDANT:  High school.

22           THE COURT:  Do you feel in good physical and

23   mental health as you sit here today?

24           THE DEFENDANT:  Absolutely.

25           THE COURT:  Have you taken any drugs or

1          alcohol within the past 24 hours?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Have you ever been treated or

4          confined to a hospital for any mental illness?

5                    THE DEFENDANT:  No.

6                    THE COURT:  Have you had enough time to speak

7          to your lawyer before pleading guilty here today?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Are you satisfied in the manner in

10         which he's represented you?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Do you understand that you would

13         have had right to a trial with the assistance of your

14         lawyer, that the People would have had to prove your

15         guilt beyond a reasonable doubt and that you would have

16         the right to confront the witnesses against you, the

17         right to call your own witnesses on your own behalf and

18         the right to testify in your own defense, although you

19         would not be required to do so?

20                   Do you understand that by pleading guilty here

21         today, you are giving up all these rights?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Do you further understand that a

24         plea of guilty is the same as a conviction after trial?

25                   THE DEFENDANT:  Yes.

Kathi A. Fedden, Sr. Court Reporter

1          THE COURT:  Has anybody forced or threatened

2     you to give up these rights?

3          THE DEFENDANT:  No.

4          THE COURT:  Now, do you further understand

5     that you would have a right to appeal what's taken place

6     here today to a higher Court for a review of what has

7     occurred and that the district attorney, as part of the

8     plea, is requiring that you waive your right to appeal,

9     which means you cannot appeal to a higher Court for a

10    review of what's happened here today both with respect

11    to the plea, as well as the sentence?  Do you understand

12    that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And you have discussed your waiver

15    of your right to appeal with your lawyer?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Are you now voluntarily giving up

18    your right to appeal?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has anybody forced or threatened

21    you to give up that right?

22         THE DEFENDANT:  No.

23         THE COURT:  Now, are you currently on

24    probation or parole?

25         THE DEFENDANT:  No.

1          THE COURT:  Have you previously been convicted

2     of a felony prior to today?

3          THE DEFENDANT:  No.

4          THE COURT:  You understand that today you are

5     pleading guilty to a felony and if you are convicted of

6     a new felony at any time within the next ten years, the

7     Court in that new case must impose a mandatory term of

8     imprisonment.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Now, under this Superior Court

11     Information you are charged with one count of rape in

12     the third degree under Penal Law Section 130.25 --

13          MR. LaROCCA:  Subdivision two.

14          THE COURT:  Subdivision two, which is a class

15     E felony for which you could have faced a maximum

16     sentence of one-and-a-third to four years in prison; do

17     you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And also you were charged under

20     the same Superior Court Information with criminal sexual

21     act in the third degree under Penal Law Section

22     130.40(2), which is also a class E felony and, again,

23     you could have faced a maximum sentence of up to

24     one-and-a-third to four years in jail; do you understand

25     that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand what the

3     original charges were and what you face in terms of a

4     possible sentence?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, I have had a discussion with

7     your attorney and the district attorney and based upon

8     that discussion, my promise and commitment with respect

9     to your sentence would be a period of probation not to

10    exceed five years on each.  You would be required to

11    register as a person convicted of a sex offense and I

12    would be issuing a stay away order of protection on

13    behalf of the complainant in this case.  Do you

14    understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Other than that promise, has

17    anyone made any different promise to you?

18         THE DEFENDANT:  No.

19         THE COURT:  Now, I am going to be ordering a

20    presentence probation report.  Should that probation

21    report come back and recommend jail time or for any

22    reason after reviewing that probation report I cannot or

23    choose not to honor my promise and commitment with

24    respect to your sentence, I will give you the

25    opportunity to take back your plea and you can proceed

1    to trial; do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Further, if you fail to appear for

4    sentence, if you fail to cooperate with the Probation

5    Department or if you get arrested for a new crime

6    between today and your sentence date, then my commitment

7    as to your sentence will be off.  I will not be bound by

8    my commitment and I can sentence you to anything up to

9    the maximum, which is one-and-a-third to four years; do

10   you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Mr. LaRocca, you want to add

13   something?

14           MR. LaROCCA:  May we approach for one second?

15           THE COURT:  Sure.

16           (Whereupon, a discussion was held off the

17   record.)

18           THE COURT:  Mr. Granados, I stand corrected.

19   With regard to your probationary sentence, it's a

20   probationary sentence that will not exceed ten years,

21   not five years; do you understand that?

22           THE DEFENDANT:  Okay.

23           THE COURT:  Having been told that and

24   understanding that, do you still wish to go forward with

25   your plea?

1          THE DEFENDANT:   Yes.

2          THE COURT:   Directing your attention to the

3    3rd day of January of this year, 2009 at 153 Cleveland

4    Avenue in the town of Mineola, County of Nassau, State

5    of New York, at that time did you have oral sex and

6    sexual intercourse with a [name deleted]?

7          THE DEFENDANT:   Yes.

8          THE COURT:   And you knew or had reason to know

9    that she was 15 years of age at that time?

10          THE DEFENDANT:   Yes.

11          THE COURT:   People, are you satisfied?

12          MR. LaROCCA:   Yes, thank you, your Honor.

13          THE COURT:   Mr. Granados, are you prepared to

14    plead guilty at this time?

15          THE DEFENDANT:   Yes.

16          THE COURT:   Everything you told me here today

17    the truth?

18          THE DEFENDANT:   Yes.

19          THE COURT:   The Court is satisfied that the

20    defendant understands the nature of the charges, the

21    possible consequences of his plea, the nature of the

22    plea, as well as the nature of the charges; that he's

23    discussed his legal rights with his attorney; that he

24    understands he's waiving his constitutional rights and

25    the plea is voluntary and of his own free will.

Proceedings                            12

```
 1              The Court is further satisfied that the

 2     defendant has acknowledged his guilt and believes it's

 3     in the interest of justice to accept the plea from this

 4     defendant.  The clerk is now directed to take the plea.

 5              THE CLERK:  Jose Granados, do you now affirm

 6     your plea of guilty to rape in the third degree and

 7     criminal sexual act in the third degree under SCI 2400N

 8     of 2009?

 9              THE DEFENDANT:  Yes.

10              THE CLERK:  How do you plead, guilty or not

11     guilty?

12              THE DEFENDANT:  Guilty.

13              THE COURT:  Mr. McKellar, how is January 8th

14     for sentence?

15              MR. McKELLAR:  That's a good date, Judge.

16              THE COURT:  1/8/2010.

17              Mr. Granados, there is a new order of

18     protection that I just signed that bears your signature.

19     I understand you have gone over it with your attorney.

20              THE CLERK:  I'm serving a copy of the

21     temporary order of protection on the defendant, defense

22     counsel and two copies on the district attorney's

23     office.

24              MR. McKELLAR:  We acknowledge receipt.

25              MR. LaROCCA:  People acknowledge receipt,
```

Kathi A. Fedden, Sr. Court Reporter

1    thank you.

2              THE CLERK:  Mr. Granados, your case is being

3    adjourned to January 8, 2010.  If you fail to appear

4    that day, your bail will be forfeited, a warrant will

5    issue for your arrest, you will be subject to the charge

6    of bail jumping and your case will proceed in your

7    absence; do you understand?

8              THE DEFENDANT:  Yes.

9              THE CLERK:  You are also directed to report to

10   probation to begin the pre-sentence investigation.

11             MR. McKELLAR:  Thank you.

12

13             *                *                *

14

15

16             C E R T I F I C A T I O N

17

18        I hereby certify the within to be a

19        true and accurate transcription of my

20        stenographic notes in the above proceeding.

21

22

23

24        *Kathi A. Fedden*
          Kathi A. Fedden

25

Kathi A. Fedden, Sr. Court Reporter

EXHIBIT D

1

1.  STATE OF NEW YORK  :  NASSAU COUNTY

2.      SUPREME COURT  :  PART 36

3.  ----------------------------------------X

4.  THE PEOPLE OF THE STATE OF NEW YORK,

5.          -against-                    SCI No. 2400N-09

6.  JOSE GRANADOS,

7.                      Defendant.

8.  ----------------------------------------X

9.  SENTENCE

10.                          January 8, 2010
                            252 Old Country Road
11.                          Mineola, New York

12.  B E F O R E :

13.      HON. JAMES P. McCORMACK,
            Acting Supreme Court Justice
14.

15.

16.  A P P E A R A N C E S :

17.      HON. KATHLEEN M. RICE
            Nassau County District Attorney
18.         BY:  SILVIA FINKELSTEIN, ESQ., of Counsel
            Assistant District Attorney
19.                      For the People

20.

21.      THOMAS McCULLOUGH, ESQ.
            37-06 82nd Street
22.         Jackson Heights
                        For the Defendant
23.

24.                      JOANNE HORROCKS, CSR
                        Senior Court Reporter

25.

J.H.

1          THE CLERK:   This is on the sentence calendar,

2    the People against Jose Granados, SCI 2400N of 2009.

3          MS. FINKELSTEIN:   On behalf of the People,

4    Silvia Finkelstein for Jamie Johnson.

5          MR. MCCULLOUGH:   And for Mr. Granados, Thomas

6    McCullough, 37-06 82nd Street, Jackson Heights,

7    New York.   Good morning, Judge.

8          THE COURT:   Good morning.

9          THE CLERK:   You are Jose Granados?

10          THE DEFENDANT:   Yes.

11          THE CLERK:   And you appear with your

12    attorney?

13          THE DEFENDANT:   Yes.

14          THE CLERK:   Counselor, is your client ready

15    for sentence?

16          MR. MCCULLOUGH:   He is.

17          THE CLERK:   Do the People wish to be heard?

18          MS. FINKELSTEIN:   Yes, your Honor.   We have

19    had extensive conferences in this case.   We had one

20    today where we discussed in detail the recommendations

21    of the probation report as well as the sex offender

22    conditions that were recommended by the Department of

23    Probation, and we have come to an agreement.   In

24    addition, of course, we are urging you to impose the

25    previous new recommended 10 years probation, and we ask

J.H.

Proceedings                                                    3

1        you that you issue a permanent order of protection in

2        favor of the complainant in this matter and that we

3        conduct a designation hearing under the sex offender

4        registration act after you pass sentence.

5                   THE COURT:   Mr. McCullough, do you want to be

6        heard?

7                   MR. MCCULLOUGH:   No, thank you, Judge.

8                   THE COURT:   All right, Mr. Granados, anything

9        you want to say, sir?

10                  THE DEFENDANT:   That I'm very sorry, and I'm

11       thankful, and I'm grateful for this opportunity.

12                  THE COURT:   Anything else?

13                  THE DEFENDANT:   I would follow whatever

14       instructions you are imposing on me.

15                  THE COURT:   Well, with regard to the, as you

16       call it, instructions, they are going to be more like

17       conditions.   They are going to be conditions of

18       probation.

19                  And unlike the typical conditions of

20       probation, such as staying out of trouble, not getting

21       rearrested, refraining from people and places where

22       criminality is involved, and given the nature of your

23       offense, your conditions are going to be rather strict

24       and stringent.   And I want to make a promise to you

25       that if you fail to abide by the conditions of

                                                            J.H.

Proceedings                                        4

1    probation or get rearrested for a new crime or for any

2    reason you come anywhere near the complainant in this

3    case, I can guarantee you are going to be going to

4    jail.  And it's not going to be here in East Meadow

5    locally.  It's going to be upstate.  Do we understand

6    each other?

7                   THE DEFENDANT:  Yes.

8                   THE COURT:  And you ought to thank your

9    attorney this time around for getting the result that

10   he was able to achieve for you in this case.  But let

11   me just warn you that as good as your attorney is, if

12   you screw up on probation, he is not going to be able

13   to save you.  Do you understand me?

14                  THE DEFENDANT:  Yes.

15                  THE COURT:  It is the judgment of this Court

16   that for your plea to rape in the third degree on

17   Docket 2400N of '09 and criminal sex act in the third

18   degree for which you stand convicted in satisfaction

19   thereof, you are hereby sentenced to 10 years

20   probation, the terms and conditions of which will be

21   given to you if they haven't already by my clerk to go

22   over with your attorney, and please indicate and

23   signify your consent by signing in the space provided.

24                     There's a mandatory surcharge of $300, a

25   crime victim's fee of $25 and a DNA database fee of

                                                    J.H.

Proceedings                                    5

1      $50.  In addition, there's a sex offender registration

2      fee of $50 and a sex offender victim assistance fee,

3      which I believe is $1,000.  That's roughly by my

4      calculations about $1,425.

5                    Mr. McCoullough, how does your client intend

6      to pay, or does he need time to pay?

7                    MR. MCCULLOUGH:  Judge, we would take time to

8      pay.  Being from Queens, can he work that out through

9      victim services or probation?  Or just give us a date,

10     and he'll pay it by that date, Judge.

11                   THE COURT:  What I'll do, given the amount,

12     I'll give you a date three months out.  Since it's not

13     restitution, I don't believe that probation, at least

14     in this county, gets involved in collecting these kind

15     of fees; on or about April 30th, 2010.

16                   MR. MCCULLOUGH:  Thank you, Judge.

17                   THE COURT:  And I have signed the order of

18     protection on behalf of the complainant in this case.

19                   THE CLERK:  Serving on the defendant and

20     defense counsel a copy of the order of protection and

21     two copies on the District Attorney.

22                   MR. MCCULLOUGH:  Acknowledge receipt.

23                   MS. FINKELSTEIN:  The People acknowledge

24     receipt.  Thank you very much, your Honor.

25                   THE CLERK:  Also serving defendant with terms

1          and conditions of probation and the additional sex

2          offender conditions.

3                    MR. MCCULLOUGH:   Acknowledge receipt.

4                    MS. FINKELSTEIN:   Your Honor, we have agreed

5          on the assessment of the points, and I would like to

6          put it on the record.

7                    THE COURT:   Yes, go ahead.

8                    MS. FINKELSTEIN:   With respect to the sex

9          offender registration act risk assessment instrument,

10         we have agreed upon the following points:   25 points

11         under category number two, sexual contact with the

12         victim in that there was sexual intercourse or deviate

13         intercourse.   Twenty points are being assessed in that

14         there was a continuing course of sexual misconduct that

15         expanded over a period of time, and 20 points have been

16         assessed in that the age of the victim was between 11

17         and 16 years old.   In fact, she was 15.   That brings us

18         to a total of 65 points which renders the defendant

19         level one sex offender.

20                   With respect to the sex offender category,

21         the defendant is not a sexual violent offender.   He is

22         not a predicate sex offender, and he is not a sexual

23         predator.   Therefore, his designation is none of the

24         above.

25                   THE COURT:   Okay.   Mr. McCoullough, do you

J.H.

1      agree and so stipulate to these calculations set forth

2      by the People?

3                    MR. MCCULLOUGH:  I do, Judge.

4                    THE COURT:  And you have no objection to your

5      client being adjudicated a level one sex offender?

6                    MR. MCCULLOUGH:  No objection.

7                    THE COURT:  So he will be -- nor does the

8      Court for that matter.  So the defendant will be

9      adjudicated a level one sex offender for purposes of

10     the sex offender registry act.

11                   THE CLERK:  Serving defendant with a copy of

12     the sex offender registration form.

13                   Mr. Granados, you have the right to appeal

14     the Court's sex offender risk level determination.  The

15     appeal must be brought pursuant to the CPLR Articles

16     55, 56 and 57.  Your assigned counsel will continue

17     representing you throughout the pendency of the appeal.

18     Two copies of a notice of appeal must be filed with

19     this court within 30 days.

20                   MR. MCCULLOUGH:  Acknowledge receipt.

21                   THE COURT:  Okay, good luck to you.

22                   (Continued on the following page.)

23

24

25

J.H.

1        MR. MCCULLOUGH:   Thank you.

2        MS. FINKELSTEIN:   Thank you very much, Judge.

3    *          *          *          *          *          *

4    This is certified to be a true and accurate transcript of my

5    stenographic notes taken in the above-captioned matter.

6

7                                _____

8                                Joanne Horrocks, CSR
                                 Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              J.H.

EXHIBIT E

NASSAU COUNTY
COUNTY COURT HOUSE
262 OLD COUNTRY ROAD
MINEOLA, NY  11501

CERTIFICATE OF DISPOSITION - SUPERIOR COURT INFORMATION

DATE: 03/13/2015                    CERTIFICATE OF DISPOSITION NUMBER: 212

PEOPLE OF THE STATE OF NEW YORK        CASE NUMBER:         SCI-02400N-2009
            VS.                        LOWER COURT NUMBER(S): 2009NA015998
                                                             2009NA015999
                                                             2009NA016000
                                                             2009NA016001
                                                             2009NA016002
                                                             2009NA016003
                                       DATE OF ARREST:       06/22/2009
                                       ARREST #:             R0011545
                                       DATE OF BIRTH:        12/25/1975

GRANADOS,JOSE J
_____
         DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 11/12/2009 BEFORE THE HONORABLE
MCCORMACK,J   THEN A JUDGE OF THIS COURT,  THE ABOVE NAMED DEFENDANT
ENTERED A PLEA OF GUILTY TO THE CRIME(S) OF

RAPE 3rd DEGREE PL  130.25 02 EF
CRIMINAL SEXUAL ACT 3rd DEGREE PL  130.40 02 EF

THAT ON 01/08/2010 THE ABOVE NAMED DEFENDANT WAS SENTENCED
BY THE HON. MCCORMACK,J  ,THEN A JUDGE OF THIS COURT TO

RAPE 3rd DEGREE PL  130.25 02 EF
ORDER OF PROTECTION = 7 YEAR(S)
PROBATION = 10 YEAR(S)

CRIMINAL SEXUAL ACT 3rd DEGREE PL  130.40 02 EF
PROBATION = 10 YEAR(S)


CVAF = $25  (PAID)
DNA  = $50  (PAID)
SURCHARGE = $300  (PAID)
SEXUAL OFFENDER REGISTRATION = $1,050  (PAID)



IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 03/13/2015.

                                    _____
                                          CLERK OF COURT

EXHIBIT F

# Retroactivity of Padilla v. Kentucky in New York State
By Sheila L. Bautista

Nearly four years ago, the United States Supreme Court decided *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), the landmark case that recognized the constitutional duty of criminal defense attorneys to advise their clients regarding the deportation consequences of pleading guilty. Of the many questions that developed in *Padilla's* wake, perhaps the most fundamental was the issue of its retroactivity with respect to convictions that had become final prior to the Supreme Court's decision. Under *Teague v. Lane*, 489 U.S. 288 (1989), *Padilla's* retroactivity effectively depended on whether the Court had announced a "new" rule, that is, whether *Padilla's* holding had been "dictated by precedent existing at the time the defendant's conviction had become final." *Teague*, 489 U.S. at 301. Had the result in *Padilla* not been "apparent to all reasonable jurists" before it was decided, then it would not be given retroactive effect. *See Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997). On the other hand, had *Padilla* simply involved the application of the already existing ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 104 S.Ct. 2052 (1984), to a particular set of facts, then it would apply retroactively.

New York courts weighed in on the issue prior to a ruling from the Supreme Court and found *Padilla* to be retroactive. Applying the *Teague* test, the First Department held in *People v. Baret*, 99 A.D.3d 408, 409 (1st Dept. 2012), that *Padilla* was not a new rule, but rather, "followed from the clearly established principles of the guarantee of effective of assistance of counsel under *Strickland*, and 'merely clarified the law as it applied to a particular set of facts'" (citations omitted). The Third Department agreed with this analysis in *People v. Rajpaul*, 97 A.D.3d 904 (3d Dept. 2012).

Last year, the Supreme Court had its own say in the matter. In a 7-2 decision, with Justice Elena Kagan writing for the majority, the Court ruled in *Chaidez v. United States*, 133 S.Ct. 1103 (2013), that *Padilla* was a new rule under *Teague* that did not apply retroactively to convictions that had already become final before March 31, 2010, the day the *Padilla* decision was announced. Key to this decision was the fact that *Padilla* marked the first time the Court had ever recognized an attorney's duty under the Sixth Amendment to advise a criminal defendant about collateral, non-criminal consequences of entering a guilty plea. Where *Padilla's* threshold question involved whether *Strickland* was even applicable under the circumstances, the Court rejected the notion that *Padilla* was simply another "garden-variety" ineffective assistance of counsel analysis applied to a different set of facts. The *Chaidez* court also observed that the ruling in *Padilla* had overruled existing law in ten federal circuits and over thirty states which had previously held that defense attor-

neys were not obligated to provide advice to clients about collateral consequences of pleading guilty. Thus, *Padilla* had announced a result that had not been "apparent to all reasonable jurists." Indeed, prior to *Padilla*, although New York state courts recognized ineffective assistance of counsel claims when an attorney gave a criminal defendant incorrect advice regarding the deportation consequences of pleading guilty, *People v. McDonald*, 1 N.Y.3d 109 (2003), no such claim was recognized when an attorney failed to give any advice at all regarding such consequences. *People v. Ford*, 86 N.Y.2d 397 (1995). Since the Appellate Division in *Baret* had assessed *Padilla's* retroactivity only under the *Teague* standard, *Chaidez* effectively overruled *Baret*, which the First Department later acknowledged in *People v. Verdejo*, 109 A.D.3d 138 (1st Dept. 2013).

The issue of *Padilla's* retroactivity in New York did not end with *Chaidez*. *Danforth v. Minnesota*, 552 U.S. 264 (2008), allows states to apply rules of criminal procedure with broader retroactivity than the federal *Teague* standard would dictate. Thus, *Danforth* allows New York to determine for itself whether or not *Padilla* should be applied retroactively. Exactly which retroactivity standards New York will apply to *Padilla* remains an open question. Since *Danforth*, the Court of Appeals has not had occasion to determine whether it would continue to apply the *Teague* retroactivity test to cases that "fundamentally alter[ed] the Federal constitutional landscape," as it did in *People v. Eastman*, 85 N.Y.2d 265 (1995), which determined the retroactivity of a Supreme Court decision involving the Confrontation Clause. In deciding *Padilla's* retroactivity, New York courts might also consider the three-part test in *People v. Pepper*, 53 N.Y.2d 213 (1981), which has been applied to new rules arising out of New York's own state court decisions. Those factors are: (1) the purpose to be served by the new standard, (2) the extent to which law enforcement authorities relied upon the old standard, and (3) the effect a retroactive application of the new standard would have on the administration of justice.

Since *Chaidez*, the First, Second, and Third Departments have held that *Padilla* is not retroactive. *See People v. Verdejo*, 109 A.D.3d 138 (1st Dept. 2013); *People v. Andrews*, 108 A.D.3d 727 (2d Dept. 2013); *People v. Bent*, 108 A.D.3d 882 (3d Dept. 2013). All three departments correctly followed the reasoning of *Chaidez* and found that *Padilla* was a new rule that was not to be given retroactive effect under *Teague*. The Second Department went one step further and applied New York's three-part *Pepper* test. Analyzing the first factor, which examines whether a new rule goes "to the heart of a reliable determination of guilt or innocence," the *Andrews* court found that advice about deportation consequences was "only collateral to or relatively far removed from the fact-finding process at trial,"

The *Andrews* court also recognized law enforcement reliance on New York's pre-*Padilla* standards, which allowed prosecutors to recommend acceptance of plea allocutions even if a defendant had not been advised of deportation consequences. Finally, the Second Department observed that retroactive application of *Padilla* would "potentially lead to an influx of CPL 440.10 motions to vacate the convictions of defendant whose guilty pleas were properly entered and accepted by courts under the old standard." Accordingly, the Second Department held that all three factors weighed against *Padilla*'s retroactive application.

*Andrews* remains binding authority on trial-level courts throughout the state until another department or the Court of Appeals makes its own ruling on the matter. *See Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663 (2d Dept. 1984), *accord People v. Turner*, 5 N.Y.3d 476

(2005). The Court of Appeals will have an opportunity rule on *Padilla*'s retroactivity in *Baret*, for which leave was granted last year. It remains to be seen whether the Court will assess *Padilla*'s retroactivity only under federal *Teague* standard, or whether it will also decide the *Danforth* issue. *Baret* was decided in the Appellate Division prior to *Chaidez* and involved only an analysis under *Teague*, but the defendant in *Baret* has filed a brief urging the Court to also assess *Padilla*'s retroactivity under *Pepper*. The People argue that defendant's *Pepper*-based claims are unpreserved, but also contend that even under New York's retroactivity standards, *Padilla* should only apply prospectively.

Sheila L. Bautista is an Assistant District Attorney in the Appeals Bureau of the New York County District Attorney.



Each year in communities across New York State, indigent people face literally millions of civil legal matters without assistance. Women seek protection from an abusive spouse. Children are denied public benefits. Families lose their homes. All without benefit of legal counsel. They need your help.

If every attorney volunteered at least 20 hours a year and made a financial contribution to a legal aid or pro bono program, we could make a difference. Please give your time and share your talent.

Call the New York State Bar Association today at
518-487-5640 or go to www.nysba.org/probono
to learn about pro bono opportunities.



STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
--------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

**AFFIDAVIT OF SERVICE**

-against-

SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

Defendant.
--------------------------------------------------------------X
STATE OF NEW YORK  )
                                        ss.:
COUNTY OF NASSAU  )

I, Ellen Luxmore, being duly sworn deposes and says:  I am not a party to the above-captioned action; I am over 18 years of age and reside in Baldwin, New York.

On April 20, 2015, I served the within **Notice of Motion** by mailing a true copy of same in a sealed envelope, with postage prepaid thereon in a post office or official depository of the U.S. Postal Service within the State of New York, to the following persons set forth below:

Madeline Singas
Acting District Attorney
262 Old Country Road
Mineola, New York 11501

_____
ELLEN LUXMORE

Sworn to before me this

20th day of April, 2015

_____
Notary Public

LUCIA M. CIARAVINO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CI6061004  Nassau
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES JULY 8, 20 15