**EXHIBIT E**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

-----------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

        Respondent,

        -against-

JOSE DEJESUS GRANADOS,

        Defendant-Appellant.

-----------------------------------------------------------X

**NOTICE OF MOTION**

Ind. No. 2400N-09

PLEASE TAKE NOTICE that upon the annexed affirmation of Thomas F. Liotti, Esq., attorney at law, dated the ___ day of August, 2015, upon Ind. No. 2400N-09 and upon all the proceedings heretofore had herein, the undersigned will move this court, at a     Term thereof of the Appellate Division, Second Judicial Department located at 45 Monroe Place, Brooklyn, New York, on the 25th day of September, 2015 at 9:30 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, granting defendant-appellant:

1.     A certificate for leave to appeal pursuant to CPL §§450.15 and 460.15 and from a denial of the defendant's CPL §440.10 and 440.20 motion as per CPL §450.15(1) and (2);

2.     For such other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that answering affidavits, if any, are required to be served upon the undersigned at least seven (7) days before the return date of this motion.

DATED:     Garden City, New York
                August 26, 2015

THOMAS F. LIOTTI, ESQ.
LAW OFFICES OF THOMAS F. LIOTTI
Attorneys for Defendant-Appellant
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700

TO:    MADELINE SINGAS
       Acting District Attorney, Nassau County
       262 Old Country Road
       Mineola, New York 11501

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

    Respondent,

              AFFIRMATION IN SUPPORT

   -against-          Ind. No. 2400N-09

JOSE DEJESUS GRANADOS,

    Defendant-Appellant.

------------------------------------------------------------X

   THOMAS F. LIOTTI, an attorney duly admitted to practice law before the Courts of the

State of New York hereby affirms the following to be true under the penalties of perjury:

   1.  I am the attorney for the defendant herein and as such I am fully familiar with the

facts and circumstances of this case.

   2.  This is an application for leave to appeal from the denial of a CPL §440 motion

decided by the Honorable Angelo A. Delligatti, Nassau County Supreme Court Justice and on

August 17, 2015 with a Notice of Entry dated August 25, 2015.

   3.  Attached to this application as Exhibit "A" are the defendant's Notice of Motion

dated April 16, 2015; an affirmation in support of it; the affidavit of the defendant-appellant in

support of that; the affidavit of Lucia Tobon, the Spanish interpreter dated April 13, 2015 and the

affidavit of Leyda Cruz, the wife of the defendant-appellant and sister of the complaining

witness's mother dated April 13, 2015.  Also attached from the Trial Court are the People's

1

papers in opposition dated May 6, 2015 (Exhibit "B"); this counsel's reply affirmation dated May 18, 2015 (Exhibit "C"); the aforementioned Trial Court decision by Justice Delligatti dated August 17, 2015 (Exhibit "D"); the plea minutes dated November 12, 2009 (Exhibit "E") and the sentencing minutes dated January 8, 2010 (Exhibit "F").

4.      The defendant pled guilty in Nassau County Court to statutory rape.  He was then deported and is now subject to wrongful re-entry charges in federal court before the Honorable Joanna Seybert (Docket No. 15-171) where he has waived speedy trial rights awaiting the exhaustion of his remedies here.  His application here is for leave to appeal from a denial of a CPL §440 motion to vacate the aforementioned plea of guilty and sentencing therein.

5.      The claims of the defendant-appellant are based upon: (1) ineffective assistance of counsel; (2) actual innocense; (3) improper advisement of rights at the time of his plea and sentence pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969); (4) improper advisement of rights under *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010); and (5) denial of his civil and Constitutional rights to due process of law under both the State and Federal Constitutions.

6.      The defendant-appellant never appealed from his plea conviction.  The issues presented herein have never before been considered by any court except by Justice Delligatti who improperly gave these very significant Constitutional issues short shrift.  The case is particularly important due to the defendant-appellant's actual innocense and his extremely limited understanding of his rights, the English language and our system of justice.  The defendant-appellant was threatened with death by gangs in his native country of El Salvador where two of his cousins have already been killed.  The defendant-appellant should be entitled to political asylum in this country but instead is subject to deportation where the consequence will be certain

2

death. This is a case that cries out for justice and a dismissal. For the reasons stated herein, it should not have been ignored by Justice Delligatti.

7.    In our national debates among Presidential candidates we are witnessing the catastrophic effects of failed immigration policies which are also most glaring in our criminal justice system. On the one hand there are those who say that the solution is to round them up; build a wall and send them back. On the other hand there are those in search of legitimate solutions which preserve the Constitutional rights of our nation. Justice Delligatti's decision does not do justice to these issues at all. It is simply a knee jerk reaction echoing the bluster of Donald Trump. If we are truly a nation of laws then these Constitutional principles should be of the utmost importance to us, not submitting to the angry, crazed rhetoric of politicians.

8.    There is not doubt about the paucity of proof in this case. Mr. Granados had no prior record and he was married. There was no forensic or DNA evidence linking him to the crime. There were no eyewitnesses that ever placed him alone with the complainant that he was accused of raping. The complainant had a motive to lie in this case and was put up to it by her mother who was angry over the defendant-appellant's estrangement from her sister[1].

9.    There was no DNA[2] evidence or a rape kit[3].

---

[1] *People v. Fortin*, 184 Misc.2d 10, 706 N.Y.S.2d 611 (Nassau County, 2000) and *People v. Jeffrey Bimonte*, 712 N.Y.S.2d 829 (2000).

[2] 2004, Co-Author of DNA: Forensic and Legal Application, published by John Wiley & Sons, Inc., Hoboken, New Jersey.

[3] Liotti, Thomas F. and Smith, Drummond, Spoliation of Evidence by Prosecutors, Verdict (a magazine published by the National Coalition of Concerned Legal Professionals, July, 2008 at 1, 3 and 4 and New York Criminal Law Newsletter (a publication of the Criminal Justice Section of the New York State Bar Association), Summer, 2008, vol. 6, no. 3 at 9.

10.   Defense counsel produced no expert testimony on fabrication or Rape Trauma Syndrome. This is standard fare in any case of this genre and has been for more than twenty-five years[4]. Defense counsel was a wallflower in this case, poorly equipped to handle the case.

11.   Mr. Granados has been wrongfully convicted. The charges against him should be dismissed.

12.   The defendant is currently incarcerated in the Nassau County Correctional Center under Case No. 15-MJ-00228(SIL) where he has been in custody since March 12, 2015 and where it is alleged that he is an alien who was previously denied admission and deported but who is alleged to have returned to the United States without permission in violation of 8 *U.S.C.* §§1326(a) and 1326(b). A copy of the federal felony complaint is attached as Exhibit "A" to the defendant's CPL §440 motion. The defendant has not yet been indicted. I am representing him on those federal charges as well.

13.   The defendant's date of birth is December 25, 1975 and his native country is El Salvador. He is not a United States citizen.

14.   I have been retained to represent the defendant in regard to the vacatur of his pleas, sentence and convictions here in Nassau County, New York. I have also been retained to represent him with respect to the federal charges against him but not his immigration matters which will follow. Accordingly, I have inspected his Court files in the County Court Clerk's

---

[4] Liotti, Thomas F. And Skelos, Peter B., <u>Credibility Questions for Prosecution Expert on Syndromes in Cases of Rape, Child Abuse</u>, Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 & 7 and Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. Leah Blumberg, <u>Cross-Examining Children in Sexual Abuse Cases</u>, The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18 and <u>The Cross-Examination of Child Witnesses</u>, Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21.

4

Office.  Defendant was previously convicted of felony charges in New York and is herewith moving to vacate those pleas and sentences.  He has not made application to do so since the Supreme Court of the United States' holding in *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010).  That case provided that a failure to advise a defendant of the collateral consequences of his plea including deportation is ineffective, thus violating a defendant's Sixth Amendment rights under the Constitution of the United States.

15.    Upon information and belief, the defendant-movant has a family here in the United States including wife, Leyda Carolina Cruz, a permanent resident and Valeria Emely Granados, a child with his wife, age 13.  On September 16, 2014 the movant initiated, *pro se*, a divorce action against his wife in Nassau County Supreme Court, Index No. 2014-202726.  The movant's wife and daughter reside in Carle Place, New York.  The complaining witness Michelle Reyes is the daughter of the movant's wife's sister.  It is contended that the alleged victim was put up to fabricating the story by the movant's wife and her sister because the movant has been estranged from his wife for eight to nine years.

16.    The question in this case is whether his pleas and sentences here in New York should be vacated either because they were entered in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969) and not in conformance with our State standard of *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61 (1983) and secondly, the defendant was not advised of the collateral consequences of his pleas and sentences here in New York and whether *Padilla, supra* should be given retroactive effect in this case.

17.    Prior to November 17, 1990 the United States law would allow someone such as the defendant to become a permanent resident if he had lived in the United States for seven years.

5

In 1990 §212( c) of the Nationality Act (INA) prohibited a long standing permanent resident to

have a legal status here if convicted of an aggravated felony and having served five (5) years in

jail. The defendant was never apprised of his eligibility to apply for permanent residence or how

subsequent enactments such as the Anti-terrorism and Effective Death Penalty Act of April 24,

1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 have made

re-entry into the United States and permanent legal residence here nearly impossible to achieve.

See also, *Rankine v. Reno*, 319 F.3d 93 (2003); *Vartelas v. Holder*, 132 S.Ct. 1479 (2012) and

*U.S. v. Gill*, 748 F.3d 491 (2014). Without these advisements the defendant's plea can not be

said to have been taken "knowingly, voluntarily and intelligently."

18.     The defendant has been incarcerated for five months and has a severe economic

hardship warranting a vacatur of these charges and a dismissal of them. See an Editorial, <u>Locked</u>

<u>Away in Immigration Jails</u>, The New York Times, February 24, 2014 at A18 attached as Exhibit

"B" to the defendant's CPL §440 motion. See also, John Eligor and Damien Cave, <u>Paying Price,</u>

<u>16 Years Later for an Illegal Entry</u>, The New York Times, March 20, 2014 at 17 and 18.

19.     The defendant is now claiming actual innocense; a violation of his Constitutional

rights and a necessity defense in that our failed immigration policies force millions to live and

work under the radar in order to survive economically.

20.     The defendant's prior criminal history now the subject of this motion involves

pleas of guilty to two E felonies before Justice McCormack on November 12, 2009, with

sentencing thereafter on January 9, 2010. The defendant's original docket number on the felony

complaint was 15998/2009. The Judge was Hon. James P. McCormack. A copy of the

defendant's certificate of disposition is attached as Exhibit "E" to the defendant's CPL §440

6

motion. The defendant was sentenced to time served (he was arrested on June 22, 2009); ten years of probation; an order of protection was entered; the defendant was determined to be a Level One Sex Offender and fully paid $1,425 for a Crime Victim's Assistance Fee; DNA registration; a surcharge and Sex Offender Registration of $1,050.00. The defendant was then deported.

21.     He was represented by counsel but not given all of his *Boykin* rights or advised of the collateral consequences of his plea.

22.     Since 1995 the CPL has provided that trial judges should advise an immigrant defendant of the possible deportation consequences of the plea. That was not done here in either of the defendant's two prior felony cases. On November 19, 2013 the New York Court of Appeals decided *People v. Peque*, 22 N.Y.3d 168, 980 N.Y.S.2d 280 (2013). The five Judge majority of the Court held that trial judges must caution non-citizen defendants that they may be deported before allowing them to plead guilty to a felony. Chief Judge Lippman and Judge Rivera held that the remedy of vacating the pleas was appropriate since due process rights were involved. See also, Spiros A. Tsimbinos, New York Court of Appeals Deals with Consequences of Padilla Decisions, NYSBA Criminal law Newsletter, Spring, 2014, vol. 12, no. 2 at 6 and 7.

23.     The defendant also waived his right to appeal, not "knowingly, voluntarily or intelligently." Thus he did not perfect any appeals although his lawyer was assigned under County Law, Article 18-b to represent the defendant in connection with an appeal, he failed to render any legal services in that regard.

24.     *Padilla* was not given retroactive effect in *People v. Baret*, 99 A.D.3d 408, 409 (1st Dept. 2012), 23 N.Y.2d 777, 992 N.Y.S.2d 738 (2015). See also, Sheila L. Baritista,

7

<u>Retroactivity of Padilla v. Kentucky in New York State</u>, NYSBA New York Criminal Law Newsletter, Spring, 2014, vol. 12, no. 2 at 8 and 9 (attached as Exhibit "F" to the defendant's CPL §440 motion). It appears that the *Baret* case may now be in direct appeal to the Supreme Court of the United States.

25.     The failure to adequately advise a defendant of the fact that a plea of guilty would subject him to removal from the United States is violative of the rule established in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969); see also, *U.S. v. Udeagu*, 110 F.R.D. 172 (1986) where it was determined that there are certain fundamental rights that every person accused of a crime has and which may only be waived "knowingly, voluntarily and intelligently". See also, *People v. Woodard*, 188 Misc.2d 7 (2002). In *Udeagu, supra* represented by this defense counsel, Judge Jack Weinstein found that the defendant had not been apprised of his post-release guidelines and vacated the plea.

26.     Mr. Granados was denied many constitutional rights during these proceedings. The most important is effective assistance of competent counsel. Every defendant who faces criminal charges is entitled to effective assistance of competent counsel. See, *McMann v. Richardson*, 397 U.S. 759, 771 (1970), see also, *Reece v. Georgia*, 350 U.S. 85, 90 (1955), *Powell v. Alabama*, 287 U.S. 45 (1932). *McMann* defines effective assistance of counsel to be that which falls within the range of competence demanded of attorneys in criminal cases. However, the *McMann* standard is only one-half of the evaluation of the claim of effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984) the Court developed a two prong standard for assessing the defendant's claim of ineffective assistance of counsel. The first prong applied the *McMann* test, requiring the defendant to prove that "counsel's

8

representation fell below the objective standard of reasonableness." *Id.* at 688. The second

prong requires that the defendant show "there is a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Under Article I, Section 6 of the New York Constitution, the State of New York has developed a

slightly different test for ineffective assistance of counsel from that employed by the Supreme

Court in *Strickland v. Washington*. See, *People v. Claudio*, 629 N.E.2d 384, 386 ("nonetheless,

the basic purposes and constitutional interests at stake under both constitutional guarantees of an

adequate legal defense in a criminal case are the same. (1) the preservation of our unique

adversarial system of criminal justice, the underlying supposition of which 'is that partisan

activity on both sides of the case will best promote the ultimate objective that the guilty be

convicted and the innocent go free' *United States v. Chronic*, 466 U.S. 648, 655, 104 S.Ct. 2039,

2045, L.Ed.2d 657 quoting from *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555,

45 L.Ed.2d 593 and (2) the corrective necessity to provide a defendant with an advocate

sufficiently competent to ensure the fairness of the adversarial criminal process. *United States v.*

*Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.ed.2d 564.") See also, *Jenkins v. Coombe*,

821 F.2d 158 (1987) where nominal representation was sufficient to set aside a conviction and

*Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995) where defense counsel ceased to advocate and the

conviction was overturned. This defense counsel represented both defendants; to wit: *Jenkins*

and *Lopez, supra.*

27.     Ineffective assistance of counsel may "render a guilty plea involuntary, and hence

invalid." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d. Cir. 1992). See, *United States v.*

*George*, 869 F.2d 333, 335-336 (7th Cir. 1989) (An "accused who has not received reasonably

9

effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily.); *see also Downs-Morgan v. United States*, 765. F.2d. 1534 (11th Cir. 1985).  Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52 (1985).  Mr. Jose DeJesus Granados did not have the benefit of effective assistance of counsel during his plea and sentencing.  His legal representation was definitely not "within the range of competence demanded of attorneys of criminal cases" and granted to all people by the Sixth Amendment. See, *McMann* at 771.  It also did not meet the initial prong of the *Baldi* test for effective assistance of counsel.  See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).

28.     It is antithetical that if a lawyer violates his ethical duty to his client that he has provided effective assistance of counsel in his cause.  The initial prong of the *Baldi* test for effective assistance of counsel requires that counsel advocate in a partisan manner on behalf of Mr. Granados.  This did not happen.  While representing Mr. Granados his former attorney never advised him about the collateral consequences of deportation.  As a result of this failure they failed to meet the initial prong of the *Baldi* case.

29.     Mr. Granados's former counselor also did not meet the second *Baldi* prong of effective assistance of counsel during his plea negotiations because his counsel did not provide him with sufficiently competent representation to ensure fairness. See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).  Mr. Granados's counsel was clearly not sufficiently competent to provide him with <u>fairness</u> in the adversarial criminal process nor did he

10

even attempt to advocate zealously. They effectively forced Mr. Granados to take the pleas in order to dispose of the case expeditiously. This conduct violates multiple disciplinary rules and ethical codes of conduct. *See* DR 1-102 and 5-105(B).

30.     It is very clear from the plea minutes attached to the defendant's motion herein that the defendant did not "knowingly, voluntarily and intelligently" admit to a prior felony conviction since minutes of it were not available, defense counsel failed to do a proper investigation and the Court did not make a proper inquiry.

31.     Mr. Granados's pleas should be rendered involuntary because they did not meet the standard set forth in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005) (a valid guilty plea requires that the defendant have a complete understanding of the charges against him or her). A guilty plea will be sustained in the absence of any factual recitation of the underlying circumstances of the crime if the pleading defendant is represented by *able* and active counsel, and there is no suggestion in the record that the plea was improvident or baseless. *People v. Nixon*, 21 NY2d. 338, 350 (NY 1967); *People v. Doceti*, 175 A.D.2d. 256 (2d. Dept. 1991); *cf. People v. Seeber*, 4 NY3d. 780 (NY 2005) (an explicit admission of guilt as to every element of the crime does not have to be incorporated into the allocution of every valid plea). However, Mr. Granados did not have able or effective counsel because he did not fully inform him of the effect of his guilty pleas, specifically that he would be subject to deportation. (See Granados affidavit annexed hereto).

32.     The guilty plea tendered by the defendant was not knowingly, voluntarily and intelligently made in that his attorney did not apprise him of the probability that he could be deported, this constitutes ineffective assistance of counsel, *per se*.

11

33.     Ultimately, what we are faced with in this situation is a non-lawyer, with a limited understanding of the law in general, English and an even more limited understanding of New York and immigration law, who, on the advice of counsel, simply pled guilty with absolutely no comprehension of the consequences of that plea, because his attorney did not advise him of same. The defendant's guilty plea is violative of the rule established in *Strickland*, *Boykin* and *Padilla* and should be given back. The defendant has less than an American high school education from El Salvador with no understanding of our culture, language or system of justice.

34.     On March 31, 2010 the Supreme Court handed down a 7-2 decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).  One of the cases relied upon in the instant CPL §440 motion, because Mr. Granados's former attorneys failed completely to advise their client about the effect a conviction for statutory rape with a level one sexual offender registration and ten (10) years probation would have on his ability to remain in this Country.  There is literally nothing in the record to show that the defendant was apprised by his counsel of sex offender registration or what his chances of success would be at trial.

35.     In *Padilla*, the Court held that a defense lawyer failed to provide his non-citizen client effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) when he did not warn him that he was almost certain to be deported if he pled guilty.  It was the first time the Court applied the *Strickland* standard to a lawyer's failure to advise a client about a consequence of conviction that is not part of the sentence imposed by the Court.

36.     Defense counsels' lack of advisement with respect to deportation falls squarely under the *Strickland* ineffective assistance of counsel standard.  A review of Mr. Granados's plea minutes makes clear that he was never advised, on the record, about any collateral

12

consequences resulting from a guilty plea. As a result, Mr. Granados's removal status falls squarely under the decision in *Padilla*. While the federal and state's high court have found that *Padilla* should not be applied retroactively, the appellant has other claims including actual innocence.

37.     Had Mr. Granados been properly advised rather than simply being rushed to the slaughter, he certainly would have sought out other options including going to trial. As it stands, he is facing more jail and facing removal from the United States.

38.     The People have historically also misread or misunderstood the holdings in *Strickland v. Washington*, 466 U.S. 668 (1984) and its state equivalent, *People v. Baldi*, 54 N.Y.2d 137, 444 N.Y.S.2d 893 (1981) in light of *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and *Padilla v. Kentucky*, 130 S.Ct.1473 (2010). *Jenkins* provides that merely nominal representation may be ineffective so that the two prong *Strickland, supra* test of a departure from customary practice or standards within the community that made a difference in the outcome has been supplemented by *Jenkins* and what is considered to now be the *per se* rule on collateral consequences.

39.     *Jenkins* and *Padilla* also change the hereto ruling of the New York Court of Appeals in *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61, 459 N.E.2d 170 (1983) which had held that there is "no catechism of rights of which a defendant must be afforded" at the time of his plea. Now the catechism exists but it must be coupled with more than merely normal representation.

40.     Furthermore, it does not appear that a Spanish interpreter was properly sworn or even certified at Mr. Granados's plea and sentencing hearings.

13

41.     At the time of his plea on November 12, 2009 the defendant was prosecuted by an SCI not a grand jury indictment. The defendant had no prior criminal record. He was not properly advised of his right to have the case presented to a grand jury where he could testify in his own behalf. See CPL §190.50. He was not informed of the role of the grand jury or that he could testify before it.

42.     The defendant was not informed of the fact that the complainant was the only witness against him and that there was no rape kit evidence or DNA to corroborate the so-called victim's version of the event. See, 2004, Co-Author of DNA: Forensic and Legal Applications, published by John Wiley & Sons, Inc., Hoboken, New Jersey.

43.     Defense counsel did not advise his client of his right to go to trial or of his right to cross-examine the complainant. See, Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. Leah Blumberg, Cross-Examining Children in Sexual Abuse Cases, The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18; Liotti, Thomas F., The Cross Examination of Child Witnesses, Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21; Liotti, Thomas F., The Cross-Examination of Experts in Civil and Criminal Cases, The Attorney of Nassau County, September, 2005 at 3, 10 and 13 and Liotti, Thomas F. and Skelos, Peter B., Credibility Questions for Prosecution Experts On Syndromes in Cases of Rape, Child Abuse, Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 and 7. Defense counsel did not discuss a potential strategy at all with the appellant.

44.     There is no record of a supporting deposition or even of what the People were prepared to prove. There is no medical evidence indicated. Clearly the defendant's best defense

14

of which he was not advised, was to deny the charges and subject the fifteen year old defendant to direct and cross-examination.

45.    The defendant pled guilty to two E felonies and gained literally nothing by pleading guilty. Any competent defense counsel would have advised him to go to trial[5].

46.    By pleading guilty to these charges, the defendant was subjected to jail (time served), probation; Level One Sex Offender registration requirements and mandatory deportation. His attorney at the time consented to the Level One designation without a hearing. This ineffective assistance of counsel is remarkable but made even more so because the defendant showed literally no understanding of the plea and its collateral consequences.

47.    The Court's perfunctory inquiry of the defendant and his allocution merely consisted of "yes" and "no" responses which did not verify that the defendant understood the nature and consequences of the plea or that he was entering it "knowingly, voluntarily and intelligently" especially since his attorney stood next to him and told him what to say.

48.    On the issue of deportation the Court inquired:

> The Court:    Do you understand that by pleading guilty today in this case, your plea may result in deportation or denial of naturalization?
>
> Defendant:    Yes.

Record of November 12, 2009 at 5, lines 15-18.

49.    The Court and defense counsel may not have been aware of it at the time but aside

---

[5] I am a Past President of the Criminal Courts' Bar Association of Nassau County; the New York State Association of Criminal Defense Lawyers and former Chair of the New York State Bar Association's Criminal Justice Section. I am also a Village Justice for more than 24 years.

from the dire economic conditions in El Salvador to which the defendant would be returned, the country is in a perpetual state of civil war. It is also engulfed by the highest crime rate in Central America including murder and gangs who threatened this defendant with death if he did not pay them.

50.    The defendant was not aware of the statutory rape laws in this country and the complaining witness stalked him and repeatedly attempted to seduce him and showed him pictures of numerous naked men with whom she claimed to have had sexual relations. No consideration was given by defense counsel to the complaining witness's lack of credibility or how that could be demonstrated at trial.

51.    Defense counsel did not file a §190.50 notice or retain an investigator. Defense counsel did not visit the scene or speak to any witnesses or even the police concerning his client. He did not investigate whether there was any evidence of the alleged victim fabricating or of her motives to lie. He did not have an investigator or attempt to speak with the complainant.

52.    Neither the Court nor defense counsel demonstrated an understanding of deportation or that immigration counsel had even been consulted.

53.    The People's papers in opposition are extremely disturbing in several respects but most importantly because they reflect not merely a lack of empathy for Mr. Granados as a new immigrant but a gross misunderstanding of the plight of new immigrants in the criminal justice system. In this instance that misunderstanding is so glaring that it clearly shows a blind adherence to uphold a conviction at all costs although the duty of the prosecutor is to do justice. This same blindness is also reflective of inexperience but then must lead to the conclusion that the People are deliberately discriminating against this defendant in violation of his civil and

16

Constitutional rights.

54.     The People have alleged that the defendant is barred from making these claims because he did not appeal. The People, of course, fail to mention that the defendant was compelled to waive his right to appeal as a condition of his plea. (See p. 5 of the plea minutes, lines 4-12). The defendant's lawyer at the time was assigned to represent the defendant in his appeal but did nothing to advise the defendant of his right to appeal and did nothing to perfect that appeal. There is nothing in the record or outside of it to show that the defendant had any understanding of his waiver; his rights to appeal or that he had free counsel assigned to him for that purpose. There is nothing to show that defense counsel filed a Notice of Appeal or did anything in writing or on the record to advise the defendant of his rights in that regard. The failure of defense counsel to properly advise the defendant of his rights or to take any action to protect those rights was further complicated by the fact that defense counsel did not represent the defendant in immigration proceedings and the defendant did not receive a state jail sentence other than time served. He was taken into the custody of immigration authorities and defense counsel, upon information and belief, made no attempt to contact the defendant concerning his rights with respect to an appeal, *habeas corpus*, immigration and deportation.

55.     These factors and others show that defense counsel had a conflict of interest in that he was ineffective and ceased to advocate for his client. The People have misstated the rigors of *Strickland v. Washington*, 466 U.S. 668 (1984) and *People v. Baldi*, 54 N.Y.2d 137 (1981) in that the Second Circuit has held that merely nominal legal representation is ineffective. See, *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and that a defense lawyer who ceases to advocate for a client is ineffective. See *Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995).

17

56.     It is also appalling that the People, particularly when faced with the affidavit of

Leyda Cruz attached to this defendant's motion papers have failed to disclose the *Brady* material

reflected therein (see ¶5 of the Cruz affidavit).  The People in this County are in the habit of not

disclosing *Brady* material.  See *People v. Daly*, 20 A.D.2d 542, 799 N.Y.S.2d 537 (2nd Dept.

2005); 5 N.Y.3d 882 (2005); 57 A.D.3d 914 (2d Dept., 2008); Liotti, Thomas F., The Uneven

Playing Field, Part III, Or What's On The Discovery Channel, St. John's Law Review, Vol. 77,

No. 1, Winter 2003, pp. 67-74 and Liotti, Thomas F. and Zeh, Christopher, Uneven Playing

Field: Ethical Disparities Between The Prosecution And Defense Functions In Criminal Cases,

Touro Law Review, Vol. 17, No. 2, Winter 2001 at pp. 467-501.

57.     No doubt the most troubling example of the People's failure to comply with

*Brady* is in regard to the allegation in the Cruz affidavit that the alleged underage victim was

examined by a Medical Doctor after the purported statutory rape and found to be still a virgin.

The People have not even addressed this issue in their responding papers.

58.     The legal point here is, not that the ineffective assistance claim is based upon a

myopic reading of *Padilla v. Kentucky*, 130 S.Ct.1473 (2010) alone because the claims are not

limited to improperly advising the defendant with respect to deportation although it is a

significant part in the microcosm of the plea and sentence.  However, in the macrocosm of failed

immigration policies and a failure to provide effective legal representation to immigrants in

criminal cases neither our New York Court of Appeals nor the Supreme Court of the United

States except for piecemeal decisions such as *Padilla*, have addressed the global legal issues of

ineffective assistance of counsel under *Gideon v. Wainright*, 372 U.S. 335 (1963) and the Sixth

Amendment of the United States Constitution.  What more must we do to insure that the rights of

18

these defendants are fully protected?  The rendition of so-called *Boykin* rights by themselves are not enough to insure an understanding of the legal process for people who come before our courts with limited or no English language skills.  Interpreters merely repeat what Judges have to say. Yet there is a void or a gap that exists under existing law because the answers to perfunctory questions posed by the court, often parroted by defendants from the sotto voce of defense counsel, do not in any way show an understanding of their rights or that a waiver of them is occurring "knowingly, voluntarily and intelligently".  The cultural and educational gap is huge. A defendant from a foreign country, here perhaps illegally, wants to avoid trouble, seeing himself as a cog in the system and his only way out being to be compliant and subservient just as the slaves of yesteryear had to be obedient of their masters.  Just as slavery was wrong so too our system of criminal justice in many ways has allowed that bygone era to continue albeit in a different form which belies the true realities of a pluralistic society.

59.     The evidence and information contained in this application were not known and could not have been previously known by this appellant.

WHEREFORE, the defendant respectfully prays that this Court will grant this application for leave to appeal before it and for such other and further relief as to the Court seems just and proper.

DATED:     Garden City, New York
           August 26, 2015

                                THOMAS F. LIOTTI

19