SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

              Respondent,

                                         NOTICE OF MOTION

      -against-                           Ind. No. 2400N-09

JOSE DEJESUS GRANADOS,

              Defendant-Appellant.

------------------------------------------------------------X

       PLEASE TAKE NOTICE that upon the annexed affirmation of Thomas F. Liotti, Esq.,

attorney at law, dated the 2ⁿᵈ day of August, 2015, upon Ind. No. 2400N-09 and upon all the

proceedings heretofore had herein, the undersigned will move this court, at a       Term thereof of

the Appellate Division, Second Judicial Department located at 45 Monroe Place, Brooklyn, New

York, on the 25th day of September, 2015 at 9:30 o'clock in the forenoon of that day, or as soon

thereafter as counsel can be heard, granting defendant-appellant:

      1.      A certificate for leave to appeal pursuant to CPL §§450.15 and 460.15 and from a

denial of the defendant's CPL §440.10 and 440.20 motion as per CPL §450.15(1) and (2);

      2.      For such other and further relief as the Court may deem just and proper.

       PLEASE TAKE FURTHER NOTICE that answering affidavits, if any, are required to be

served upon the undersigned at least seven (7) days before the return date of this motion.

DATED:      Garden City, New York
              August 26, 2015

THOMAS F. LIOTTI, ESQ.
LAW OFFICES OF THOMAS F. LIOTTI
Attorneys for Defendant-Appellant
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700

TO:     MADELINE SINGAS
        Acting District Attorney, Nassau County
        262 Old Country Road
        Mineola, New York 11501

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

-----------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

                Respondent,

                                            AFFIRMATION IN SUPPORT

              -against-                           Ind. No. 2400N-09

JOSE DEJESUS GRANADOS,

                Defendant-Appellant.

-----------------------------------------------------------X

       THOMAS F. LIOTTI, an attorney duly admitted to practice law before the Courts of the

State of New York hereby affirms the following to be true under the penalties of perjury:

       1.      I am the attorney for the defendant herein and as such I am fully familiar with the

facts and circumstances of this case.

       2.      This is an application for leave to appeal from the denial of a CPL §440 motion

decided by the Honorable Angelo A. Delligatti, Nassau County Supreme Court Justice and on

August 17, 2015 with a Notice of Entry dated August 25, 2015.

       3.      Attached to this application as Exhibit "A" are the defendant's Notice of Motion

dated April 16, 2015; an affirmation in support of it; the affidavit of the defendant-appellant in

support of that; the affidavit of Lucia Tobon, the Spanish interpreter dated April 13, 2015 and the

affidavit of Leyda Cruz, the wife of the defendant-appellant and sister of the complaining

witness's mother dated April 13, 2015.  Also attached from the Trial Court are the People's

1

papers in opposition dated May 6, 2015 (Exhibit "B"); this counsel's reply affirmation dated May 18, 2015 (Exhibit "C"); the aforementioned Trial Court decision by Justice Delligatti dated August 17, 2015 (Exhibit "D"); the plea minutes dated November 12, 2009 (Exhibit "E") and the sentencing minutes dated January 8, 2010 (Exhibit "F").

4.      The defendant pled guilty in Nassau County Court to statutory rape. He was then deported and is now subject to wrongful re-entry charges in federal court before the Honorable Joanna Seybert (Docket No. 15-171) where he has waived speedy trial rights awaiting the exhaustion of his remedies here. His application here is for leave to appeal from a denial of a CPL §440 motion to vacate the aforementioned plea of guilty and sentencing therein.

5.      The claims of the defendant-appellant are based upon: (1) ineffective assistance of counsel; (2) actual innocense; (3) improper advisement of rights at the time of his plea and sentence pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969); (4) improper advisement of rights under *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010); and (5) denial of his civil and Constitutional rights to due process of law under both the State and Federal Constitutions.

6.      The defendant-appellant never appealed from his plea conviction. The issues presented herein have never before been considered by any court except by Justice Delligatti who improperly gave these very significant Constitutional issues short shrift. The case is particularly important due to the defendant-appellant's actual innocence and his extremely limited understanding of his rights, the English language and our system of justice. The defendant-appellant was threatened with death by gangs in his native country of El Salvador where two of his cousins have already been killed. The defendant-appellant should be entitled to political asylum in this country but instead is subject to deportation where the consequence will be certain

2

death. This is a case that cries out for justice and a dismissal. For the reasons stated herein, it should not have been ignored by Justice Delligatti.

7.     In our national debates among Presidential candidates we are witnessing the catastrophic effects of failed immigration policies which are also most glaring in our criminal justice system. On the one hand there are those who say that the solution is to round them up; build a wall and send them back. On the other hand there are those in search of legitimate solutions which preserve the Constitutional rights of our nation. Justice Delligatti's decision does not do justice to these issues at all. It is simply a knee jerk reaction echoing the bluster of Donald Trump. If we are truly a nation of laws then these Constitutional principles should be of the utmost importance to us, not submitting to the angry, crazed rhetoric of politicians.

8.     There is not doubt about the paucity of proof in this case. Mr. Granados had no prior record and he was married. There was no forensic or DNA evidence linking him to the crime. There were no eyewitnesses that ever placed him alone with the complainant that he was accused of raping. The complainant had a motive to lie in this case and was put up to it by her mother who was angry over the defendant-appellant's estrangement from her sister[1].

9.     There was no DNA[2] evidence or a rape kit[3].

---

[1] *People v. Fortin*, 184 Misc.2d 10, 706 N.Y.S.2d 611 (Nassau County, 2000) and *People v. Jeffrey Bimonte*, 712 N.Y.S.2d 829 (2000).

[2] 2004, Co-Author of <u>DNA: Forensic and Legal Application</u>, published by John Wiley & Sons, Inc., Hoboken, New Jersey.

[3] Liotti, Thomas F. and Smith, Drummond, <u>Spoliation of Evidence by Prosecutors,</u> Verdict (a magazine published by the National Coalition of Concerned Legal Professionals, July, 2008 at 1, 3 and 4 and New York Criminal Law Newsletter (a publication of the Criminal Justice Section of the New York State Bar Association), Summer, 2008, vol. 6, no. 3 at 9.

10.     Defense counsel produced no expert testimony on fabrication or Rape Trauma Syndrome. This is standard fare in any case of this genre and has been for more than twenty-five years[4]. Defense counsel was a wallflower in this case, poorly equipped to handle the case.

11.     Mr. Granados has been wrongfully convicted. The charges against him should be dismissed.

12.     The defendant is currently incarcerated in the Nassau County Correctional Center under Case No. 15-MJ-00228(SIL) where he has been in custody since March 12, 2015 and where it is alleged that he is an alien who was previously denied admission and deported but who is alleged to have returned to the United States without permission in violation of 8 *U.S.C.* §§1326(a) and 1326(b). A copy of the federal felony complaint is attached as Exhibit "A" to the defendant's CPL §440 motion. The defendant has not yet been indicted. I am representing him on those federal charges as well.

13.     The defendant's date of birth is December 25, 1975 and his native country is El Salvador. He is not a United States citizen.

14.     I have been retained to represent the defendant in regard to the vacatur of his pleas, sentence and convictions here in Nassau County, New York. I have also been retained to represent him with respect to the federal charges against him but not his immigration matters which will follow. Accordingly, I have inspected his Court files in the County Court Clerk's

---

[4] Liotti, Thomas F. And Skelos, Peter B., Credibility Questions for Prosecution Expert on Syndromes in Cases of Rape, Child Abuse, Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 & 7 and Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. Leah Blumberg, Cross-Examining Children in Sexual Abuse Cases, The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18 and The Cross-Examination of Child Witnesses, Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21.

4

Office.  Defendant was previously convicted of felony charges in New York and is herewith

moving to vacate those pleas and sentences.  He has not made application to do so since the

Supreme Court of the United States' holding in *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010).  That

case provided that a failure to advise a defendant of the collateral consequences of his plea

including deportation is ineffective, thus violating a defendant's Sixth Amendment rights under

the Constitution of the United States.

15.     Upon information and belief, the defendant-movant has a family here in the

United States including wife, Leyda Carolina Cruz, a permanent resident and Valeria Emely

Granados, a child with his wife, age 13.  On September 16, 2014 the movant initiated, *pro se*, a

divorce action against his wife in Nassau County Supreme Court, Index No. 2014-202726.  The

movant's wife and daughter reside in Carle Place, New York.  The complaining witness Michelle

Reyes is the daughter of the movant's wife's sister.  It is contended that the alleged victim was

put up to fabricating the story by the movant's wife and her sister because the movant has been

estranged from his wife for eight to nine years.

16.     The question in this case is whether his pleas and sentences here in New York

should be vacated either because they were entered in violation of *Boykin v. Alabama*, 395 U.S.

238 (1969) and not in conformance with our State standard of *People v. Harris*, 61 N.Y.2d 9, 471

N.Y.S.2d 61 (1983) and secondly, the defendant was not advised of the collateral consequences

of his pleas and sentences here in New York and whether *Padilla, supra* should be given

retroactive effect in this case.

17.     Prior to November 17, 1990 the United States law would allow someone such as

the defendant to become a permanent resident if he had lived in the United States for seven years.

5

In 1990 §212( c) of the Nationality Act (INA) prohibited a long standing permanent resident to have a legal status here if convicted of an aggravated felony and having served five (5) years in jail. The defendant was never apprised of his eligibility to apply for permanent residence or how subsequent enactments such as the Anti-terrorism and Effective Death Penalty Act of April 24, 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 have made re-entry into the United States and permanent legal residence here nearly impossible to achieve. See also, *Rankine v. Reno*, 319 F.3d 93 (2003); *Vartelas v. Holder*, 132 S.Ct. 1479 (2012) and *U.S. v. Gill*, 748 F.3d 491 (2014). Without these advisements the defendant's plea can not be said to have been taken "knowingly, voluntarily and intelligently."

18.    The defendant has been incarcerated for five months and has a severe economic hardship warranting a vacatur of these charges and a dismissal of them. See an Editorial, <u>Locked Away in Immigration Jails</u>, The New York Times, February 24, 2014 at A18 attached as Exhibit "B" to the defendant's CPL §440 motion. See also, John Eligor and Damien Cave, <u>Paying Price, 16 Years Later for an Illegal Entry</u>, The New York Times, March 20, 2014 at 17 and 18.

19.    The defendant is now claiming actual innocense; a violation of his Constitutional rights and a necessity defense in that our failed immigration policies force millions to live and work under the radar in order to survive economically.

20.    The defendant's prior criminal history now the subject of this motion involves pleas of guilty to two E felonies before Justice McCormack on November 12, 2009, with sentencing thereafter on January 9, 2010. The defendant's original docket number on the felony complaint was 15998/2009. The Judge was Hon. James P. McCormack. A copy of the defendant's certificate of disposition is attached as Exhibit "E" to the defendant's CPL §440

6

motion. The defendant was sentenced to time served (he was arrested on June 22, 2009); ten years of probation; an order of protection was entered; the defendant was determined to be a Level One Sex Offender and fully paid $1,425 for a Crime Victim's Assistance Fee; DNA registration; a surcharge and Sex Offender Registration of $1,050.00. The defendant was then deported.

21.    He was represented by counsel but not given all of his *Boykin* rights or advised of the collateral consequences of his plea.

22.    Since 1995 the CPL has provided that trial judges should advise an immigrant defendant of the possible deportation consequences of the plea. That was not done here in either of the defendant's two prior felony cases. On November 19, 2013 the New York Court of Appeals decided *People v. Peque*, 22 N.Y.3d 168, 980 N.Y.S.2d 280 (2013). The five Judge majority of the Court held that trial judges must caution non-citizen defendants that they may be deported before allowing them to plead guilty to a felony. Chief Judge Lippman and Judge Rivera held that the remedy of vacating the pleas was appropriate since due process rights were involved. See also, Spiros A. Tsimbinos, New York Court of Appeals Deals with Consequences of Padilla Decisions, NYSBA Criminal law Newsletter, Spring, 2014, vol. 12, no. 2 at 6 and 7.

23.    The defendant also waived his right to appeal, not "knowingly, voluntarily or intelligently." Thus he did not perfect any appeals although his lawyer was assigned under County Law, Article 18-b to represent the defendant in connection with an appeal, he failed to render any legal services in that regard.

24.    *Padilla* was not given retroactive effect in *People v. Baret*, 99 A.D.3d 408, 409 (1st Dept. 2012), 23 N.Y.2d 777, 992 N.Y.S.2d 738 (2015). See also, Sheila L. Baritista,

7

Retroactivity of Padilla v. Kentucky in New York State, NYSBA New York Criminal Law Newsletter, Spring, 2014, vol. 12, no. 2 at 8 and 9 (attached as Exhibit "F" to the defendant's CPL §440 motion).  It appears that the *Baret* case may now be in direct appeal to the Supreme Court of the United States.

25.     The failure to adequately advise a defendant of the fact that a plea of guilty would subject him to removal from the United States is violative of the rule established in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969); see also, *U.S. v. Udeagu*, 110 F.R.D. 172 (1986) where it was determined that there are certain fundamental rights that every person accused of a crime has and which may only be waived "knowingly, voluntarily and intelligently".  See also, *People v. Woodard*, 188 Misc.2d 7 (2002).  In *Udeagu, supra* represented by this defense counsel, Judge Jack Weinstein found that the defendant had not been apprised of his post-release guidelines and vacated the plea.

26.     Mr. Granados was denied many constitutional rights during these proceedings. The most important is effective assistance of competent counsel.  Every defendant who faces criminal charges is entitled to effective assistance of competent counsel.  See, *McMann v. Richardson*, 397 U.S. 759, 771 (1970), see also, *Reece v. Georgia*, 350 U.S. 85, 90 (1955), *Powell v. Alabama*, 287 U.S. 45 (1932).  *McMann* defines effective assistance of counsel to be that which falls within the range of competence demanded of attorneys in criminal cases. However, the *McMann* standard is only one-half of the evaluation of the claim of effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984) the Court developed a two prong standard for assessing the defendant's claim of ineffective assistance of counsel.  The first prong applied the *McMann* test, requiring the defendant to prove that "counsel's

8

representation fell below the objective standard of reasonableness." *Id.* at 688. The second

prong requires that the defendant show "there is a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Under Article I, Section 6 of the New York Constitution, the State of New York has developed a

slightly different test for ineffective assistance of counsel from that employed by the Supreme

Court in *Strickland v. Washington.* See, *People v. Claudio*, 629 N.E.2d 384, 386 ("nonetheless,

the basic purposes and constitutional interests at stake under both constitutional guarantees of an

adequate legal defense in a criminal case are the same. (1) the preservation of our unique

adversarial system of criminal justice, the underlying supposition of which 'is that partisan

activity on both sides of the case will best promote the ultimate objective that the guilty be

convicted and the innocent go free' *United States v. Chronic*, 466 U.S. 648, 655, 104 S.Ct. 2039,

2045, L.Ed.2d 657 quoting from *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555,

45 L.Ed.2d 593 and (2) the corrective necessity to provide a defendant with an advocate

sufficiently competent to ensure the fairness of the adversarial criminal process. *United States v.*

*Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.ed.2d 564.") See also, *Jenkins v. Coombe*,

821 F.2d 158 (1987) where nominal representation was sufficient to set aside a conviction and

*Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995) where defense counsel ceased to advocate and the

conviction was overturned. This defense counsel represented both defendants; to wit: *Jenkins*

and *Lopez, supra.*

27.     Ineffective assistance of counsel may "render a guilty plea involuntary, and hence

invalid." *Ventura v. Meachum*, 957 F.2d. 1048, 1058 (2d. Cir. 1992). See, *United States v.*

*George*, 869 F.2d. 333, 335-336 (7th Cir. 1989) (An "accused who has not received reasonably

9

effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily.); *see also Downs-Morgan v. United States*, 765. F.2d. 1534 (11th Cir. 1985). Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52 (1985). Mr. Jose DeJesus Granados did not have the benefit of effective assistance of counsel during his plea and sentencing. His legal representation was definitely not "within the range of competence demanded of attorneys of criminal cases" and granted to all people by the Sixth Amendment. See, *McMann* at 771. It also did not meet the initial prong of the *Baldi* test for effective assistance of counsel. See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).

28.     It is antithetical that if a lawyer violates his ethical duty to his client that he has provided effective assistance of counsel in his cause. The initial prong of the *Baldi* test for effective assistance of counsel requires that counsel advocate in a partisan manner on behalf of Mr. Granados. This did not happen. While representing Mr. Granados his former attorney never advised him about the collateral consequences of deportation. As a result of this failure they failed to meet the initial prong of the *Baldi* case.

29.     Mr. Granados's former counselor also did not meet the second *Baldi* prong of effective assistance of counsel during his plea negotiations because his counsel did not provide him with sufficiently competent representation to ensure fairness. See *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981). Mr. Granados's counsel was clearly not sufficiently competent to provide him with <u>fairness</u> in the adversarial criminal process nor did he

10

even attempt to advocate zealously.  They effectively forced Mr. Granados to take the pleas in order to dispose of the case expeditiously.  This conduct violates multiple disciplinary rules and ethical codes of conduct.  *See* DR 1-102 and 5-105(B).

30.  It is very clear from the plea minutes attached to the defendant's motion herein that the defendant did not "knowingly, voluntarily and intelligently" admit to a prior felony conviction since minutes of it were not available, defense counsel failed to do a proper investigation and the Court did not make a proper inquiry.

31.  Mr. Granados's pleas should be rendered involuntary because they did not meet the standard set forth in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005) (a valid guilty plea requires that the defendant have a complete understanding of the charges against him or her).  A guilty plea will be sustained in the absence of any factual recitation of the underlying circumstances of the crime if the pleading defendant is represented by *able* and active counsel, and there is no suggestion in the record that the plea was improvident or baseless.  *People v. Nixon*, 21 NY2d. 338, 350 (NY 1967); *People v. Doceti*, 175 A.D.2d. 256 (2d. Dept. 1991); *cf. People v. Seeber*, 4 NY3d. 780 (NY 2005) (an explicit admission of guilt as to every element of the crime does not have to be incorporated into the allocution of every valid plea).  However, Mr. Granados did not have able or effective counsel because he did not fully inform him of the effect of his guilty pleas, specifically that he would be subject to deportation. (See Granados affidavit annexed hereto).

32.  The guilty plea tendered by the defendant was not knowingly, voluntarily and intelligently made in that his attorney did not apprise him of the probability that he could be deported, this constitutes ineffective assistance of counsel, *per se.*

11

33.     Ultimately, what we are faced with in this situation is a non-lawyer, with a limited understanding of the law in general, English and an even more limited understanding of New York and immigration law, who, on the advice of counsel, simply pled guilty with absolutely no comprehension of the consequences of that plea, because his attorney did not advise him of same. The defendant's guilty plea is violative of the rule established in *Strickland, Boykin* and *Padilla* and should be given back. The defendant has less than an American high school education from El Salvador with no understanding of our culture, language or system of justice.

34.     On March 31, 2010 the Supreme Court handed down a 7-2 decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). One of the cases relied upon in the instant CPL §440 motion, because Mr. Granados's former attorneys failed completely to advise their client about the effect a conviction for statutory rape with a level one sexual offender registration and ten (10) years probation would have on his ability to remain in this Country. There is literally nothing in the record to show that the defendant was apprised by his counsel of sex offender registration or what his chances of success would be at trial.

35.     In *Padilla*, the Court held that a defense lawyer failed to provide his non-citizen client effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) when he did not warn him that he was almost certain to be deported if he pled guilty. It was the first time the Court applied the *Strickland* standard to a lawyer's failure to advise a client about a consequence of conviction that is not part of the sentence imposed by the Court.

36.     Defense counsels' lack of advisement with respect to deportation falls squarely under the *Strickland* ineffective assistance of counsel standard. A review of Mr. Granados's plea minutes makes clear that he was never advised, on the record, about <u>any</u> collateral

12

consequences resulting from a guilty plea. As a result, Mr. Granados's removal status falls squarely under the decision in *Padilla*. While the federal and state's high court have found that *Padilla* should not be applied retroactively, the appellant has other claims including actual innocense.

37.     Had Mr. Granados been properly advised rather than simply being rushed to the slaughter, he certainly would have sought out other options including going to trial. As it stands, he is facing more jail and facing removal from the United States.

38.     The People have historically also misread or misunderstood the holdings in *Strickland v. Washington*, 466 U.S. 668 (1984) and its state equivalent, *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893 (1981) in light of *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and *Padilla v. Kentucky*, 130 S.Ct.1473 (2010). *Jenkins* provides that merely nominal representation may be ineffective so that the two prong *Strickland, supra* test of a departure from customary practice or standards within the community that made a difference in the outcome has been supplemented by *Jenkins* and what is considered to now be the *per se* rule on collateral consequences.

39.     *Jenkins* and *Padilla* also change the hereto ruling of the New York Court of Appeals in *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61, 459 N.E.2d 170 (1983) which had held that there is "no catechism of rights of which a defendant must be afforded" at the time of his plea. Now the catechism exists but it must be coupled with more than merely normal representation.

40.     Furthermore, it does not appear that a Spanish interpreter was properly sworn or even certified at Mr. Granados's plea and sentencing hearings.

13

41.     At the time of his plea on November 12, 2009 the defendant was prosecuted by an SCI not a grand jury indictment.  The defendant had no prior criminal record.  He was not properly advised of his right to have the case presented to a grand jury where he could testify in his own behalf.  See CPL §190.50.  He was not informed of the role of the grand jury or that he could testify before it.

42.     The defendant was not informed of the fact that the complainant was the only witness against him and that there was no rape kit evidence or DNA to corroborate the so-called victim's version of the event.  See, 2004, Co-Author of <u>DNA: Forensic and Legal Applications,</u> published by John Wiley & Sons, Inc., Hoboken, New Jersey.

43.     Defense counsel did not advise his client of his right to go to trial or of his right to cross-examine the complainant.  See, Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. Leah Blumberg, <u>Cross-Examining Children in Sexual Abuse Cases,</u> The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18; Liotti, Thomas F., <u>The Cross Examination of Child Witnesses,</u> Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21; Liotti, Thomas F., <u>The Cross-Examination of Experts in Civil and Criminal Cases,</u> The Attorney of Nassau County, September, 2005 at 3, 10 and 13 and Liotti, Thomas F. and Skelos, Peter B., <u>Credibility Questions for Prosecution Experts On Syndromes in Cases of Rape, Child Abuse,</u> Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 and 7.  Defense counsel did not discuss a potential strategy at all with the appellant.

44.     There is no record of a supporting deposition or even of what the People were prepared to prove.  There is no medical evidence indicated.  Clearly the defendant's best defense

14

of which he was not advised, was to deny the charges and subject the fifteen year old defendant to direct and cross-examination.

45.     The defendant pled guilty to two E felonies and gained literally nothing by pleading guilty. Any competent defense counsel would have advised him to go to trial[5].

46.     By pleading guilty to these charges, the defendant was subjected to jail (time served), probation; Level One Sex Offender registration requirements and mandatory deportation. His attorney at the time consented to the Level One designation without a hearing. This ineffective assistance of counsel is remarkable but made even more so because the defendant showed literally no understanding of the plea and its collateral consequences.

47.     The Court's perfunctory inquiry of the defendant and his allocution merely consisted of "yes" and "no" responses which did not verify that the defendant understood the nature and consequences of the plea or that he was entering it "knowingly, voluntarily and intelligently" especially since his attorney stood next to him and told him what to say.

48.     On the issue of deportation the Court inquired:

The Court:     Do you understand that by pleading guilty today in this case, your plea may result in deportation or denial of naturalization?

Defendant:     Yes.

[1] Record of November 12, 2009 at 5, lines 15-18.

49.     The Court and defense counsel may not have been aware of it at the time but aside

---

[5] I am a Past President of the Criminal Courts' Bar Association of Nassau County; the New York State Association of Criminal Defense Lawyers and former Chair of the New York State Bar Association's Criminal Justice Section. I am also a Village Justice for more than 24 years.

15

from the dire economic conditions in El Salvador to which the defendant would be returned, the country is in a perpetual state of civil war. It is also engulfed by the highest crime rate in Central America including murder and gangs who threatened this defendant with death if he did not pay them.

50.     The defendant was not aware of the statutory rape laws in this country and the complaining witness stalked him and repeatedly attempted to seduce him and showed him pictures of numerous naked men with whom she claimed to have had sexual relations. No consideration was given by defense counsel to the complaining witness's lack of credibility or how that could be demonstrated at trial.

51.     Defense counsel did not file a §190.50 notice or retain an investigator. Defense counsel did not visit the scene or speak to any witnesses or even the police concerning his client. He did not investigate whether there was any evidence of the alleged victim fabricating or of her motives to lie. He did not have an investigator or attempt to speak with the complainant.

52.     Neither the Court nor defense counsel demonstrated an understanding of deportation or that immigration counsel had even been consulted.

53.     The People's papers in opposition are extremely disturbing in several respects but most importantly because they reflect not merely a lack of empathy for Mr. Granados as a new immigrant but a gross misunderstanding of the plight of new immigrants in the criminal justice system. In this instance that misunderstanding is so glaring that it clearly shows a blind adherence to uphold a conviction at all costs although the duty of the prosecutor is to do justice. This same blindness is also reflective of inexperience but then must lead to the conclusion that the People are deliberately discriminating against this defendant in violation of his civil and

16

Constitutional rights.

54.     The People have alleged that the defendant is barred from making these claims

because he did not appeal.  The People, of course, fail to mention that the defendant was

compelled to waive his right to appeal as a condition of his plea.  (See p. 5 of the plea minutes,

lines 4-12).  The defendant's lawyer at the time was assigned to represent the defendant in his

appeal but did nothing to advise the defendant of his right to appeal and did nothing to perfect

that appeal.  There is nothing in the record or outside of it to show that the defendant had any

understanding of his waiver; his rights to appeal or that he had free counsel assigned to him for

that purpose.  There is nothing to show that defense counsel filed a Notice of Appeal or did

anything in writing or on the record to advise the defendant of his rights in that regard.  The

failure of defense counsel to properly advise the defendant of his rights or to take any action to

protect those rights was further complicated by the fact that defense counsel did not represent the

defendant in immigration proceedings and the defendant did not receive a state jail sentence

other than time served.  He was taken into the custody of immigration authorities and defense

counsel, upon information and belief, made no attempt to contact the defendant concerning his

rights with respect to an appeal, *habeas corpus*, immigration and deportation.

55.     These factors and others show that defense counsel had a conflict of interest in

that he was ineffective and ceased to advocate for his client.  The People have misstated the

rigors of *Strickland v. Washington*, 466 U.S. 668 (1984) and *People v. Baldi*, 54 N.Y.2d 137

(1981) in that the Second Circuit has held that merely nominal legal representation is ineffective.

See, *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and that a defense lawyer who ceases to advocate

for a client is ineffective.  See *Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995).

17

56.     It is also appalling that the People, particularly when faced with the affidavit of

Leyda Cruz attached to this defendant's motion papers have failed to disclose the *Brady* material

reflected therein (see ¶5 of the Cruz affidavit).  The People in this County are in the habit of not

disclosing *Brady* material.  See *People v. Daly*, 20 A.D.2d 542, 799 N.Y.S.2d 537 (2nd Dept.

2005); 5 N.Y.3d 882 (2005); 57 A.D.3d 914 (2d Dept., 2008); Liotti, Thomas F., The Uneven

Playing Field, Part III, Or What's On The Discovery Channel, St. John's Law Review, Vol. 77,

No. 1, Winter 2003, pp. 67-74 and Liotti, Thomas F. and Zeh, Christopher, Uneven Playing

Field: Ethical Disparities Between The Prosecution And Defense Functions In Criminal Cases,

Touro Law Review, Vol. 17, No. 2, Winter 2001 at pp. 467-501.

57.     No doubt the most troubling example of the People's failure to comply with

*Brady* is in regard to the allegation in the Cruz affidavit that the alleged underage victim was

examined by a Medical Doctor after the purported statutory rape and found to be still a virgin.

The People have not even addressed this issue in their responding papers.

58.     The legal point here is, not that the ineffective assistance claim is based upon a

myopic reading of *Padilla v. Kentucky*, 130 S.Ct.1473 (2010) alone because the claims are not

limited to improperly advising the defendant with respect to deportation although it is a

significant part in the microcosm of the plea and sentence.  However, in the macrocosm of failed

immigration policies and a failure to provide effective legal representation to immigrants in

criminal cases neither our New York Court of Appeals nor the Supreme Court of the United

States except for piecemeal decisions such as *Padilla*, have addressed the global legal issues of

ineffective assistance of counsel under *Gideon v. Wainright*, 372 U.S. 335 (1963) and the Sixth

Amendment of the United States Constitution.  What more must we do to insure that the rights of

18

these defendants are fully protected?  The rendition of so-called *Boykin* rights by themselves are not enough to insure an understanding of the legal process for people who come before our courts with limited or no English language skills.  Interpreters merely repeat what Judges have to say. Yet there is a void or a gap that exists under existing law because the answers to perfunctory questions posed by the court, often parroted by defendants from the sotto voce of defense counsel, do not in any way show an understanding of their rights or that a waiver of them is occurring "knowingly, voluntarily and intelligently".  The cultural and educational gap is huge. A defendant from a foreign country, here perhaps illegally, wants to avoid trouble, seeing himself as a cog in the system and his only way out being to be compliant and subservient just as the slaves of yesteryear had to be obedient of their masters.  Just as slavery was wrong so too our system of criminal justice in many ways has allowed that bygone era to continue albeit in a different form which belies the true realities of a pluralistic society.

59.     The evidence and information contained in this application were not known and could not have been previously known by this appellant.

WHEREFORE, the defendant respectfully prays that this Court will grant this application for leave to appeal before it and for such other and further relief as to the Court seems just and proper.

DATED:     Garden City, New York
           August 26, 2015

                                   _____
                                   THOMAS F. LIOTTI

19

**EXHIBIT A**

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA

-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                                                  NOTICE OF MOTION

       -against-                                 SCI No. 2400N/09
                                                      Refer to: Hon. James McCormack

JOSE DEJESUS GRANADOS,

                                Defendant.

-----------------------------------------------------------X

      PLEASE TAKE NOTICE that upon the annexed affirmation of Thomas F. Liotti.,

attorney for the defendant, dated April 16, 2015, together with the affidavits of Jose DeJesus

Granados, sworn to April 16, 2015, the affidavit of Lucia Tobon, sworn to April 13, 2015, the

affidavit of Leyda Cruz, sworn to April 13, 2015 and upon all prior proceedings heretofore had

herein, the undersigned will move this Court, Nassau County Court, 262 Old Country Road,

Mineola, New York 11501 on May 11, 2015 at 9:30 o'clock in the forenoon thereof, or as soon

thereafter as counsel may be heard for an order as follows:

      1.     Why an order, pursuant to C.P.L. §440.10(1)(h) should not be made and entered

herein vacating the conviction of Jose DeJesus Granados and dismissing the conviction or,

alternatively, ordering a new trial for him in all respects; and

      2.     For such other and further relief as may seem just and proper to the Court.

      PLEASE TAKE FURTHER NOTICE, that the defendant, Jose DeJesus Granados,

reserves his right, pursuant to C.P.L. §255.20(2), to make all further motions predicated upon the

1

answer to the instant motion.

Dated: Garden City, New York
April 16, 2015

THOMAS F. LIOTTI, ESQ.
LAW OFFICES OF THOMAS F. LIOTTI
Attorneys for Defendant
600 Old Country Road, Suite 530
Garden City, New York  11530
(516) 794-4700


TO:     MADELINE SINGAS
        ACTING DISTRICT ATTORNEY, NASSAU COUNTY
        262 Old Country Road
        Mineola, New York 11501

2

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
----------------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK,

              -against-                        <u>AFFIRMATION IN SUPPORT</u>

JOSE DEJESUS GRANADOS,                  SCI No. 2400N/09

                            Defendant.
----------------------------------------------------------X

      THOMAS F. LIOTTI, ESQ., an attorney duly admitted to practice in the courts of the

State of New York, does hereby affirm the following under penalties of perjury:

      1.     I am the attorney for the above named defendant, and as such I am fully familiar

with the facts of this case and submit this affirmation in support of the defendant's Motion to

vacate his judgments of conviction and dismissing the convictions, or, in the alternative, ordering

a new trial.  I am not aware of any prior CPL §440 motions having been filed or if any direct

appeals or writs of error *coram nobis* and *habeas corpus* having been previously filed by this

defendant *pro se* or by any other attorney.

      2.     Upon information and belief, the defendant is currently incarcerated in the Nassau

County Correctional Center under Case No. 15-MJ-00228(SIL) where he has been in custody

since March 12, 2015 and where it is alleged that he is an alien who was previously denied

admission and deported but who is alleged to have returned to the United States without

permission in violation of 8 *U.S.C.* §§1326(a) and 1326(b).  A copy of the federal felony

complaint is attached as Exhibit "A".  The defendant has not yet been indicted.  I am representing

him on those federal charges as well.

      3.     The defendant's date of birth is December 25, 1975 and his native country is El

1

Salvador. He is not a United States citizen.

4.      I have been retained to represent the defendant in regard to the vacatur of his pleas, sentence and convictions here in Nassau County, New York. I have also been retained to represent him with respect to the federal charges against him but not his immigration matters which will follow. Accordingly, I have inspected his Court files in the County Court Clerk's Office. Defendant was previously convicted of felony charges in New York and is herewith moving to vacate those pleas and sentences. He has not made application to do so since the Supreme Court of the United States' holding in *Padilla v. Kentucky*, 130 S.Ct. 1472 (2010). That case provided that a failure to advise a defendant of the collateral consequences of his plea including deportation is ineffective, thus violating a defendant's Sixth Amendment rights under the Constitution of the United States.

5.      Upon information and belief, the defendant-movant has a family here in the United States including wife, Leyda Carolina Cruz, a permanent resident and Valeria Emely Granados, a child with his wife, age 13. On September 16, 2014 the movant initiated, *pro se*, a divorce action against his wife in Nassau County Supreme Court, Index No. 2014-202726. The movant's wife and daughter reside in Carle Place, New York. The complaining witness Michelle Reyes is the daughter of the movant's wife's sister. It is contended that the alleged victim was put up to fabricating the story by the movant's wife and her sister because the movant has been estranged from his wife for eight to nine years.

6.      The question in this case is whether his pleas and sentences here in New York either because they were entered in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969) and not in conformance with our State standard of *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61

2

(1983) and secondly, the defendant was not advised of the collateral consequences of his pleas and sentences here in New York and whether *Padilla, supra* should be given retroactive effect in this case.

7.     Prior to November 17, 1990 the United States law would allow someone such as the defendant to become a permanent resident if he had lived in the United States for seven years. In 1990 §212(c) of the Nationality Act (INA) prohibited a long standing permanent resident to have a legal status here if convicted of an aggravated felony and having served five (5) years in jail. The defendant was never apprised of his eligibility to apply for permanent residence or how subsequent enactments such as the Anti-terrorism and Effective Death Penalty Act of April 24, 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 have made re-entry into the United States and permanent legal residence here nearly impossible to achieve. See also, *Rankine v. Reno*, 319 F.3d 93 (2003); *Vartelas v. Holder*, 132 S.Ct. 1479 (2012) and *U.S. v. Gill*, 748 F.3d 491 (2014).

8.     The defendant has been incarcerated for a month and has a severe economic hardship warranting a vacatur of these charges and a dismissal of them. See an Editorial, Locked Away in Immigration Jails, The New York Times, February 24, 2014 at A18 attached hereto as Exhibit "B". See also, John Eligor and Damien Cave, Paying Price, 16 Years Later for an Illegal Entry, The New York Times, March 20, 2014 at 17 and 18.

9.     The defendant is now claiming actual innocense; a violation of his Constitutional rights and a necessity defense in that our failed immigration policies force millions to live and work under the radar in order to survive economically.

10.     The defendant's prior criminal history now the subject of this motion involves

3

pleas of guilty to two E felonies before Justice McCormack on November 12, 2009 (a copy of those minutes are attached as Exhibit "C") with sentencing thereafter on January 9, 2010 (a copy of those minutes are attached as Exhibit "D"). The defendant's original docket number on the felony complaint was 15998/2009. The Judge was Hon. James P. McCormack. A copy of the defendant's certificate of disposition is attached hereto as Exhibit "E". The defendant was sentenced to time served (he was arrested on June 22, 2009); ten years of probation; an order of protection was entered; the defendant was determined to be a Level One Sex Offender and fully paid $1,425 for a Crime Victim's Assistance Fee; DNA registration; a surcharge and Sex Offender Registration of $1,050.00. The defendant was then deported.

11.    He was represented by counsel but not given all of his *Boykin* rights or advised of the collateral consequences of his plea.

12.    Since 1995 the CPL has provided that trial judges should advise an immigrant defendant of the possible deportation consequences of the plea. That was not done here in either of the defendant's two prior felony cases. On November 19, 2013 the New York Court of Appeals decided *People v. Peque*, 22 N.Y.3d 168, 980 N.Y.S.2d 280 (2013). The five Judge majority of the Court held that trial judges must caution non-citizen defendants that they may be deported before allowing them to plead guilty to a felony. Chief Judge Lippman and Judge Rivera held that the remedy of vacating the pleas was appropriate since due process rights were involved. See also, Spiros A. Tsimbinos, New York Court of Appeals Deals with Consequences of Padilla Decisions, NYSBA Criminal law Newsletter, Spring, 2014, vol. 12, no. 2 at 6 and 7.

13.    The defendant also waived his right to appeal, not "knowingly, voluntarily or intelligently." Thus he did not perfect any appeals.

4

14.   *Padilla* was not given retroactive effect in *People v. Baret*, 99 A.D.3d 408, 409 (1st Dept. 2012), 23 N.Y.2d 777, 992 N.Y.S.2d 738 (2015).  See also, Sheila L. Baritista, Retroactivity of Padilla v. Kentucky in New York State, NYSBA New York Criminal Law Newsletter, Spring, 2014, vol. 12, no. 2 at 8 and 9 (attached hereto as Exhibit "F").  It appears that the *Baret* case may now be in direct appeal to the Supreme Court of the United States.

15.      The failure to adequately advise a defendant of the fact that a plea of guilty would subject him to removal from the United States is violative of the rule established in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969); see also, *U.S. v. Udeagu*, 110 F.R.D. 172 (1986) where it was determined that there are certain fundamental rights that every person accused of a crime has and which may only be waived "knowingly, voluntarily and intelligently".  See also, *People v. Woodard*, 188 Misc.2d 7 (2002).  In *Udeagu, supra* represented by this defense counsel, Judge Jack Weinstein found that the defendant had not been apprised of his post-release guidelines and vacated the plea.

16.      Mr. Granados was denied many constitutional rights during these proceedings. The most important is effective assistance of competent counsel.  Every defendant who faces criminal charges is entitled to effective assistance of competent counsel.  See, *McMann v. Richardson*, 397 U.S. 759, 771 (1970), see also, *Reece v. Georgia*, 350 U.S. 85, 90 (1955), *Powell v. Alabama*, 287 U.S. 45 (1932).  *McMann* defines effective assistance of counsel to be that which falls within the range of competence demanded of attorneys in criminal cases. However, the *McMann* standard is only one-half of the evaluation of the claim of effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984) the Court developed a two prong standard for assessing the defendant's claim of ineffective assistance of counsel.  The

5

first prong applied the *McMann* test, requiring the defendant to prove that "counsel's representation fell below the objective standard of reasonableness." *Id.* at 688. The second prong requires that the defendant show "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under Article I, Section 6 of the New York Constitution, the State of New York has developed a slightly different test for ineffective assistance of counsel from that employed by the Supreme Court in *Strickland v. Washington.* See, *People v. Claudio*, 629 N.E.2d 384, 386 ("nonetheless, the basic purposes and constitutional interests at stake under both constitutional guarantees of an adequate legal defense in a criminal case are the same. (1) the preservation of our unique adversarial system of criminal justice, the underlying supposition of which 'is that partisan activity on both sides of the case will best promote the ultimate objective that the guilty be convicted and the innocent go free' *United States v. Chronic*, 466 U.S. 648, 655, 104 S.Ct. 2039, 2045, L.Ed.2d 657 quoting from *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 and (2) the corrective necessity to provide a defendant with an advocate sufficiently competent to ensure the fairness of the adversarial criminal process. *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.ed.2d 564.") See also, *Jenkins v. Coombe*, 821 F.2d 158 (1987) where nominal representation was sufficient to set aside a conviction and *Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995) where defense counsel ceased to advocate and the conviction was overturned. This defense counsel represented both defendants. This defense also represented *Jenkins* and *Lopez, supra.*

17.      Ineffective assistance of counsel may "render a guilty plea involuntary, and hence invalid." *Ventura v. Meachum*, 957 F.2d. 1048, 1058 (2d. Cir. 1992). See, *United States v.*

6

*George,* 869 F.2d. 333, 335-336 (7th Cir. 1989) (An "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily.); *see also Downs-Morgan v. United States,* 765. F.2d. 1534 (11th Cir. 1985). Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart,* 474 U.S. 52 (1985). Mr. Jose DeJesus Granados did not have the benefit of effective assistance of counsel during his plea and sentencing. His legal representation was definitely not "within the range of competence demanded of attorneys of criminal cases" and granted to all people by the Sixth Amendment. See, *McMann* at 771. It also did not meet the initial prong of the *Baldi* test for effective assistance of counsel. See *People v. Baldi,* 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).

18.      It is antithetical that if a lawyer violates his ethical duty to his client that he has provided effective assistance of counsel in his cause. The initial prong of the *Baldi* test for effective assistance of counsel requires that counsel advocate in a partisan manner on behalf of Mr. Granados. This did not happen. While representing Mr. Granados his former attorneys never advised him about the collateral consequences of deportation. As a result of this failure they failed to meet the initial prong of the *Baldi* case.

19.      Mr. Granados's former counselor also did not meet the second *Baldi* prong of effective assistance of counsel during his plea negotiations because his counsel did not provide him with sufficiently competent representation to ensure fairness. See *People v. Baldi,* 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981). Mr. Granados's counsel was clearly not

7

sufficiently competent to provide him with <u>fairness</u> in the adversarial criminal process nor did he even attempt to advocate zealously. They effectively forced Mr. Granados to take the pleas in order to dispose of the case expeditiously. This conduct violates multiple disciplinary rules and ethical codes of conduct. *See* DR 1-102 and 5-105(B).

20.     It is very clear from the plea minutes attached to the defendant's motion herein that the defendant did not "knowingly, voluntarily and intelligently" admit to a prior felony conviction since minutes of it were not available, defense counsel failed to do a proper investigation and the Court did not make a proper inquiry.

21.     Mr. Granados's pleas should be rendered involuntary because they did not meet the standard set forth in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005) (a valid guilty plea requires that the defendant have a complete understanding of the charges against him or her). A guilty plea will be sustained in the absence of any factual recitation of the underlying circumstances of the crime if the pleading defendant is represented by *able* and active counsel, and there is no suggestion in the record that the plea was improvident or baseless. *People v. Nixon*, 21 NY2d. 338, 350 (NY 1967); *People v. Doceti*, 175 A.D.2d 256 (2d. Dept. 1991); *cf. People v. Seeber*, 4 NY3d. 780 (NY 2005) (an explicit admission of guilt as to every element of the crime does not have to be incorporated into the allocution of every valid plea). However, Mr. Granados did not have able or effective counsel because he did not fully inform him of the effect of his guilty pleas, specifically that he would be subject to deportation. (See Granados affidavit annexed hereto)

22.     The guilty plea tendered by the defendant was not knowingly, voluntarily and intelligently made in that his attorney did not apprise him of the probability that he could be deported, this constitutes ineffective assistance of counsel, *per se*.

8

23.   · Ultimately, what we are faced with in this situation is a non-lawyer, with a limited understanding of the law in general and an even more limited understanding of New York and immigration law, who, on the advice of counsel, simply pled guilty with absolutely no comprehension of the consequences of that plea, because his attorney did not advise him of same. The defendant's guilty plea is violative of the rule established in *Strickland, Boykin* and *Padilla* and should be given back. The defendant has less than an American high school education from El Salvador with no understanding of our culture, language or system of justice.

24.   On March 31, 2010 the Supreme Court handed down a 7-2 decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).  One of the cases relied upon in the instant CPL §440 motion, because Mr. Granados's former attorneys failed completely to advise their client about the effect a conviction for statutory rape with a level one sexual offender registration and ten (10) years probation would have on his ability to remain in this Country.

25.   In *Padilla*, the Court held that a defense lawyer failed to provide his non-citizen client effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) when he did not warn him that he was almost certain to be deported if he pled guilty.  It was the first time the Court applied the *Strickland* standard to a lawyer's failure to advise a client about a consequence of conviction that is not part of the sentence imposed by the Court.

26.   Defense counsels' lack of advisement with respect to deportation falls squarely under the *Strickland* ineffective assistance of counsel standard.  A review of Mr. Granados's plea minutes makes clear that he was never advised, on the record, about <u>any</u> collateral consequences resulting from a guilty plea.  As a result, Mr. Granados's removal status falls squarely under the decision in *Padilla*.

9

27.   . Had Mr. Granados been properly advised rather than simply being rushed to the
slaughter, he certainly would have sought out other options including going to trial. As it stands,
he is facing more jail and facing removal from the United States.

28.     The People have historically also misread or misunderstood the holdings in
*Strickland v. Washington*, 466 U.S. 668 (1984) and its state equivalent, *People v. Baldi,* 54
N.Y.2d 137, 444 N.Y.S.2d 893 (1981) in light of *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and
*Padilla v. Kentucky*, 130 S.Ct.1473 (2010). *Jenkins* provides that merely nominal representation
may be ineffective so that the two prong *Strickland, supra* test of a departure from customary
practice or standards within the community that made a difference in the outcome has been
supplemented by *Jenkins* and what is considered to now be the *per se* rule on collateral
consequences.

29.     *Jenkins* and *Padilla* also change the hereto ruling of the New York Court of
Appeals in *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61, 459 N.E.2d 170 (1983) which had
held that there is "no catechism of rights of which a defendant must be afforded" at the time of his
plea. Now the catechism exists.

30.     Furthermore, it does not appear that a Spanish interpreter was properly sworn or
even certified and at Mr. Granados's plea and sentencing hearings.

31.     At the time of his plea on November 12, 2009 the defendant was prosecuted by an
SCI not a grand jury indictment. The defendant had no prior criminal record. He was not
properly advised of his right to have the case presented to a grand jury where he could testify in
his own behalf. See CPL §190.50. He was not informed of the role of the grand jury or that he
could testify before it.

10

32.   ·   The defendant was not informed of the fact that the complainant was the only witness against him and that there was no rape kit evidence or DNA to corroborate the so-called victim's version of the event.  See, 2004, Co-Author of <u>DNA: Forensic and Legal Applications</u>, published by John Wiley & Sons, Inc., Hoboken, New Jersey.

33.   Defense counsel did not advise his client of his right to go to trial or of his right to cross-examine the complainant.  See, Liotti, Thomas F., Zeh, Christopher W. and Lapidus, Dr. , Leah Blumberg, <u>Cross-Examining Children in Sexual Abuse Cases</u>, The Attorney of Nassau County, July, 2000 at 5, 12, 13 and 18; Liotti, Thomas F., <u>The Cross Examination of Child Witnesses</u>, Verdict, a Journal published by the National Coalition of Concerned Legal Professionals, Vol. 6, No. 4, October, 2000 at 11-21; Liotti, Thomas F., <u>The Cross-Examination of Experts in Civil and Criminal Cases</u>, The Attorney of Nassau County, September, 2005 at 3, 10 and 13 and Liotti, Thomas F. and Skelos, Peter B., <u>Credibility Questions for Prosecution Experts On Syndromes in Cases of Rape, Child Abuse</u>, Outside Counsel, New York Law Journal, April 20, 1989 at 1, 2 and 7.

34.   There is no record of a supporting deposition or even of what the People were prepared to prove.  There is no medical evidence indicated.  Clearly the defendant's best defense of which he was not advised, was to deny the charges and subject the fifteen year old defendant to direct and cross-examination.

35.   The defendant pled guilty to two E felonies and gained literally nothing by pleading guilty.  Any competent defense counsel would have advised him to go to trial.

36.   By pleading guilty to these charges, the defendant was subjected to jail (time served), probation; Level One Sex Offender registration requirements and mandatory deportation.

11

His attorney at the time consented to the Level One designation without a hearing. This ineffective assistance of counsel is remarkable but made even more so because the defendant showed literally no understanding of the plea and its collateral consequences.

37.    The Court's perfunctory inquiry of the defendant and his allocution merely consisted of "yes" and "no" responses which did not verify that the defendant understood the nature and consequences of the plea or that he was entering it "knowingly, voluntarily and intelligently" especially since his attorney stood next to him and told him what to say.

38.    On the issue of deportation the Court inquired:

> The Court:    Do you understand that by pleading guilty today in this case, your plea may result in deportation or denial of naturalization?
>
> Defendant:    Yes.

Record of November 12, 2009 at 5, lines 15-18.

39.    The Court and defense counsel may not have been aware of it at the time but aside from the due economic conditions in El Salvador to which the defendant would be returned, the country is in a perpetual state of civil war. It is also engulfed by the highest crime rate in Central America including murder and gangs who threatened this defendant with death if he did not pay them.

40.    The defendant was not aware of the statutory rape laws in this country and the complaining witness stalked him and repeatedly attempted to seduce him and showed him pictures of numerous naked men with whom she claimed to have had sexual relations.

41.    Defense counsel did not file a §190.50 notice or retain an investigator. Defense counsel did not visit the scene or speak to any witnesses or even the police concerning his client.

12

He did not investigate whether there was any evidence of the alleged victim fabricating or of her motives to lie.

42.    Neither the Court nor defense counsel demonstrated an understanding of deportation or that immigration counsel had even been consulted.

WHEREFORE, it is for the aforementioned reasons that the defendant moves this Court to grant the relief requested giving Mr. Granados his pleas back and for such other and further relief as to this Court may seem just and proper.

Dated: Garden City, New York
       April 16th, 2015

THOMAS F. LIOTTI

13

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA

-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                                                    <u>AFFIDAVIT</u>

     -against-                                  SCI No. 2400N/09

   JOSE DEJESUS GRANADOS,

                   Defendant.

-----------------------------------------------------------X

STATE OF NEW YORK)
                )SS:
COUNTY OF NASSAU )


      JOSE DEJESUS GRANADOS, being duly sworn deposes and states the following to be

true under the penalties of perjury:

      1.      I am the defendant in this matter where I am in jail at the Nassau County

Correctional Facility due to my alleged wrongful re-entry into the United States following my

involuntary deportation in 2010 which came after my pleas and convictions to the matters referred

to herein.

      2.      I am innocent of the charges referred to herein but unfortunately had a lawyer who

did not properly advocate for me.

      3.      I did not understand what was transpiring, my rights and the collateral

consequences of my plea and sentence.

1

4.   ' I was deported to my native country of El Salvador which is in a constant state of civil war and engulfed by gangs.  I came to this country to escape from El Salvador where my life was threatened if I did not join the gangs.  The gangs there told me that they would kill me and my family members if I did not join them.  I told my attorney at the time, Mr. Thomas McCullough of these facts and that I should receive political asylum here but he did not protect me.  The gangs were following me and two of my cousins after I had been deported.  I came back to the United States to escape.  My two cousins were killed by the gangs.

5.   When I waived my rights to have my case presented to the grand jury, I had no idea what that meant.

6.   I am not a violent person or a criminal.  I believe that all women should be treated with the utmost respect regardless of their age.

7.   The police attributed an oral statement to me which I never made, to wit: "The defendant admits to oral and sexual intercourse with the victim."

8.   I was not given an opportunity to testify in the grand jury; I had no prior criminal record; there was no DNA or eyewitnesses; there was a single date involving alleged crimes by me, namely January 3, 2009.  There were no lab or medical reports and there was a lengthy delay in the "cry out" by the victim of many months.  I never even saw a supporting deposition by her. In fact I was never really accused by Michelle Reyes, the fifteen year old at the time.  Instead, I was wrongfully accused by my wife's sister.

9.   My attorney at the time was paid for by me but later was assigned to represent me on appeal pursuant to County Law §18-b.  Yet he took no appeal and did not file any papers on my behalf.

2

10.     ' At the time of my plea, the Spanish interpreter was not translating.  At the time of

my sentence there was no Spanish interpreter even present.


_____

JOSE DEJESUS GRANADOS


Sworn to before me this

16th day of April, 2015

Notary Public


THOMAS F. LIOTTI
Notary Public, State of New York
No. 02LI6030933
Qualified in Nassau County
Commission Expires Sept. 23, 20 18 ,


3

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                              <u>AFFIDAVIT</u>

     -against-                                   SCI No. 2400N/09

   JOSE DEJESUS GRANADOS,

                        Defendant.

------------------------------------------------------------X

STATE OF NEW YORK)
              )SS:
COUNTY OF NASSAU )

      LUCIA TOBON, being duly sworn deposes and states the following to be true under the penalties of perjury:

      1.     I am a friend of the defendant in this matter and speak both Spanish and English. I am a United States citizen. I have lived in the United States since 1988. I was married to the defendant's cousin.

      2.     I am acting as an interpreter for the defendant and his current lawyer, Thomas F. Liotti.

      3.     I have reviewed the plea and sentencing minutes for the defendant's prior case. I am certain that he was not fully advised of his rights by his lawyer or interpreter at the time. There were many words such as "naturalization" and procedures which he did not and does not understand.

                                _Lucia Tobon_
                                 LUCIA TOBON

Sworn to before me this
13th day of April, 2015

     _Jean M. Lagrasta_
     Notary Public

              JEAN M. LAGRASTA
        Notary Public, State of New York
             No. 30-4669304
         Qualified in Nassau County
      Commission Expires Oct. 31, 2018

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
-----------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                                                             <u>AFFIDAVIT</u>

      -against-                                             SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

                              Defendant.
-----------------------------------------------------------X

STATE OF NEW YORK)
                )SS:
COUNTY OF NASSAU )

      LEYDA CRUZ, being duly sworn deposes and states the following to be true under the penalties of perjury:

      1.     I am the wife of the defendant herein and I reside at 467 Mineola Avenue, Carle Place, New York and I am also a permanent resident of the United States of America.

      2.     My sister is Mayra Cruz who is the mother of Michelle Reyes, the alleged victim in the underlying statutory rape case. Michelle Reyes is my niece.

      3.     I have been advised by my sister that my niece, Michelle Reyes, has been hospitalized at North Shore University Hospital and diagnosed as a paranoid schizophrenic with hallucinations for which she takes medication. She has also been diagnosed as bi-polar.

      4.     My sister also told me that sometime after the alleged rape on January 3, 2009 when it was reported to the police by her because my husband would not marry her daughter, my niece was taken to a medical doctor who determined that she was still a virgin. She also told me that a Detective Trujillo had investigated the case and was aware of the medical doctor's report

1



but did not disclose it to the defense.

5.       I am aware that my niece was stalking my husband. He informed me of that fact. I reprimanded my niece for doing that and my sister and I argued about it to the point where we have not spoken since.

6.       My husband is a good father and was a good provider. I do not believe that he had sex with my niece. He is a good man and I wish him only good will as he does me.

7.       My niece sent text messages to a lot of men. I believe that she fabricated this story as well as others.

8.       I am giving this affidavit to my husband's attorney by my own free will because it is the truth.

_____
LEYDA CRUZ

Sworn to before me this

13ᵗʰ day of April, 2015

_____
Notary Public

JEAN M. LAGRASTA
Notary Public, State of New York
No. 30-4666604
Qualified in Nassau County
Commission Expires Oct. 14, 2018

2

**EXHIBIT A**

NB:KDE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOSE DE JESUS GRANADOS,
    also known as
    "Jose De Jesus Granados Benitez," and
    "Jose Benitez,"

             Defendant.

- - - - - - - - - - - - -X

<u>C O M P L A I N T</u>

(8 U.S.C. §§ 1326(a) and
1326(b)(2))

EASTERN DISTRICT OF NEW YORK, SS:

        DENNIS CARROLL, being duly sworn, deposes and states that he is a

Deportation Officer with the Department of Homeland Security, United States Immigration and

Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

        On or about March 12, 2015, within the Eastern District of New York, the

defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez"

and "Jose Benitez," being an alien who had previously been arrested and convicted of an

aggravated felony, and was thereafter excluded and removed from the United States, and who had

not made a re-application for admission to the United States to which the Secretary of the

Department of Homeland Security, successor to the Attorney General of the United States, had

expressly consented, was found in the United States.

        (Title 8, United States Code, Sections 1326(a) and 1326(b)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Deportation Officer with ICE and have been involved in the investigation of numerous cases involving the illegal reentry of aliens.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the ICE investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2.      On March 12, 2015, the defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez" and "Jose Benitez," was arrested by ICE officers.

3.      ICE officials had run a criminal history report and found that the defendant, a citizen of El Salvador, had previously been removed from the United States on or about November 9, 2010.

4.      On November 12, 2009, the defendant was convicted in Nassau County Court for Rape in the Third Degree, in violation of New York Penal Law § 130.25(2), and Criminal Sexual Act in the Third Degree, in violation of New York Penal Law § 130.40(2), both aggravated felony offenses.   The defendant was sentenced to ten years' probation for both convictions.

5.      An ICE official determined that the defendant's fingerprints taken from his March 12, 2015 apprehension match those associated with his November 9, 2010 removal. Further, these fingerprints were submitted into the Integrated Automated Fingerprint

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Identification System, which indicated that the fingerprints correspond to a unique FBI number that is associated with the defendant's November 9, 2010 removal and November 12, 2009 convictions.[2]

      6.    A search of immigration records has revealed that there exists no request by the defendant for permission from either the United States Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States after removal.

      WHEREFORE, your deponent respectfully requests that the defendant JOSE DE JESUS GRANADOS, also known as "Jose De Jesus Granados Benitez" and "Jose Benitez," be dealt with according to law.

DENNIS CARROLL
Deportation Officer
United States Immigration and Customs
Enforcement

Sworn to before me this
12nd day of March, 2015

THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

---

[2]    Certified copies and comparisons of the defendant's fingerprint cards from the March 12, 2015, November 9, 2010, and November 12, 2009 incidents are currently pending.

**EXHIBIT B**

# The New York Times

ARTHUR OCHS SULZBERGER JR., *Publisher, Chairman*

*Founded in 1851*

ADOLPH S. OCHS
*Publisher 1896-1935*

ARTHUR HAYS SULZBERGER
*Publisher 1935-1961*

ORVIL E. DRYFOOS
*Publisher 1961-1963*

ARTHUR OCHS SULZBERGER
*Publisher 1963-1992*

JILL ABRAMSON, *Executive Editor*
DEAN BAQUET, *Managing Editor*
TOM BODKIN, *Deputy Managing Editor*
JANET ELDER, *Deputy Managing Editor*
LAWRENCE INGRASSIA, *Deputy Managing Editor*

SUSAN CHIRA, *Assistant Managing Editor*
REBECCA L. CORBETT, *Assistant Managing Editor*
IAN FISHER, *Assistant Managing Editor*
MICHELE McNALLY, *Assistant Managing Editor*
MATTHEW PURDY, *Assistant Managing Editor*

ANDREW ROSENTHAL, *Editorial Page Editor*
TRISH HALL, *Deputy Editorial Page Editor*
TERRY TANG, *Deputy Editorial Page Editor*

MARK THOMPSON, *Chief Executive Officer*
MICHAEL GOLDEN, *Vice Chairman*
JAMES M. FOLLO, *Chief Financial Officer*
KENNETH A. RICHIERI, *General Counsel*
DENISE F. WARREN, *Executive V.P., Digital Products*
ROLAND A. CAPUTO, *Executive V.P., Print Products*
MEREDITH KOPIT LEVIEN, *Executive V.P., Advertising*

YASMIN NAMINI, *Chief Consumer Officer*
MARC FRONS, *Chief Information Officer*
WILLIAM T. BARDEEN, *Senior Vice President*
THOMAS K. CARLEY, *Senior Vice President*
TERRY L. HAYES, *Senior Vice President*
R. ANTHONY BENTEN, *Controller*
LAURENA L. EMHOFF, *Treasurer*
DIANE BRAYTON, *Secretary*

## Locked Away in Immigration Jails

You can find examples of federal detainees held inexplicably for years without criminal charges or bond hearings much closer to home than Guantánamo Bay, Cuba.

In Southern Florida, five Sri Lankan men were held without bond for more than three years as they sought asylum, saying they had been promised leniency in return for aiding a federal investigation of the smuggling ring that brought them into the country illegally. As The Times reported recently, the average stay for an immigrant in federal custody is a month.

In Springfield, Mass., a federal district judge in January ordered a bond hearing for a Jamaican immigrant and military veteran who had been held in Massachusetts jails, fighting deportation, for more than 15 months without ever receiving a bond hearing. The judge, Michael Ponsor, this month granted class-action status to all immigration detainees in Massachusetts who have been held without bond hearings for six months or more.

Last April, the United States Court of Appeals for the Ninth Circuit, in California, upheld a lower court's order requiring the government to grant bond hearings to immigrants who have been held six months without such a hearing. The American Civil Liberties Union, which had brought that class-action lawsuit, said the decision would potentially allow thousands of people to get a day in court across the Ninth Circuit, where an estimated one-fourth of all immigration detainees are held each year.

These rulings reflect the growing understanding — in the federal courts, if not at Immigration and Customs Enforcement — that the constitutional guarantee of due process demands that a detainee have a hearing within a "reasonable" time and that more than six months is not reasonable by any definition.

The Obama administration, in expanding the surge of immigration enforcement begun under President George W. Bush, has detained and deported nearly two million people. The overwhelming majority are dealt with swiftly and summarily, without ever receiving a hearing before an immigration judge. Others who challenge their deportation, like the Sri Lankans, wait for years to get a resolution of their cases. Still others, lacking aggressive lawyers, languish forgotten in federal lockups across the country.

Automatically granting bond hearings to immigration detainees, many of whom pose no threat, is the least the government can do. This does not mean their release is inevitable or even likely. And it doesn't mean that dangerous criminals would be let loose on the streets.

President Obama, who has repeatedly promised to do more to fix the broken immigration laws, on his own if necessary, can ensure that the six-month rule is adopted in immigration courts nationwide. Beyond granting bond hearings, the government should use more humane and cost-effective alternatives to detention, like ankle bracelets and home monitoring. Locking people up indefinitely is not a path to a more rational immigration system.

EXHIBIT C

1    SUPREME COURT OF THE STATE OF NEW YORK
          COUNTY OF NASSAU :   PART 48
2    --------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK
3

4
               -against-                    SCI No. 2400N/09
5

6    JOSE GRANADOS,

7                        DEFENDANT.
     --------------------------------------x
8                        Mineola, New York
                         November 12, 2009
9

10   B E F O R E:   HON. JAMES P. McCORMACK
                        Acting Supreme Court Justice
11

12
     A P P E A R A N C E S:
13

14           HON. KATHLEEN RICE
             District Attorney of Nassau County
15           BY:  JOSEPH LaROCCA, ESQ.
             Assistant District Attorney
16           For the People

17
             THOMAS McKELLAR, ESQ.
18           37-06 82nd Street
             Jackson Heights, New York   11372
19           Attorney for Defendant

20

21   ALSO PRESENT:  Mercedes Lokich
                     Official Spanish Interpreter
22

23                   P L E A

24

25                   Kathi A. Fedden
                     Official Court Reporter

Proceedings                                                    2

```
 1                  THE CLERK:  People of the State of New York
 2       versus Jose Granados.
 3                  Appearances please, Counsel.
 4                  MR. McKELLAR:  Thomas McKellar, 37-06 82nd
 5       Street, Jackson Heights, New York.
 6                  MR. LaROCCA:  ADA Joe LaRocca for the People.
 7       Good morning.
 8                  THE COURT:  Good morning.
 9                  THE CLERK:  Note the presence of the Spanish
10       Language interpreter.  Madam interpreter, please put
11       your appearance on the record.
12                  THE INTERPRETER:  Mercedes Lokich, Spanish
13       interpreter.
14                  THE COURT:  Good morning, Mercedes.
15                  THE CLERK:  You are Jose Granados?
16                  THE DEFENDANT:  Yes.
17                  THE CLERK:  I have been instructed by the
18       Honorable James McCormack, sitting as a local criminal
19       court judge, to advise you that you have the right to a
20       felony hearing on the charges contained in this felony
21       complaint.  Do you waive the right to that felony
22       examination and consent to this case being held for the
23       action of the grand jury?
24                  THE DEFENDANT:  Yes.
25                  THE COURT:  All of you can have a seat.
```

1              MR. McKELLAR:  Thank you, Judge.

2              THE CLERK:  The District Attorney of Nassau

3    County has filed a Superior Court Information against

4    you.  Under the Constitution of the State of New York,

5    you have the right to be prosecuted by indictment.  Do

6    you wish to waive that right and proceed by Superior

7    Court Information?

8              THE DEFENDANT:  Yes.

9              THE COURT:  The waiver is approved.

10             THE CLERK:  The District Attorney of Nassau

11   County has filed Superior Court Information number 2400N

12   of 2009 for the crimes of rape in the third degree and

13   criminal sexual act in the third degree.

14             You are advised of your right to counsel

15   throughout all stages of these proceedings and you are

16   also advised that if you have any prior felony

17   convictions, you may be subject to a mandatory term of

18   imprisonment.  How do you plead, guilty or not guilty?

19             THE DEFENDANT:  Guilty.

20             THE COURT:  Before we affirm your plea,

21   Mr. Granados, People do you want to be heard?

22             MR. LaROCCA:  Yes, thank you, your Honor.

23             Your Honor, the defendant is charged under the

24   Superior Court Information with one count of rape in the

25   third degree and one count of criminal sexual act in the

Kathi A. Fedden, Sr. Court Reporter

1    third degree, both E felonies.  The People anticipate

2    pleas of guilty to both those charges in satisfaction of

3    the charges under Docket 15998 of 2009.

4              In return for those pleas, the People

5    recommend a probationary sentence, a stay away order of

6    protection on behalf of the minor complainant in this

7    case, the appropriate adjudication for the Sex Offender

8    Registry Act and a waiver of the defendant's right to

9    appeal.

10             The plea and the proposed sentence have been

11   discussed with the complainant and the family and

12   they're satisfied and willing to go forward under these

13   circumstances.  There have been no other promises.  We

14   recommend it as being in the interest of justice.

15             THE COURT:  Mr. McKellar.

16             MR. McKELLAR:  Judge, the defense joins in all

17   respects and my client has authorized me to enter a plea

18   of guilty to both counts of the Superior Court

19   Information.

20             (Whereupon, the defendant, Jose Granados, was

21   duly sworn by the Clerk of the Court.)

22             THE COURT:  I'm going to ask you a series of

23   questions, Mr. Granados.  If there is anything you do

24   not understand, please tell me.

25             If at any point in time you need to speak to

Kathi A. Fedden, Sr. Court Reporter

1           Mr. McKellar, your attorney, indicate that as well.

2                   I'm also going to ask that all your answers be

3       in Spanish, which will be interpreted to me in English

4       by the interpreter.  Do we understand each other?

5                   THE DEFENDANT:  Yes.

6                   THE COURT:  How old are you?

7                   THE DEFENDANT:  Thirty three.

8                   THE COURT:  Do you read and write English?

9                   THE DEFENDANT:  A little.

10                  THE COURT:  Is Spanish your natural language?

11                  THE DEFENDANT:  Yes.

12                  THE COURT:  Are you a citizen of the United

13      States?

14                  THE DEFENDANT:  No.

15                  THE COURT:  Do you understand that by pleading

16      guilty today in this case, your plea may result in

17      deportation or denial of naturalization?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  What was the highest grade you

20      completed in school?

21                  THE DEFENDANT:  High school.

22                  THE COURT:  Do you feel in good physical and

23      mental health as you sit here today?

24                  THE DEFENDANT:  Absolutely.

25                  THE COURT:  Have you taken any drugs or

1      alcohol within the past 24 hours?

2                  THE DEFENDANT:  No.

3                  THE COURT:  Have you ever been treated or

4      confined to a hospital for any mental illness?

5                  THE DEFENDANT:  No.

6                  THE COURT:  Have you had enough time to speak

7      to your lawyer before pleading guilty here today?

8                  THE DEFENDANT:  Yes.

9                  THE COURT:  Are you satisfied in the manner in

10     which he's represented you?

11                 THE DEFENDANT:  Yes.

12                 THE COURT:  Do you understand that you would

13     have had right to a trial with the assistance of your

14     lawyer, that the People would have had to prove your

15     guilt beyond a reasonable doubt and that you would have

16     the right to confront the witnesses against you, the

17     right to call your own witnesses on your own behalf and

18     the right to testify in your own defense, although you

19     would not be required to do so?

20                 Do you understand that by pleading guilty here

21     today, you are giving up all these rights?

22                 THE DEFENDANT:  Yes.

23                 THE COURT:  Do you further understand that a

24     plea of guilty is the same as a conviction after trial?

25                 THE DEFENDANT:  Yes.

1          THE COURT:  Has anybody forced or threatened

2     you to give up these rights?

3          THE DEFENDANT:  No.

4          THE COURT:  Now, do you further understand

5     that you would have a right to appeal what's taken place

6     here today to a higher Court for a review of what has

7     occurred and that the district attorney, as part of the

8     plea, is requiring that you waive your right to appeal,

9     which means you cannot appeal to a higher Court for a

10    review of what's happened here today both with respect

11    to the plea, as well as the sentence?  Do you understand

12    that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And you have discussed your waiver

15    of your right to appeal with your lawyer?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Are you now voluntarily giving up

18    your right to appeal?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has anybody forced or threatened

21    you to give up that right?

22         THE DEFENDANT:  No.

23         THE COURT:  Now, are you currently on

24    probation or parole?

25         THE DEFENDANT:  No.

Kathi A. Fedden, Sr. Court Reporter

```
1              THE COURT:  Have you previously been convicted

2      of a felony prior to today?

3              THE DEFENDANT:  No.

4              THE COURT:  You understand that today you are

5      pleading guilty to a felony and if you are convicted of

6      a new felony at any time within the next ten years, the

7      Court in that new case must impose a mandatory term of

8      imprisonment.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, under this Superior Court

11     Information you are charged with one count of rape in

12     the third degree under Penal Law Section 130.25 --

13             MR. LaROCCA:  Subdivision two.

14             THE COURT:  Subdivision two, which is a class

15     E felony for which you could have faced a maximum

16     sentence of one-and-a-third to four years in prison; do

17     you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And also you were charged under

20     the same Superior Court Information with criminal sexual

21     act in the third degree under Penal Law Section

22     130.40(2), which is also a class E felony and, again,

23     you could have faced a maximum sentence of up to

24     one-and-a-third to four years in jail; do you understand

25     that?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand what the

3     original charges were and what you face in terms of a

4     possible sentence?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, I have had a discussion with

7     your attorney and the district attorney and based upon

8     that discussion, my promise and commitment with respect

9     to your sentence would be a period of probation not to

10    exceed five years on each.  You would be required to

11    register as a person convicted of a sex offense and I

12    would be issuing a stay away order of protection on

13    behalf of the complainant in this case.  Do you

14    understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Other than that promise, has

17    anyone made any different promise to you?

18         THE DEFENDANT:  No.

19         THE COURT:  Now, I am going to be ordering a

20    presentence probation report.  Should that probation

21    report come back and recommend jail time or for any

22    reason after reviewing that probation report I cannot or

23    choose not to honor my promise and commitment with

24    respect to your sentence, I will give you the

25    opportunity to take back your plea and you can proceed

1 to trial; do you understand that?

2    THE DEFENDANT:  Yes.

3    THE COURT:  Further, if you fail to appear for

4 sentence, if you fail to cooperate with the Probation

5 Department or if you get arrested for a new crime

6 between today and your sentence date, then my commitment

7 as to your sentence will be off.  I will not be bound by

8 my commitment and I can sentence you to anything up to

9 the maximum, which is one-and-a-third to four years; do

10 you understand that?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Mr. LaRocca, you want to add

13 something?

14    MR. LaROCCA:  May we approach for one second?

15    THE COURT:  Sure.

16    (Whereupon, a discussion was held off the

17 record.)

18    THE COURT:  Mr. Granados, I stand corrected.

19 With regard to your probationary sentence, it's a

20 probationary sentence that will not exceed ten years,

21 not five years; do you understand that?

22    THE DEFENDANT:  Okay.

23    THE COURT:  Having been told that and

24 understanding that, do you still wish to go forward with

25 your plea?

Kathi A. Fedden, Sr. Court Reporter

```
 1            THE DEFENDANT:  Yes.

 2            THE COURT:  Directing your attention to the

 3    3rd day of January of this year, 2009 at 153 Cleveland

 4    Avenue in the town of Mineola, County of Nassau, State

 5    of New York, at that time did you have oral sex and

 6    sexual intercourse with a [name deleted]?

 7            THE DEFENDANT:  Yes.

 8            THE COURT:  And you knew or had reason to know

 9    that she was 15 years of age at that time?

10            THE DEFENDANT:  Yes.

11            THE COURT:  People, are you satisfied?

12            MR. LaROCCA:  Yes, thank you, your Honor.

13            THE COURT:  Mr. Granados, are you prepared to

14    plead guilty at this time?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Everything you told me here today

17    the truth?

18            THE DEFENDANT:  Yes.

19            THE COURT:  The Court is satisfied that the

20    defendant understands the nature of the charges, the

21    possible consequences of his plea, the nature of the

22    plea, as well as the nature of the charges; that he's

23    discussed his legal rights with his attorney; that he

24    understands he's waiving his constitutional rights and

25    the plea is voluntary and of his own free will.
```

Kathi A. Fedden, Sr. Court Reporter

```
1              The Court is further satisfied that the
2     defendant has acknowledged his guilt and believes it's
3     in the interest of justice to accept the plea from this
4     defendant.  The clerk is now directed to take the plea.
5              THE CLERK:  Jose Granados, do you now affirm
6     your plea of guilty to rape in the third degree and
7     criminal sexual act in the third degree under SCI 2400N
8     of 2009?
9              THE DEFENDANT:  Yes.
10             THE CLERK:  How do you plead, guilty or not
11    guilty?
12             THE DEFENDANT:  Guilty.
13             THE COURT:  Mr. McKellar, how is January 8th
14    for sentence?
15             MR. McKELLAR:  That's a good date, Judge.
16             THE COURT:  1/8/2010.
17             Mr. Granados, there is a new order of
18    protection that I just signed that bears your signature.
19    I understand you have gone over it with your attorney.
20             THE CLERK:  I'm serving a copy of the
21    temporary order of protection on the defendant, defense
22    counsel and two copies on the district attorney's
23    office.
24             MR. McKELLAR:  We acknowledge receipt.
25             MR. LaROCCA:  People acknowledge receipt,
```

Kathi A. Fedden, Sr. Court Reporter

Proceedings                                                           63

1   thank you.

2                THE CLERK:  Mr. Granados, your case is being

3   adjourned to January 8, 2010.  If you fail to appear

4   that day, your bail will be forfeited, a warrant will

5   issue for your arrest, you will be subject to the charge

6   of bail jumping and your case will proceed in your

7   absence; do you understand?

8                THE DEFENDANT:  Yes.

9                THE CLERK:  You are also directed to report to

10  probation to begin the pre-sentence investigation.

11               MR. McKELLAR:  Thank you.

12

13               *                *                *

14

15

16           C E R T I F I C A T I O N

17

18      I hereby certify the within to be a

19      true and accurate transcription of my

20      stenographic notes in the above proceeding.

21

22

23

24  Kathi A. Fedden

25


                    Kathi A. Fedden, Sr. Court Reporter

**EXHIBIT D**

1

1   STATE OF NEW YORK   :   NASSAU COUNTY

2       SUPREME COURT   :   PART 36

3   -----------------------------------------X

4   THE PEOPLE OF THE STATE OF NEW YORK,

5       -against-                    SCI No. 2400N-09

6   JOSE GRANADOS,

7                       Defendant.

8   -----------------------------------------X

9   SENTENCE

10                      January 8, 2010
                        252 Old Country Road
11                      Mineola, New York

12  B E F O R E :

13      HON. JAMES P. McCORMACK,
            Acting Supreme Court Justice

14

15

16  A P P E A R A N C E S :

17      HON. KATHLEEN M. RICE
            Nassau County District Attorney
18          BY:   SILVIA FINKELSTEIN, ESQ., of Counsel
            Assistant District Attorney
19                  For the People

20

21      THOMAS McCULLOUGH, ESQ.
            37-06 82nd Street
22          Jackson Heights
                    For the Defendant

23
                        JOANNE HORROCKS, CSR
24                      Senior Court Reporter

25

                                                J.H.

Proceedings                        2

```
 1                     THE CLERK:  This is on the sentence calendar,

 2          the People against Jose Granados, SCI 2400N of 2009.

 3                     MS. FINKELSTEIN:  On behalf of the People,

 4          Silvia Finkelstein for Jamie Johnson.

 5                     MR. MCCULLOUGH:  And for Mr. Granados, Thomas

 6          McCullough, 37-06 82nd Street, Jackson Heights,

 7          New York.  Good morning, Judge.

 8                     THE COURT:  Good morning.

 9                     THE CLERK:  You are Jose Granados?

10                     THE DEFENDANT:  Yes.

11                     THE CLERK:  And you appear with your

12          attorney?

13                     THE DEFENDANT:  Yes.

14                     THE CLERK:  Counselor, is your client ready

15          for sentence?

16                     MR. MCCULLOUGH:  He is.

17                     THE CLERK:  Do the People wish to be heard?

18                     MS. FINKELSTEIN:  Yes, your Honor.  We have

19          had extensive conferences in this case.  We had one

20          today where we discussed in detail the recommendations

21          of the probation report as well as the sex offender

22          conditions that were recommended by the Department of

23          Probation, and we have come to an agreement.  In

24          addition, of course, we are urging you to impose the

25          previous new recommended 10 years probation, and we ask
```

J.H.

1    you that you issue a permanent order of protection in

2    favor of the complainant in this matter and that we

3    conduct a designation hearing under the sex offender

4    registration act after you pass sentence.

5                THE COURT:  Mr. McCullough, do you want to be

6    heard?

7                MR. MCCULLOUGH:  No, thank you, Judge.

8                THE COURT:  All right, Mr. Granados, anything

9    you want to say, sir?

10                THE DEFENDANT:  That I'm very sorry, and I'm

11    thankful, and I'm grateful for this opportunity.

12                THE COURT:  Anything else?

13                THE DEFENDANT:  I would follow whatever

14    instructions you are imposing on me.

15                THE COURT:  Well, with regard to the, as you

16    call it, instructions, they are going to be more like

17    conditions.  They are going to be conditions of

18    probation.

19                And unlike the typical conditions of

20    probation, such as staying out of trouble, not getting

21    rearrested, refraining from people and places where

22    criminality is involved, and given the nature of your

23    offense, your conditions are going to be rather strict

24    and stringent.  And I want to make a promise to you

25    that if you fail to abide by the conditions of

Proceedings                              4

1          probation or get rearrested for a new crime or for any

2          reason you come anywhere near the complainant in this

3          case, I can guarantee you are going to be going to

4          jail.  And it's not going to be here in East Meadow

5          locally.  It's going to be upstate.  Do we understand

6          each other?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  And you ought to thank your

9          attorney this time around for getting the result that

10         he was able to achieve for you in this case.  But let

11         me just warn you that as good as your attorney is, if

12         you screw up on probation, he is not going to be able

13         to save you.  Do you understand me?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  It is the judgment of this Court

16         that for your plea to rape in the third degree on

17         Docket 2400N of '09 and criminal sex act in the third

18         degree for which you stand convicted in satisfaction

19         thereof, you are hereby sentenced to 10 years

20         probation, the terms and conditions of which will be

21         given to you if they haven't already by my clerk to go

22         over with your attorney, and please indicate and

23         signify your consent by signing in the space provided.

24                   There's a mandatory surcharge of $300, a

25         crime victim's fee of $25 and a DNA database fee of

J.H.

```
 1        $50.   In addition, there's a sex offender registration

 2        fee of $50 and a sex offender victim assistance fee,

 3        which I believe is $1,000.  That's roughly by my

 4        calculations about $1,425.

 5                  Mr. McCoullough, how does your client intend

 6        to pay, or does he need time to pay?

 7                  MR. MCCULLOUGH:  Judge, we would take time to

 8        pay.  Being from Queens, can he work that out through

 9        victim services or probation?  Or just give us a date,

10        and he'll pay it by that date, Judge.

11                  THE COURT:  What I'll do, given the amount,

12        I'll give you a date three months out.  Since it's not

13        restitution, I don't believe that probation, at least

14        in this county, gets involved in collecting these kind

15        of fees; on or about April 30th, 2010.

16                  MR. MCCULLOUGH:  Thank you, Judge.

17                  THE COURT:  And I have signed the order of

18        protection on behalf of the complainant in this case.

19                  THE CLERK:  Serving on the defendant and

20        defense counsel a copy of the order of protection and

21        two copies on the District Attorney.

22                  MR. MCCULLOUGH:  Acknowledge receipt.

23                  MS. FINKELSTEIN:  The People acknowledge

24        receipt.  Thank you very much, your Honor.

25                  THE CLERK:  Also serving defendant with terms
```

J.H.

```
 1        and conditions of probation and the additional sex
 2        offender conditions.
 3                MR. MCCULLOUGH:  Acknowledge receipt.
 4                MS. FINKELSTEIN:  Your Honor, we have agreed
 5        on the assessment of the points, and I would like to
 6        put it on the record.
 7                THE COURT:  Yes, go ahead.
 8                MS. FINKELSTEIN:  With respect to the sex
 9        offender registration act risk assessment instrument,
10        we have agreed upon the following points:  25 points
11        under category number two, sexual contact with the
12        victim in that there was sexual intercourse or deviate
13        intercourse.  Twenty points are being assessed in that
14        there was a continuing course of sexual misconduct that
15        expanded over a period of time, and 20 points have been
16        assessed in that the age of the victim was between 11
17        and 16 years old.  In fact, she was 15.  That brings us
18        to a total of 65 points which renders the defendant
19        level one sex offender.
20                With respect to the sex offender category,
21        the defendant is not a sexual violent offender.  He is
22        not a predicate sex offender, and he is not a sexual
23        predator.  Therefore, his designation is none of the
24        above.
25                THE COURT:  Okay.  Mr. McCoullough, do you
```

J.H.

1    agree and so stipulate to these calculations set forth

2    by the People?

3                    MR. MCCULLOUGH:   I do, Judge.

4                    THE COURT:   And you have no objection to your

5    client being adjudicated a level one sex offender?

6                    MR. MCCULLOUGH:   No objection.

7                    THE COURT:   So he will be -- nor does the

8    Court for that matter.   So the defendant will be

9    adjudicated a level one sex offender for purposes of

10   the sex offender registry act.

11                   THE CLERK:   Serving defendant with a copy of

12   the sex offender registration form.

13                   Mr. Granados, you have the right to appeal

14   the Court's sex offender risk level determination.   The

15   appeal must be brought pursuant to the CPLR Articles

16   55, 56 and 57.   Your assigned counsel will continue

17   representing you throughout the pendency of the appeal.

18   Two copies of a notice of appeal must be filed with

19   this court within 30 days.

20                   MR. MCCULLOUGH:   Acknowledge receipt.

21                   THE COURT:   Okay, good luck to you.

22                   (Continued on the following page.)

23

24

25

                                                            J.H.

Proceedings                                    8

1              MR. MCCULLOUGH:  Thank you.

2              MS. FINKELSTEIN:  Thank you very much, Judge.

3    *         *          *         *          *          *

4    This is certified to be a true and accurate transcript of my

5    stenographic notes taken in the above-captioned matter.

6

7

8                            Joanne Horrocks, CSR
                             Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J.H.

**EXHIBIT E**

NASSAU COUNTY
COUNTY COURT HOUSE
262 OLD COUNTRY ROAD
MINEOLA, NY  11501

CERTIFICATE OF DISPOSITION - SUPERIOR COURT INFORMATION

DATE: 03/13/2015                    CERTIFICATE OF DISPOSITION NUMBER: 2

PEOPLE OF THE STATE OF NEW YORK          CASE NUMBER:            SCI-02400N-20
                VS.              LOWER COURT NUMBER(S):  2009NA015998
                                                         2009NA015999
                                                         2009NA016000
                                                         2009NA016001
                                                         2009NA016002
                                                         2009NA016003
                                         DATE OF ARREST:         06/22/2009
                                         ARREST #:               R0011545
                                         DATE OF BIRTH:          12/25/1975

GRANADOS,JOSE J

                DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 11/12/2009 BEFORE THE HONORABLE
MCCORMACK,J  THEN A JUDGE OF THIS COURT, THE ABOVE NAMED DEFENDANT
ENTERED A PLEA OF GUILTY TO THE CRIME(S) OF

RAPE 3rd DEGREE PL  130.25 02 EF
CRIMINAL SEXUAL ACT 3rd DEGREE PL  130.40 02 EF

THAT ON 01/08/2010 THE ABOVE NAMED DEFENDANT WAS SENTENCED
BY THE HON. MCCORMACK,J ,THEN A JUDGE OF THIS COURT TO

RAPE 3rd DEGREE PL  130.25 02 EF
ORDER OF PROTECTION = 7 YEAR(S)
PROBATION = 10 YEAR(S)

CRIMINAL SEXUAL ACT 3rd DEGREE PL  130.40 02 EF
PROBATION = 10 YEAR(S)

CVAF = $25 (PAID)
DNA  = $50 (PAID)
SURCHARGE = $300 (PAID)
SEXUAL OFFENDER REGISTRATION = $1,050 (PAID)

IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 03/13/2015.

                                  _Maureen O'Connell_
                                  _____
                                       CLERK OF COURT

**EXHIBIT F**

# Retroactivity of *Padilla v. Kentucky* in New York State

By Sheila L. Bautista

Nearly four years ago, the United States Supreme Court decided *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), the landmark case that recognized the constitutional duty of criminal defense attorneys to advise their clients regarding the deportation consequences of pleading guilty. Of the many questions that developed in *Padilla's* wake, perhaps the most fundamental was the issue of its retroactivity with respect to convictions that had become final prior to the Supreme Court's decision. Under *Teague v. Lane*, 489 U.S. 288 (1989), *Padilla's* retroactivity effectively depended on whether the Court had announced a "new" rule, that is, whether *Padilla's* holding had been "dictated by precedent existing at the time the defendant's conviction had become final." *Teague*, 489 U.S. at 301. Had the result in *Padilla* not been "apparent to all reasonable jurists" before it was decided, then it would not be given retroactive effect. *See Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997). On the other hand, had *Padilla* simply involved the application of the already existing ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 104 S.Ct. 2052 (1984), to a particular set of facts, then it would apply retroactively.

New York courts weighed in on the issue prior to a ruling from the Supreme Court and found *Padilla* to be retroactive. Applying the *Teague* test, the First Department held in *People v. Baret*, 99 A.D.3d 408, 409 (1st Dept. 2012), that *Padilla* was not a new rule, but rather, "followed from the clearly established principles of the guarantee of effective of assistance of counsel under *Strickland*, and 'merely clarified the law as it applied to a particular set of facts'" (citations omitted). The Third Department agreed with this analysis in *People v. Rajpaul*, 97 A.D.3d 904 (3d Dept. 2012).

Last year, the Supreme Court had its own say in the matter. In a 7-2 decision, with Justice Elena Kagan writing for the majority, the Court ruled in *Chaidez v. United States*, 133 S.Ct. 1103 (2013), that *Padilla* was a new rule under *Teague* that did not apply retroactively to convictions that had already become final before March 31, 2010, the day the *Padilla* decision was announced. Key to this decision was the fact that *Padilla* marked the first time the Court had ever recognized an attorney's duty under the Sixth Amendment to advise a criminal defendant about collateral, non-criminal consequences of entering a guilty plea. Where *Padilla's* threshold question involved whether *Strickland* was even applicable under the circumstances, the Court rejected the notion that *Padilla* was simply another "garden-variety" ineffective assistance of counsel analysis applied to a different set of facts. The *Chaidez* court also observed that the ruling in *Padilla* had overruled existing law in ten federal circuits and over thirty states which had previously held that defense attorneys were not obligated to provide advice to clients about collateral consequences of pleading guilty. Thus, *Padilla* had announced a result that had not been "apparent to all reasonable jurists." Indeed, prior to *Padilla*, although New York state courts recognized ineffective assistance of counsel claims when an attorney gave a criminal defendant incorrect advice regarding the deportation consequences of pleading guilty, *People v. McDonald*, 1 N.Y.3d 109 (2003), no such claim was recognized when an attorney failed to give any advice at all regarding such consequences. *People v. Ford*, 86 N.Y.2d 397 (1995). Since the Appellate Division in *Baret* had assessed *Padilla's* retroactivity only under the *Teague* standard, *Chaidez* effectively overruled *Baret*, which the First Department later acknowledged in *People v. Verdejo*, 109 A.D.3d 138 (1st Dept. 2013).

The issue of *Padilla's* retroactivity in New York did not end with *Chaidez*. *Danforth v. Minnesota*, 552 U.S. 264 (2008), allows states to apply rules of criminal procedure with broader retroactivity than the federal *Teague* standard would dictate. Thus, *Danforth* allows New York to determine for itself whether or not *Padilla* should be applied retroactively. Exactly which retroactivity standards New York will apply to *Padilla* remains an open question. Since *Danforth*, the Court of Appeals has not had occasion to determine whether it would continue to apply the *Teague* retroactivity test to cases that "fundamentally alter[ed] the Federal constitutional landscape," as it did in *People v. Eastman*, 85 N.Y.2d 265 (1995), which determined the retroactivity of a Supreme Court decision involving the Confrontation Clause. In deciding *Padilla's* retroactivity, New York courts might also consider the three-part test in *People v. Pepper*, 53 N.Y.2d 213 (1981), which has been applied to new rules arising out of New York's own state court decisions. Those factors are: (1) the purpose to be served by the new standard, (2) the extent to which law enforcement authorities relied upon the old standard, and (3) the effect a retroactive application of the new standard would have on the administration of justice.

Since *Chaidez*, the First, Second, and Third Departments have held that *Padilla* is not retroactive. *See People v. Verdejo*, 109 A.D.3d 138 (1st Dept. 2013); *People v. Andrews*, 108 A.D.3d 727 (2d Dept. 2013); *People v. Bent*, 108 A.D.3d 882 (3d Dept. 2013). All three departments correctly followed the reasoning of *Chaidez* and found that *Padilla* was a new rule that was not to be given retroactive effect under *Teague*. The Second Department went one step further and applied New York's three-part *Pepper* test. Analyzing the first factor, which examines whether a new rule goes "to the heart of a reliable determination of guilt or innocence," the *Andrews* court found that advice about deportation consequences was "only collateral to or relatively far removed from the fact-finding process at trial,"

and as weighed in favor of prospective application. The *Andrews* court also recognized law enforcement reliance on New York's pre-*Padilla* standards, which allowed prosecutors to recommend acceptance of plea allocutions even if a defendant had not been advised of deportation consequences. Finally, the Second Department observed that retroactive application of *Padilla* would "potentially lead to an influx of CPL 440.10 motions to vacate the convictions of defendant whose guilty pleas were properly entered and accepted by courts under the old standard." Accordingly, the Second Department held that all three factors weighed against *Padilla*'s retroactive application.

*Andrews* remains binding authority on trial-level courts throughout the state until another department or the Court of Appeals makes its own ruling on the matter. *See Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663 (2d Dept. 1984), *accord People v. Turner*, 5 N.Y.3d 476

(2005). The Court of Appeals will have an opportunity rule on *Padilla*'s retroactivity in *Baret*, for which leave v granted last year. It remains to be seen whether the Cou will assess *Padilla*'s retroactivity only under federal *Tea* standard, or whether it will also decide the *Danforth* issue. *Baret* was decided in the Appellate Division prior to *Chaidez* and involved only an analysis under *Teague*, but the defendant in *Baret* has filed a brief urging the Court to also assess *Padilla*'s retroactivity under *Pepper*. The People argue that defendant's *Pepper*-based claims are unpreserved, but also contend that even under New York's retroactivity standards, *Padilla* should only apply prospectively.

Sheila L. Bautista is an Assistant District Attorney in the Appeals Bureau of the New York County District Attorney.



Each year in communities across New York State, indigent people face literally millions of civil legal matters without assistance. Women seek protection from an abusive spouse. Children are denied public benefits. Families lose their homes. All without benefit of legal counsel. They need your help.

If every attorney volunteered at least 20 hours a year and made a financial contribution to a legal aid or pro bono program, we could make a difference. Please give your time and share your talent.

Call the New York State Bar Association today at **518-487-5640** or go to **www.nysba.org/probono** to learn about pro bono opportunities.



DO THE PUBLIC GOOD
VOLUNTEER FOR PRO BONO

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
-------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

**AFFIDAVIT OF SERVICE**

-against-

SCI No. 2400N/09

JOSE DEJESUS GRANADOS,

Defendant.
-------------------------------------------------------------X
STATE OF NEW YORK   )
                                          ss.:
COUNTY OF NASSAU   )

      I, Ellen Luxmore, being duly sworn deposes and says:  I am not a party to the above-captioned action; I am over 18 years of age and reside in Baldwin, New York.

      On April 20, 2015, I served the within **Notice of Motion** by mailing a true copy of same in a sealed envelope, with postage prepaid thereon in a post office or official depository of the U.S. Postal Service within the State of New York, to the following persons set forth below:

Madeline Singas
Acting District Attorney
262 Old Country Road
Mineola, New York 11501

_____
ELLEN LUXMORE

Sworn to before me this

20th day of April, 2015

_____
Notary Public

LUCIA M. CIARAVINO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CI6061004   Nassau
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES JULY 8, 20 15

**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOSE DEJESUS GRANADOS,

Defendant.
-------------------------------------------------------------------x

AFFIRMATION IN OPPOSITION
TO DEFENDANT'S MOTION TO
VACATE HIS JUDGMENT OF
CONVICTION

SCI No.: 2400N/09

Hon. Angelo Delligatti

Ret. Date: May 11, 2015

## CONFIDENTIAL PURSUANT TO CIV. RIGHTS LAW § 50-b

MONICA M.C. LEITER, an attorney duly admitted to practice law before the courts of

the State of New York and an Assistant District Attorney of counsel to the Honorable Madeline

Singas, Acting District Attorney of Nassau County, affirms under penalty of perjury the factual

allegations contained herein.

1.      This affirmation is submitted in opposition to defendant Jose DeJesus Granados's

motion to vacate his judgment of conviction.  The statements contained herein are made upon

information and belief.  The sources of said information and the basis of said belief are my

review of the files and records of the Nassau County District Attorney's Office.

2.      On or about December 25, 2008, the fifteen-year-old victim, hereinafter referred

to as D.R., was at a party held at her aunt's house.  Defendant, who was the ex-husband of D.R.'s

aunt, Leyda Cruz, also attended the party and exchanged telephone numbers with the victim.  On

January 1, 2009, defendant kissed the victim after driving a third party home from another party.

A few days later, the victim was at Cruz's house, babysitting defendant's and Cruz's eight-year-

old daughter.  Defendant contacted her and persuaded her to sneak out and they went to

defendant's near-by apartment.  There, defendant performed oral sex on the victim as well as

vaginal sexual intercourse. This pattern, in which defendant contacted the child victim at Cruz's house and took her to his apartment for oral and vaginal sex, was subsequently repeated several times during January, February, and March 2009. On or about May 20, 2009, defendant sent a picture of his erect penis to the victim's cell phone. On or about June 6, 2009, defendant had D.R. perform oral sex on him while parked in a car on a public street in Mineola.

3.      On or about June 11, 2009, Cruz discovered the photograph of defendant's penis on the victim's cell phone. Cruz showed the photograph to the victim's mother and they, together with D.R., confronted defendant at his job. The police were contacted and they conducted an investigation. A few days later, defendant spoke to the police and admitted the sexual activity with the fifteen-year-old victim. Defendant's oral admission was recorded. The police also located a copy of the cell phone picture of defendant's penis, which he had sent to the victim.

4.      Defendant was charged with four counts of rape in the third degree (Penal Law § 130.25[2]) and six counts of criminal sexual act in the third degree (Penal Law § 130.40[2]). On November 12, 2009, defendant was allowed to plead guilty to only one count of each charge. At the beginning of the plea allocution, the court informed defendant to tell the court if there was anything he did not understand or if he wanted to confer with counsel. See defendant's Exhibit C at 4-5. The court noted on the record that a Spanish interpreter was being used and confirmed that defendant could understand him. Id. at 5.

5.      Defendant stated that he was thirty-three years old, had attended high school, and was not a United States citizen. Id. Defendant acknowledged that he understood when the court advised him that his guilty plea could result in deportation or denial of naturalization. Id. Defendant stated that he had sufficient time to speak to counsel before pleading guilty and that

2

he was satisfied with counsel's representation.  Id. at 6.  He also acknowledged that he was giving up the rights to a trial with the assistance of counsel, to have the People prove his guilt beyond a reasonable doubt, to confront witnesses against him, the right to call witnesses on his behalf, and the right to testify if he chose to do so.  Id.  He stated that he understood a guilty plea is the same as a conviction after trial and that no one had forced or threatened him to give up those rights.  Id. at 6-7.  He separately gave up his right to appeal and acknowledged that his decision to do was knowing and voluntary.  Id. at 7.  After the court discussed the potential sentences for the crimes and made a sentencing commitment of probation, defendant admitted having oral sex and sexual intercourse with the victim on January 3, 2009, and that he knew or had reason to know that she was fifteen at the time.  Id. at 11.

6.   Defendant was sentenced on January 8, 2010.  See defendant's Exhibit D.  When given the opportunity to speak, defendant said, "I'm very sorry, and I'm thankful, and I'm grateful for this opportunity."  Id. at 3.  He also said that he would follow whatever instructions the court gave him.  Id.  After cautioning defendant about the need to follow the strict conditions on probation, the court told defendant that he "ought to thank [his] attorney this time around for getting the result that he was able to achieve for [defendant] in this case."  Id.  Defendant was then sentenced to ten years of probation.  Id. at 4.  Immediately after sentencing, the prosecutor put the parties' agreement as to defendant's sex offender designation on the record and indicated that the points assigned to defendant result in him being classified as a level one sex offender. Id. at 6.  The court then adjudicated defendant as a level one sex offender.  Id. at 7.

7.   Defendant was deported after his conviction.  He subsequently re-entered the country without applying for permission to do so.  He was arrested by Immigration and Customs Enforcement ("ICE") on or about March 12, 2015, and charged with re-entry after removal.

3

8.       In his instant papers, defendant seeks to vacate his judgment of conviction pursuant to C.P.L. § 440.10(1)(h).  Defendant argues that he received ineffective assistance of counsel because he was not warned about the immigration consequences of his plea, as required by Padilla v. Kentucky, 559 U.S. 356 (2010).  In addition, defendant claims that he is actually innocent of the charges and that the court failed to comply with the requirements of People v. Peque, 22 N.Y.3d 168 (2013) and Boykin v. Alabama, 395 U.S. 238 (1969).  All of defendant's claims are meritless.  Neither Padilla nor Peque apply retroactively to defendant's conviction. Moreover, the Court is barred from considering defendant's Peque claim because he failed to raise it on direct appeal, and, in any event, the court had, in fact, complied with the requirements of Peque.  Furthermore, in addition to being procedurally barred, defendant's Boykin claim fails because the court's allocution properly advised defendant of his Boykin rights and confirmed that he had not been forced to waive them.  Finally, defendant's conclusory statements proclaiming innocence and unsupported hearsay aspersions against the child victim do not demonstrate the factual innocence necessary to support an actual innocence claim.

WHEREFORE, and for the reasons set forth in the accompanying memorandum of law, defendant's motion should be summarily denied.

Dated:   Mineola, New York
            May 6, 2015

MONICA M.C. LEITER

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

                    -against-                      SCI No.: 2400N/09

JOSE DEJESUS GRANADOS,

                             Defendant.
-------------------------------------------------------------------x


MEMORANDUM OF LAW


Respectfully submitted,

MADELINE SINGAS
Acting District Attorney, Nassau County
262 Old Country Road
Mineola, New York 11501
(516) 571-3800


Monica M.C. Leiter
  Assistant District Attorney
    of Counsel

STATEMENT OF FACTS

The facts relevant to this motion are set forth in the accompanying affirmation.

ARGUMENT

I.      Defendant's *Padilla* claim is meritless.

Defendant's ineffective assistance of counsel claim under Padilla v. Kentucky, 559 U.S. 356 (2010), should be summarily denied because "the moving papers do not allege any ground constituting legal basis for the motion."  C.P.L. § 440.30(4)(a).  Padilla is inapplicable to defendant's claim because it cannot be retroactively applied.  Moreover, defendant's unsupported claims are insufficient to sustain his allegations and to demonstrate prejudice.

To prevail upon his ineffective assistance of counsel claim under the federal constitution, defendant must show both that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy Strickland's prejudice requirement, defendant must demonstrate not only that he received deficient representation, but "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Because he pleaded guilty, defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

New York State law also includes a two part test.  See People v. Sanchez, 124 A.D.3d 685 (2d Dept. 2015); People v. Galan, 116 A.D.3d 787, 789 (2d Dept. 2014).  As the Second Department noted in Galan, the first prong of analysis of whether a defendant received "meaningful representation" is "identical to its Federal counterpart."  166 A.D.3d at 789; see also People v. Baldi, 54 N.Y.2d 137, 147 (1991).  The second prong contains a "prejudice component

[which] focuses on the 'fairness of the process as a whole rather than its particular impact on the outcome of the case.'" Galan, 166 A.D.3d at 789, quoting People v. Caban, 5 N.Y.3d 143, 156 (2011) and People v. Benevento, 91 N.Y.2d 708, 714 (1998).  When a defendant receives an advantageous plea and the record does not cast doubt on the apparent effectiveness of counsel, the defendant is deemed to have been furnished meaningful representation.  See People v. Torres, 224 A.D.2d 647 (2d Dept. 1996); see also People v. Boodhoo, 191 A.D.2d 448, 449 (2d Dept. 1993).  To prove his claim of ineffective assistance of counsel, defendant must show that there is a reasonable probability that, but for counsel's error, the defendant would not have pleaded guilty and would have insisted on going to trial.  See People v. McDonald, 1 N.Y.3d 109 (2003).

In Padilla v. Kentucky, 559 U.S. 356 (2010), the Supreme Court held that defense attorneys must advise their clients if their guilty pleas may subject them to deportation.  An attorney's failure to do so constitutes a constitutional deficiency under the first prong of Strickland.  If a defendant can establish that he was prejudiced by his attorney's error, (but for the error, he would not have pleaded guilty), then, he is entitled to relief on the basis of ineffective assistance of counsel.  See Padilla, 559 U.S. at 368-69.  Prior to Padilla, defense counsel did not have an affirmative duty to warn a defendant of possible immigration consequences before entering a guilty plea.  See People v. Ford, 86 N.Y.2d 397, 403-04 (1995).

Although defendant relies upon the holding in Padilla as the basis for his ineffective assistance of counsel claim, both the Supreme Court and the New York Court of Appeals have found that Padilla does not retroactively apply to convictions that were final before it was decided in March 2010.  See Chaidez v. United States, 133 S. Ct. 1103, 1105 (2013); People v. Baret, 23 N.Y.3d 777 (2014).  Because defendant pleaded guilty and was sentenced on

January 8, 2010, and he did not file a notice of appeal, his conviction became final on February 8, 2010, which was before Padilla was decided. See People v. Moran, 44 Misc.3d 1205(A), 2014 WL 2937005 (Sup. Ct. Bx. County 2014). Accordingly, Padilla is inapplicable; under then-existing well established law defense counsel had no duty to advise defendant about immigration issues when he pleaded guilty. That being the case, defendant has not established that his plea counsel's representation was deficient for failing to advise him about the immigration consequences of his guilty plea.

Furthermore, even if Padilla could be applied retroactively, which it cannot, defendant would still not be entitled to relief. First, defendant's motion should be summarily denied because he has not satisfied his evidentiary burden. Defendant bears the burden of coming forward with allegations sufficient to create an issue of fact. See People v. Bacchi, 186 A.D.2d 663, 664-65 (2d Dept. 1992); see also People v. Session, 34 N.Y.2d 254, 256 (1974) ("it is not enough to make conclusory allegations of ultimate facts; supporting evidentiary facts must be provided"); People v. Lake, 213 A.D.2d 494, 495-96 (2d Dept. 1995) (summary denial of C.P.L. § 440.10 motion proper when moving papers only offered conclusory and unsubstantiated allegations). Here, defendant's affidavit does not actually allege that plea counsel failed to discuss the immigration consequences of his plea. Indeed, his affidavit implies that he is faulting plea counsel for not assisting him after he had already been deported and re-entered the country. See defendant's affidavit at ¶ 4. His affidavit does not allege that he would have proceeded to trial and risked conviction for ten felony counts rather than accept ten years of probation for a guilty plea to two of those counts. In addition, defendant failed to include an affidavit from his plea counsel regarding his alleged failure to advise defendant about immigration consequences. Rather, the factual allegations against counsel are primarily contained in the affirmation provided

3

by defendant's motion counsel. Indeed, when defendant did not seem surprised when the court advised him of the immigration consequences of his plea, which supports the argument that he was already aware of such consequences. As such, defendant's claim that his prior counsel did not provide him with immigration advice about the consequences of his plea is unsupported by anything other than counsel's broad conclusory allegations. The motion should be summarily denied for that reason alone pursuant to C.P.L. § 440.30(4)(b).

Furthermore, defendant has not established prejudice because it would not have been rational for him to proceed to trial. See People v. Soodoo, 109 A.D.3d 1014, 1016 (2d Dept. 2013); People v. Picca, 97 A.D.3d 170, 180 (2d Dept. 2012). The case against defendant included a sworn statement from the child victim, defendant's own taped admission that he had sexual intercourse with the fifteen year old, and the photograph of his erect penis that he sent to the victim. It would not have been rational for defendant to have risked one-and-a-half to four years of incarceration each on so many counts rather than accept ten years of probation. As such, defendant cannot establish that he was prejudiced by the alleged failure to advise. See Soodoo, 109 A.D.3d at 1016; Picca, 97 A.D.3d at 180.

II.     Defendant's claim under *Peque* is procedurally barred and meritless.

Although defendant faults the plea court for not independently warning him about the potential immigration consequences of his guilty plea, that claim is procedurally barred and meritless. First, the claim is based on the record of the plea proceedings and therefore is procedurally barred. Second, the Court of Appeals decision requiring judges to independently advise defendants that they may be subject to deportation as a consequence of guilty pleas, People v. Peque, 22 N.Y.3d 168 (2013), is inapplicable to defendant's guilty plea because it cannot be retroactively applied. Finally, defendant's claim is baseless because the plea court

fulfilled the requirements of <u>Peque</u> by warning defendant that he could be deported or denied naturalization due to his guilty plea.

Defendant's claim is procedurally barred pursuant to C.P.L. § 440.10(2)(c) and must be denied by the Court. Defendant's claim that the plea court failed to advise him about immigration consequences of his guilty plea would have been entirely reviewable from the record, but he failed to take an appeal. A C.P.L. § 440.10 motion is not a suitable vehicle to raise a <u>Peque</u> claim, which ought to be brought on direct appeal. <u>See People v. Llibre</u>, 125 A.D.3d 422, 423-24 (1st Dept. 2015) (rejecting <u>Peque</u> claim because it was clear on the face of the record and not properly raised in a C.P.L. article 440 motion); <u>People v. Simpson</u>, 120 A.D.3d 412 (1st Dept. 2014) (rejecting the defendant's <u>Peque</u> claim because a "claim of a deficiency in a plea allocution is record-based and therefore may not be raised by way of a CPL 440.10 motion"). Consequently, defendant's <u>Peque</u> claim must be denied.

Furthermore, <u>Peque</u> is inapplicable to defendant's conviction because the decision cannot be retroactively applied. Recent cases in the Appellate Division, First Department clearly state that <u>Peque</u> does not apply to cases that were final when it was decided in 2013. <u>See Llibre</u>, 125 A.D.3d at 424; <u>People v. Brazil</u>, 123 A.D.3d 466 (1st Dept. 2014). Unless the Appellate Division, Second Department or the Court of Appeals holds to the contrary, the First Department cases holding that <u>Peque</u> is not retroactive to cases that were final when it was decided is controlling precedent on this Court. <u>See Mountain View Coach Lines, Inc. v. Storms</u>, 102 A.D.2d 663 (2d Dept. 1984).

Finally, defendant's claim is baseless because the plea court complied with the requirements of <u>Peque</u>. In <u>Peque</u>, the Court of Appeals held that it is necessary for a "trial court to apprise a defendant that, if the defendant is not an American citizen, he or she may be

5

deported as a consequence of a guilty plea to a felony." <u>Peque</u>, 22 N.Y.3d at 176. Here, the plea court did just that, advising defendant that his guilty plea could result in deportation or denial of naturalization. <u>See</u> defendant's Exhibit C at 5. Consequently, the plea court's warning was sufficient to satisfy due process and defendant's <u>Peque</u> claim is baseless and should be summarily denied. <u>See</u> <u>People v. Martial</u>, 125 A.D.3d 688 (2d Dept. 2015); <u>People v. Taveras</u>, 123 A.D.3d 745 (2d Dept. 2014); <u>see also</u> <u>People v. McIntosh</u>, 2015 WL 1896932, 2015 NY Slip Op. 03462 (1st Dept. Apr. 28, 2015).

III.   <u>Defendant's actual innocence claim is meritless and should be summarily denied.</u>

In his motion, defendant claims for the first time that he is actually innocent of the charges for which he was convicted. He alleges that the child victim did not accuse him, that the accusations were manufactured as part of a divorce proceeding, and that the victim made up the allegations because she is mentally ill. Defendant's claims are insufficient to make a prima facie showing of actual innocence and the claim should be summarily denied.

To prevail on a claim of actual innocence, the Appellate Division, Second Department held that a defendant must establish factual innocence by clear and convincing evidence. <u>People v. Hamilton</u>, 115 A.D.3d 12, 25, 27 (2d Dept. 2014). Because there is a presumption of guilt, not innocence, for a convicted defendant, "[m]ere doubt as to the defendant's guilt, or a preponderance of conflicting evidence as to the defendant's guilt, is insufficient." <u>Id.</u> at 27. According to <u>Hamilton</u>, a hearing is necessary only when a defendant makes a "sufficient showing of possible merit to warrant a fuller explanation." <u>Id.</u> In <u>Hamilton</u>, the defendant made out a prima facie case by providing affidavits from credible alibi witnesses, evidence of manipulation of witnesses, and recantation evidence from the witness against him. <u>See id.</u> By contrast, in this case, defendant has only supplied his own self-serving allegations that there was

no evidence, despite the fact that the police had recorded his admission of guilt, and the hearsay allegations made by his formerly estranged wife that primarily defame the child victim and contradict information provided to the prosecution when defendant was arrested. Defendant's thread-bare and unsupported allegations of innocence, especially when viewed in light of his statements acknowledging guilt at his plea, do not indicate that there is any possible merit to his claims and no further inquiry is necessary. See People v. Conway, 118 A.D.3d 1290, 1290 (4th Dept. 2014) ("defendant's claim of actual innocence was belied by his admissions of guilt during the plea colloquy") (internal quotations omitted).

Indeed, defendant's claims are rendered incredible when his sworn statements at his 2009 plea are taken into account. Defendant swore that he had oral and sexual intercourse with the victim while knowing or having reason to know that she was only fifteen years old at that time. See defendant's Exhibit C at 11. In essence, by contradicting his prior sworn statements, defendant is claiming to having lied to the plea court during his plea while simultaneously asking this Court to accept his current allegations, which are supported by nothing other than his own statements and the hearsay statements of his wife, as the truth. The Court should reject defendant's new, inconsistent allegations and hold him to what he swore was the truth when he pleaded guilty.

IV.   Defendant's claims under *Boykin v. Alabama* are procedurally barred and meritless.

Defendant's claims that his guilty plea violated the precepts of Boykin v. Alabama, 395 U.S. 238 (1969), are procedurally barred, inchoate, and directly refuted by the minutes of his guilty plea. First, defendant's attack on the quality of the allocution is entirely reviewable from the record and could have been, but was not, raised on direct appeal. Therefore, the claim must be denied pursuant to C.P.L. § 440.10(2)(c). See also People v. Stewart, 16 N.Y.3d 839, 840-41

7

(2011); People v. Cooks, 67 N.Y.2d 100, 101 (1986). Moreover, even if the Court does review the merits of defendant's claim, it should still be summarily denied pursuant to C.P.L. § 440.30(4)(d) because his claims are unsupported by anything but his own self-serving allegations, contradicted by the transcript, and there is in no reasonable possibility that his claims are true.

Although defendant claims that he was not "given all of his Boykin rights" (counsel's affirmation at ¶ 11), he appears to conflate plea counsel's alleged failure to advise him about the possibility of deportation with the plea court's obligation to advise him of the trial rights he was waiving by pleading guilty. See counsel's affirmation at ¶ 22. His argument is also undeveloped as he faults the court for not making sure that defendant's admission of a prior felony conviction was knowing, voluntary and intelligent (see counsel's affirmation at ¶ 20), but defendant had never been convicted of a previous felony and was merely warned by the court that the instant conviction would necessitate imprisonment if he is convicted of a new felony within ten years. See defendant's Exhibit C at 8.    Defendant also attacks his waiver of grand jury indictment, notwithstanding the fact that it was part of his favorable plea. See counsel's affirmation at ¶ 31. He also apparently faults the People for not providing information about what they would prove at trial or discovery. Id. at ¶¶ 32, 43. In addition, he blames his plea counsel for not informing him of his trial rights or his right to cross-examine the victim. Id. at ¶ 33. Finally, he faults the plea court for a "perfunctory" inquiry of the defendant, which elicited yes or no responses from defendant. Id. at ¶ 37.

Defendant's claims about what plea counsel allegedly did or did not tell him are supported only by defendant's general claims and the utterly irrelevant affidavit from his friend, who merely attests her belief that defendant would not have understood some of the words in the

transcript. Moreover, even if that could be used as grounds for ineffective assistance of counsel, which it could not because defendant would be unable to establish prejudice in light of the plea court's advisement and his own failure to stop and inquire if there was something he did not understand during the allocution, it has nothing to do with the plea court's obligation to advise defendant of his trial rights before accepting the guilty plea. In addition, to the extent that defendant faults the People for any discovery issues, he has not shown that he requested any discovery and he chose to plead guilty based on his own assessment of the People's case and his own knowledge of his criminal acts.

His remaining Boykin-related claim, that the plea court's allocution was insufficient, is meritless and refuted by the record. It is well settled that "[a] court is not required to engage in any particular litany when allocuting the defendant." People v. Ford, 86 N.Y.2d 397, 402-03 (1995). The Court of Appeals has "repeatedly rejected a formalistic approach to guilty pleas and [has] steered clear of a uniform mandatory catechism of pleading defendants in favor of broad discretions controlled by flexible standards." People v. Tyrell, 22 N.Y.3d 359, 365 (2013) (internal quotation omitted). In Tyrell, the Court of Appeals vacated guilty pleas under Boykin because the plea courts failed to inform the defendants of "the right to a trial by jury, the right to confront one's accusers and the privilege against self-incrimination." Id. at 361. Here, the plea court informed defendant of all of those rights. The plea transcript shows that the plea court inquired about defendant's understanding that he was giving up his trial rights, the right to have the People prove the case against him beyond a reasonable doubt, the right to confront witnesses, the right to call witnesses, the right to testify in his own defense, and the right not to testify. See defendant's Exhibit C at 6. The court also confirmed that defendant had not been forced or threatened to give up those rights. Id. at 7. The plea allocution was sufficient to advise

defendant of his rights and to confirm that he was giving up those rights freely.  Consequently,

defendant's claim should be summarily denied.

CONCLUSION

Defendant's Motion Should Be Summarily Denied.

Dated:  Mineola, New York
        May 6, 2015


                                          Respectfully submitted,

                                          MADELINE SINGAS
                                          Acting District Attorney, Nassau County
                                          262 Old Country Road
                                          Mineola, New York 11501
                                          (516) 571-3800


Monica M.C. Leiter
    Assistant District Attorney
    of Counsel

**EXHIBIT C**

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
----------------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK,

        -against-                          <u>REPLY AFFIRMATION</u>

JOSE DEJESUS GRANADOS,                SCI No. 2400N/09
                                            Refer to: Hon. James McCormack

                            Defendant.
----------------------------------------------------------X

      THOMAS F. LIOTTI, ESQ., an attorney duly admitted to practice in the courts of the

State of New York, does hereby affirm the following under penalties of perjury:

      1.     I am the attorney for the defendant herein with respect to a motion to vacate his

plea and sentence pursuant to CPL §440 as well as the due process of law provisions as contained

in both the United States Constitution, made applicable to the states by the 14th Amendment of the

United States Constitution and the New York State Constitution.

      2.     The People's papers in opposition are extremely disturbing in several respects but

most importantly because they reflect not merely a lack of empathy for Mr. Granados as a new

immigrant but a gross misunderstanding of the plight of new immigrants in the criminal justice

system.  In this instance that misunderstanding is so glaring that it clearly shows a blind adherence

to uphold a conviction at all costs although the duty of the prosecutor is to do justice.  This same

blindness is also reflective of inexperience but then must lead to the conclusion that the People are

deliberately discriminating against this defendant in violation of his civil and Constitutional rights.

      3.     For example, the People allege that the defendant is barred from making these

claims because he did not appeal.  The People, of course, fail to mention that the defendant was

compelled to waive his right to appeal as a condition of his plea.  (See p. 5 of the plea minutes,

1

lines 4-12). The defendant's lawyer at the time was assigned to represent the defendant in his appeal but did nothing to advise the defendant of his right to appeal and did nothing to perfect that appeal. There is nothing in the record or outside of it to show that the defendant had any understanding of his waiver; his rights to appeal or that he had free counsel assigned to him for that purpose. There is nothing to show that defense counsel filed a Notice of Appeal or did anything in writing or on the record to advise the defendant of his rights in that regard. The failure of defense counsel to properly advise the defendant of his rights or to take any action to protect those rights was further complicated by the fact that defense counsel did not represent the defendant in immigration proceedings and the defendant did not receive a state jail sentence other than time served. He was taken into the custody of immigration authorities and defense counsel here, upon information and belief, made no attempt to contact the defendant concerning his rights with respect to an appeal, *habeas corpus*, immigration and deportation.

4.     These factors and others show that defense counsel had a conflict of interest in that he was ineffective and ceased to advocate for his client. The People have misstated the rigors of *Strickland v. Washington*, 466 U.S. 668 (1984) and *People v. Baldi*, 54 N.Y.2d 137 (1981) in that the Second Circuit has held that merely nominal legal representation is ineffective. See, *Jenkins v. Coombe*, 821 F. 2d 158 (1987) and that a defense lawyer who ceases to advocate for a client is ineffective. See *Lopez v. Scully*, 58 F.3d 38 (2d Cir.1995).

5.     It is also appalling that the People, particularly when faced with the affidavit of Leyda Cruz attached to this defendant's motion papers have failed to disclose the *Brady* material reflected therein (see ¶5 of the Cruz affidavit). The People in this County are in the habit of not disclosing *Brady* material. See *People v. Daly*, 20 A.D.2d 542, 799 N.Y.S.2d 537 (2nd Dept.

2

2005); 5 N.Y.3d 882 (2005); 57 A.D.3d 914 (2d Dept., 2008); Liotti, Thomas F., The Uneven

Playing Field, Part III, Or What's On The Discovery Channel, St. John's Law Review, Vol. 77,

No. 1, Winter 2003, pp. 67-74 and Liotti, Thomas F. and Zeh, Christopher, Uneven Playing Field:

Ethical Disparities Between The Prosecution And Defense Functions In Criminal Cases, Touro

Law Review, Vol. 17, No. 2, Winter 2001 at pp. 467-501.

6.      No doubt the most troubling example of the People's failure to comply with *Brady*

is in regard to the allegation in the Cruz affidavit that the alleged underage victim was examined

by a medical doctor after the purported statutory rape and found to be still a virgin. The People

have not even addressed this issue in their responding papers.

7.      The legal point here is, not that the ineffective assistance claim is based upon a

myopic reading of *Padilla v. Kentucky*, 130 S.Ct.1473 (2010) alone because the claims are not

limited to improperly advising the defendant with respect to deportation although it is a significant

art in the microcosm of the plea and sentence. However, in the macrocosm of failed immigration

policies and a failure to provide effective legal representation to immigrants in criminal cases

neither our New York Court of Appeals nor the Supreme Court of the United States except for

piecemeal decisions such as *Padilla*, have addressed the global legal issues of ineffective

assistance of counsel under *Gideon v. Wainright*, 372 U.S. 335 (1963) and the Sixth Amendment

of the United States Constitution. What more must we do to insure that the rights of these

defendants are fully protected? The rendition of so-called *Boykin* rights by themselves are not

enough to insure an understanding of the legal process for people who come before our courts

with limited or no English language skills. Interpreters merely repeat what Judges have to say.

Yet there is a void or a gap that exists under existing law because the answers to perfunctory

3

questions posed by the court, often parroted by defendants from the sotto voce of defense counsel, do not in any way show an understanding of their rights or that a waiver of them is occurring "knowingly, voluntarily and intelligently". The cultural and educational gap is huge. A defendant from a foreign country, here perhaps illegally, wants to avoid trouble, seeing himself as a cog in the system and his only way out being to be compliant and subservient just as the slaves of yesteryear had to be obedient of their masters. Just as slavery was wrong so too our system of criminal justice in many ways has allowed that bygone era to continue albeit in a different form which belies the true realities of a pluralistic society.

WHEREFORE, the application of the defendant should be granted in all respects.

DATED:      Garden City, New York
             May 18, 2015

THOMAS F. LIOTTI

4

STATE OF NEW YORK : COUNTY OF NASSAU
COUNTY COURT : MINEOLA
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

               -against-

JOSE DEJESUS GRANADOS,

                           Defendant.
------------------------------------------------------------X
STATE OF NEW YORK  )
                      ss.:
COUNTY OF NASSAU   )

**AFFIDAVIT OF SERVICE**

SCI No. 2400N/09

    I, Ellen Luxmore, being duly sworn deposes and says:  I am not a party to the above-captioned action; I am over 18 years of age and reside in Baldwin, New York.

    On May 19, 2015, I served the within **Reply Affirmation** by mailing a true copy of same in a sealed envelope, with postage prepaid thereon in a post office or official depository of the U.S. Postal Service within the State of New York, to the following persons set forth below:

Madeline Singas
Acting District Attorney
262 Old Country Road
Mineola, New York 11501

_____
ELLEN LUXMORE

Sworn to before me this

19th day of May, 2015

_____
Notary Public

JEAN M. LAGRASTA
Notary Public, State of New York
No. 30-4569304
Qualified in Nassau County
Commission Expires Oct. 31, 2018

**EXHIBIT D**

SUPREME COURT, NASSAU COUNTY

SUPREME COURT TERM: PART 31
INDICTMENT NO. 2400N-09
MOTION SEQUENCE #001

P R E S E N T:

HON. ANGELO A. DELLIGATTI, Supreme Court Justice:

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, | : MADELINE SINGAS |
| | : Acting District Attorney |
| | : Nassau County |
| | : Mineola, New York |
| | : By Monica M.C. Leiter, Esq. |
| -against- | : |
| | : Thomas F. Liotti, Esq. |
| | : Attorney for the Defendant |
| | : Suite 530 |
| JOSE DEJESUS GRANADOS, | : 600 Old Country Road |
| Defendant. | : Garden City, NY 11530 |
| | : |

The following papers read on this motion:   3

    Notice of Motion...............................1
    Affirmation in Opposition...........1
    Affirmation in Reply.....................1

The defendant's motion for an order vacating his judgment of conviction, pursuant to CPL 2440.10 (1) (h) is hereby denied.  The Court finds the defendant's claim that he was denied effective assistance of counsel in that he was not properly advise him of the immigration consequences of his plea is controverted by a clear record to the contrary that defendant was properly advised of the immigration consequences of his plea.

It is settled law in this State that *Padilla v. Kentucky, 559 US 356 (2010)* and *People v. Peque, 22 NY3rd 168 (2013)* are not to be applied retroactively. As such the defendant's reliance on these cases in his moving papers is unpersuasive to this Court. Further, from this Court's reading of the defendant's plea allocution it is patently clear that the defendant was properly advised of his rights under *Boykin v. Alabama, 395 US 238 (1969).* The record is clear that the defendant made a knowing and voluntary plea in this matter. Procedurally, any claim of a violation of *Boykin, supra,* are record based and must be raised on direct appeal.

As far as the defendant's actual innocence claim it is also procedurally barred as the defendant has failed to proffer enough factually to establish by clear and convincing evidence that such claim exists. *See People v. Hamilton, 115 AD3rd 12 (2nd Dept. 2014)*

Accordingly, the defendant's motion is hereby denied in all respects.

ENTERED
AND
FILED

CLERK'S OFFICE
COUNTY COURT
NASSAU COUNTY

Dated: August 17, 2015

E N T E R :

Angelo A. Delligatti, J.S.C.

**EXHIBIT E**

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
           COUNTY OF NASSAU :   PART 48
 2    ------------------------------------x
      THE PEOPLE OF THE STATE OF NEW YORK
 3

 4
            -against-                    SCI No. 2400N/09
 5

 6    JOSE GRANADOS,

 7                      DEFENDANT.
      ------------------------------------x
 8                      Mineola, New York
                        November 12, 2009
 9

10    B E F O R E:   HON. JAMES P. McCORMACK
                     Acting Supreme Court Justice
11

12
      A P P E A R A N C E S:
13

14            HON. KATHLEEN RICE
              District Attorney of Nassau County
15            BY:   JOSEPH LaROCCA, ESQ.
              Assistant District Attorney
16            For the People

17
              THOMAS McKELLAR, ESQ.
18            37-06 82nd Street
              Jackson Heights, New York  11372
19            Attorney for Defendant

20

21    ALSO PRESENT:  Mercedes Lokich
                     Official Spanish Interpreter
22

23                    P L E A

24

25            Kathi A. Fedden
              Official Court Reporter
```

Proceedings                     2

```
 1                    THE CLERK:  People of the State of New York

 2         versus Jose Granados.

 3                    Appearances please, Counsel.

 4                    MR. McKELLAR:  Thomas McKellar, 37-06 82nd

 5         Street, Jackson Heights, New York.

 6                    MR. LaROCCA:  ADA Joe LaRocca for the People.

 7         Good morning.

 8                    THE COURT:  Good morning.

 9                    THE CLERK:  Note the presence of the Spanish

10         Language interpreter.  Madam interpreter, please put

11         your appearance on the record.

12                    THE INTERPRETER:  Mercedes Lokich, Spanish

13         interpreter.

14                    THE COURT:  Good morning, Mercedes.

15                    THE CLERK:  You are Jose Granados?

16                    THE DEFENDANT:  Yes.

17                    THE CLERK:  I have been instructed by the

18         Honorable James McCormack, sitting as a local criminal

19         court judge, to advise you that you have the right to a

20         felony hearing on the charges contained in this felony

21         complaint.  Do you waive the right to that felony

22         examination and consent to this case being held for the

23         action of the grand jury?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  All of you can have a seat.
```

Proceedings                           3

```
 1                    MR. McKELLAR:  Thank you, Judge.

 2                    THE CLERK:  The District Attorney of Nassau

 3    County has filed a Superior Court Information against

 4    you.  Under the Constitution of the State of New York,

 5    you have the right to be prosecuted by indictment.  Do

 6    you wish to waive that right and proceed by Superior

 7    Court Information?

 8                    THE DEFENDANT:  Yes.

 9                    THE COURT:  The waiver is approved.

10                    THE CLERK:  The District Attorney of Nassau

11    County has filed Superior Court Information number 2400N

12    of 2009 for the crimes of rape in the third degree and

13    criminal sexual act in the third degree.

14                    You are advised of your right to counsel

15    throughout all stages of these proceedings and you are

16    also advised that if you have any prior felony

17    convictions, you may be subject to a mandatory term of

18    imprisonment.  How do you plead, guilty or not guilty?

19                    THE DEFENDANT:  Guilty.

20                    THE COURT:  Before we affirm your plea,

21    Mr. Granados, People do you want to be heard?

22                    MR. LaROCCA:  Yes, thank you, your Honor.

23                    Your Honor, the defendant is charged under the

24    Superior Court Information with one count of rape in the

25    third degree and one count of criminal sexual act in the
```

Proceedings                                           4

1      third degree, both E felonies.   The People anticipate

2      pleas of guilty to both those charges in satisfaction of

3      the charges under Docket 15998 of 2009.

4                    In return for those pleas, the People

5      recommend a probationary sentence, a stay away order of

6      protection on behalf of the minor complainant in this

7      case, the appropriate adjudication for the Sex Offender

8      Registry Act and a waiver of the defendant's right to

9      appeal.

10                    The plea and the proposed sentence have been

11     discussed with the complainant and the family and

12     they're satisfied and willing to go forward under these

13     circumstances.   There have been no other promises.   We

14     recommend it as being in the interest of justice.

15                    THE COURT:   Mr. McKellar.

16                    MR. McKELLAR:   Judge, the defense joins in all

17     respects and my client has authorized me to enter a plea

18     of guilty to both counts of the Superior Court

19     Information.

20                    (Whereupon, the defendant, Jose Granados, was

21     duly sworn by the Clerk of the Court.)

22                    THE COURT:   I'm going to ask you a series of

23     questions, Mr. Granados.   If there is anything you do

24     not understand, please tell me.

25                    If at any point in time you need to speak to

1              Mr. McKellar, your attorney, indicate that as well.

2                    I'm also going to ask that all your answers be

3      in Spanish, which will be interpreted to me in English

4      by the interpreter.  Do we understand each other?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  How old are you?

7                    THE DEFENDANT:  Thirty three.

8                    THE COURT:  Do you read and write English?

9                    THE DEFENDANT:  A little.

10                    THE COURT:  Is Spanish your natural language?

11                    THE DEFENDANT:  Yes.

12                    THE COURT:  Are you a citizen of the United

13     States?

14                    THE DEFENDANT:  No.

15                    THE COURT:  Do you understand that by pleading

16     guilty today in this case, your plea may result in

17     deportation or denial of naturalization?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  What was the highest grade you

20     completed in school?

21                    THE DEFENDANT:  High school.

22                    THE COURT:  Do you feel in good physical and

23     mental health as you sit here today?

24                    THE DEFENDANT:  Absolutely.

25                    THE COURT:  Have you taken any drugs or

Proceedings                    6

1        alcohol within the past 24 hours?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Have you ever been treated or

4        confined to a hospital for any mental illness?

5                    THE DEFENDANT:  No.

6                    THE COURT:  Have you had enough time to speak

7        to your lawyer before pleading guilty here today?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Are you satisfied in the manner in

10       which he's represented you?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Do you understand that you would

13       have had right to a trial with the assistance of your

14       lawyer, that the People would have had to prove your

15       guilt beyond a reasonable doubt and that you would have

16       the right to confront the witnesses against you, the

17       right to call your own witnesses on your own behalf and

18       the right to testify in your own defense, although you

19       would not be required to do so?

20                   Do you understand that by pleading guilty here

21       today, you are giving up all these rights?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Do you further understand that a

24       plea of guilty is the same as a conviction after trial?

25                   THE DEFENDANT:  Yes.

```
 1                    THE COURT:  Has anybody forced or threatened
 2         you to give up these rights?
 3                    THE DEFENDANT:  No.
 4                    THE COURT:  Now, do you further understand
 5         that you would have a right to appeal what's taken place
 6         here today to a higher Court for a review of what has
 7         occurred and that the district attorney, as part of the
 8         plea, is requiring that you waive your right to appeal,
 9         which means you cannot appeal to a higher Court for a
10         review of what's happened here today both with respect
11         to the plea, as well as the sentence?  Do you understand
12         that?
13                    THE DEFENDANT:  Yes.
14                    THE COURT:  And you have discussed your waiver
15         of your right to appeal with your lawyer?
16                    THE DEFENDANT:  Yes.
17                    THE COURT:  Are you now voluntarily giving up
18         your right to appeal?
19                    THE DEFENDANT:  Yes.
20                    THE COURT:  Has anybody forced or threatened
21         you to give up that right?
22                    THE DEFENDANT:  No.
23                    THE COURT:  Now, are you currently on
24         probation or parole?
25                    THE DEFENDANT:  No.
```

1          THE COURT:  Have you previously been convicted

2     of a felony prior to today?

3          THE DEFENDANT:  No.

4          THE COURT:  You understand that today you are

5     pleading guilty to a felony and if you are convicted of

6     a new felony at any time within the next ten years, the

7     Court in that new case must impose a mandatory term of

8     imprisonment.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Now, under this Superior Court

11     Information you are charged with one count of rape in

12     the third degree under Penal Law Section 130.25 --

13          MR. LaROCCA:  Subdivision two.

14          THE COURT:  Subdivision two, which is a class

15     E felony for which you could have faced a maximum

16     sentence of one-and-a-third to four years in prison; do

17     you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And also you were charged under

20     the same Superior Court Information with criminal sexual

21     act in the third degree under Penal Law Section

22     130.40(2), which is also a class E felony and, again,

23     you could have faced a maximum sentence of up to

24     one-and-a-third to four years in jail; do you understand

25     that?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you understand what the

3    original charges were and what you face in terms of a

4    possible sentence?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Now, I have had a discussion with

7    your attorney and the district attorney and based upon

8    that discussion, my promise and commitment with respect

9    to your sentence would be a period of probation not to

10   exceed five years on each.  You would be required to

11   register as a person convicted of a sex offense and I

12   would be issuing a stay away order of protection on

13   behalf of the complainant in this case.  Do you

14   understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Other than that promise, has

17   anyone made any different promise to you?

18          THE DEFENDANT:  No.

19          THE COURT:  Now, I am going to be ordering a

20   presentence probation report.  Should that probation

21   report come back and recommend jail time or for any

22   reason after reviewing that probation report I cannot or

23   choose not to honor my promise and commitment with

24   respect to your sentence, I will give you the

25   opportunity to take back your plea and you can proceed

```
1     to trial; do you understand that?

2                 THE DEFENDANT:  Yes.

3                 THE COURT:  Further, if you fail to appear for

4     sentence, if you fail to cooperate with the Probation

5     Department or if you get arrested for a new crime

6     between today and your sentence date, then my commitment

7     as to your sentence will be off.  I will not be bound by

8     my commitment and I can sentence you to anything up to

9     the maximum, which is one-and-a-third to four years; do

10    you understand that?

11                THE DEFENDANT:  Yes.

12                THE COURT:  Mr. LaRocca, you want to add

13    something?

14                MR. LaROCCA:  May we approach for one second?

15                THE COURT:  Sure.

16                (Whereupon, a discussion was held off the

17    record.)

18                THE COURT:  Mr. Granados, I stand corrected.

19    With regard to your probationary sentence, it's a

20    probationary sentence that will not exceed ten years,

21    not five years; do you understand that?

22                THE DEFENDANT:  Okay.

23                THE COURT:  Having been told that and

24    understanding that, do you still wish to go forward with

25    your plea?
```

Proceedings                    '11

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  Directing your attention to the

3         3rd day of January of this year, 2009 at 153 Cleveland

4         Avenue in the town of Mineola, County of Nassau, State

5         of New York, at that time did you have oral sex and

6         sexual intercourse with a [name deleted]?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  And you knew or had reason to know

9         that she was 15 years of age at that time?

10                    THE DEFENDANT:  Yes.

11                    THE COURT:  People, are you satisfied?

12                    MR. LaROCCA:  Yes, thank you, your Honor.

13                    THE COURT:  Mr. Granados, are you prepared to

14        plead guilty at this time?

15                    THE DEFENDANT:  Yes.

16                    THE COURT:  Everything you told me here today

17        the truth?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  The Court is satisfied that the

20        defendant understands the nature of the charges, the

21        possible consequences of his plea, the nature of the

22        plea, as well as the nature of the charges; that he's

23        discussed his legal rights with his attorney; that he

24        understands he's waiving his constitutional rights and

25        the plea is voluntary and of his own free will.

Kathi A. Fedden, Sr. Court Reporter

1            The Court is further satisfied that the

2      defendant has acknowledged his guilt and believes it's

3      in the interest of justice to accept the plea from this

4      defendant.   The clerk is now directed to take the plea.

5            THE CLERK:   Jose Granados, do you now affirm

6      your plea of guilty to rape in the third degree and

7      criminal sexual act in the third degree under SCI 2400N

8      of 2009?

9            THE DEFENDANT:   Yes.

10           THE CLERK:   How do you plead, guilty or not

11     guilty?

12           THE DEFENDANT:   Guilty.

13           THE COURT:   Mr. McKellar, how is January 8th

14     for sentence?

15           MR. McKELLAR:   That's a good date, Judge.

16           THE COURT:   1/8/2010.

17           Mr. Granados, there is a new order of

18     protection that I just signed that bears your signature.

19     I understand you have gone over it with your attorney.

20           THE CLERK:   I'm serving a copy of the

21     temporary order of protection on the defendant, defense

22     counsel and two copies on the district attorney's

23     office.

24           MR. McKELLAR:   We acknowledge receipt.

25           MR. LaROCCA:   People acknowledge receipt,

1    thank you.

2                THE CLERK:  Mr. Granados, your case is being

3    adjourned to January 8, 2010.  If you fail to appear

4    that day, your bail will be forfeited, a warrant will

5    issue for your arrest, you will be subject to the charge

6    of bail jumping and your case will proceed in your

7    absence; do you understand?

8                THE DEFENDANT:  Yes.

9                THE CLERK:  You are also directed to report to

10    probation to begin the pre-sentence investigation.

11                MR. McKELLAR:  Thank you.

12

13            *                *                *

14

15

16            C E R T I F I C A T I O N

17

18        I hereby certify the within to be a

19        true and accurate transcription of my

20        stenographic notes in the above proceeding.

21

22

23

24        *Kathi A. Fedden*
          Kathi A. Fedden

25

**EXHIBIT F**

1

1   STATE OF NEW YORK   :   NASSAU COUNTY

2        SUPREME COURT   :   PART 36

3   -----------------------------------------X

4   THE PEOPLE OF THE STATE OF NEW YORK,

5          -against-                    SCI No.  2400N-09

6   JOSE GRANADOS,

7                         Defendant.

8   -----------------------------------------X

9   SENTENCE

10                          January 8, 2010
                            252 Old Country Road
11                          Mineola, New York

12   B E F O R E :

13        HON.  JAMES P. McCORMACK,
               Acting Supreme Court Justice

14

15

16   A P P E A R A N C E S :

17        HON.  KATHLEEN M. RICE
               Nassau County District Attorney
18             BY:  SILVIA FINKELSTEIN, ESQ., of Counsel
               Assistant District Attorney
19                       For the People

20

21        THOMAS McCULLOUGH, ESQ.
               37-06 82nd Street
22             Jackson Heights
                         For the Defendant
23
                              JOANNE HORROCKS, CSR
24                            Senior Court Reporter

25

J.H.

Proceedings                              2

1            THE CLERK:  This is on the sentence calendar,

2     the People against Jose Granados, SCI 2400N of 2009.

3            MS. FINKELSTEIN:  On behalf of the People,

4     Silvia Finkelstein for Jamie Johnson.

5            MR. MCCULLOUGH:  And for Mr. Granados, Thomas

6     McCullough, 37-06 82nd Street, Jackson Heights,

7     New York.  Good morning, Judge.

8            THE COURT:  Good morning.

9            THE CLERK:  You are Jose Granados?

10           THE DEFENDANT:  Yes.

11           THE CLERK:  And you appear with your

12    attorney?

13           THE DEFENDANT:  Yes.

14           THE CLERK:  Counselor, is your client ready

15    for sentence?

16           MR. MCCULLOUGH:  He is.

17           THE CLERK:  Do the People wish to be heard?

18           MS. FINKELSTEIN:  Yes, your Honor.  We have

19    had extensive conferences in this case.  We had one

20    today where we discussed in detail the recommendations

21    of the probation report as well as the sex offender

22    conditions that were recommended by the Department of

23    Probation, and we have come to an agreement.  In

24    addition, of course, we are urging you to impose the

25    previous new recommended 10 years probation, and we ask

J.H.

Proceedings                                    3

1    you that you issue a permanent order of protection in

2    favor of the complainant in this matter and that we

3    conduct a designation hearing under the sex offender

4    registration act after you pass sentence.

5              THE COURT:  Mr. McCullough, do you want to be

6    heard?

7              MR. MCCULLOUGH:  No, thank you, Judge.

8              THE COURT:  All right, Mr. Granados, anything

9    you want to say, sir?

10             THE DEFENDANT:  That I'm very sorry, and I'm

11   thankful, and I'm grateful for this opportunity.

12             THE COURT:  Anything else?

13             THE DEFENDANT:  I would follow whatever

14   instructions you are imposing on me.

15             THE COURT:  Well, with regard to the, as you

16   call it, instructions, they are going to be more like

17   conditions.  They are going to be conditions of

18   probation.

19             And unlike the typical conditions of

20   probation, such as staying out of trouble, not getting

21   rearrested, refraining from people and places where

22   criminality is involved, and given the nature of your

23   offense, your conditions are going to be rather strict

24   and stringent.  And I want to make a promise to you

25   that if you fail to abide by the conditions of

J.H.

Proceedings                                      4

1       probation or get rearrested for a new crime or for any

2       reason you come anywhere near the complainant in this

3       case, I can guarantee you are going to be going to

4       jail.  And it's not going to be here in East Meadow

5       locally.  It's going to be upstate.  Do we understand

6       each other?

7                   THE DEFENDANT:  Yes.

8                   THE COURT:  And you ought to thank your

9       attorney this time around for getting the result that

10      he was able to achieve for you in this case.  But let

11      me just warn you that as good as your attorney is, if

12      you screw up on probation, he is not going to be able

13      to save you.  Do you understand me?

14                  THE DEFENDANT:  Yes.

15                  THE COURT:  It is the judgment of this Court

16      that for your plea to rape in the third degree on

17      Docket 2400N of '09 and criminal sex act in the third

18      degree for which you stand convicted in satisfaction

19      thereof, you are hereby sentenced to 10 years

20      probation, the terms and conditions of which will be

21      given to you if they haven't already by my clerk to go

22      over with your attorney, and please indicate and

23      signify your consent by signing in the space provided.

24                  There's a mandatory surcharge of $300, a

25      crime victim's fee of $25 and a DNA database fee of

Proceedings                                    5

1    $50.  In addition, there's a sex offender registration

2    fee of $50 and a sex offender victim assistance fee,

3    which I believe is $1,000.  That's roughly by my

4    calculations about $1,425.

5                Mr. McCoullough, how does your client intend

6    to pay, or does he need time to pay?

7                MR. MCCULLOUGH:  Judge, we would take time to

8    pay.  Being from Queens, can he work that out through

9    victim services or probation?  Or just give us a date,

10   and he'll pay it by that date, Judge.

11               THE COURT:  What I'll do, given the amount,

12   I'll give you a date three months out.  Since it's not

13   restitution, I don't believe that probation, at least

14   in this county, gets involved in collecting these kind

15   of fees; on or about April 30th, 2010.

16               MR. MCCULLOUGH:  Thank you, Judge.

17               THE COURT:  And I have signed the order of

18   protection on behalf of the complainant in this case.

19               THE CLERK:  Serving on the defendant and

20   defense counsel a copy of the order of protection and

21   two copies on the District Attorney.

22               MR. MCCULLOUGH:  Acknowledge receipt.

23               MS. FINKELSTEIN:  The People acknowledge

24   receipt.  Thank you very much, your Honor.

25               THE CLERK:  Also serving defendant with terms

J.H.

Proceedings                                6

1   and conditions of probation and the additional sex

2   offender conditions.

3           MR. MCCULLOUGH:  Acknowledge receipt.

4           MS. FINKELSTEIN:  Your Honor, we have agreed

5   on the assessment of the points, and I would like to

6   put it on the record.

7           THE COURT:  Yes, go ahead.

8           MS. FINKELSTEIN:  With respect to the sex

9   offender registration act risk assessment instrument,

10  we have agreed upon the following points:  25 points

11  under category number two, sexual contact with the

12  victim in that there was sexual intercourse or deviate

13  intercourse.  Twenty points are being assessed in that

14  there was a continuing course of sexual misconduct that

15  expanded over a period of time, and 20 points have been

16  assessed in that the age of the victim was between 11

17  and 16 years old.  In fact, she was 15.  That brings us

18  to a total of 65 points which renders the defendant

19  level one sex offender.

20          With respect to the sex offender category,

21  the defendant is not a sexual violent offender.  He is

22  not a predicate sex offender, and he is not a sexual

23  predator.  Therefore, his designation is none of the

24  above.

25          THE COURT:  Okay.  Mr. McCoullough, do you

J.H.

Proceedings                                        7

1      agree and so stipulate to these calculations set forth

2      by the People?

3                    MR. MCCULLOUGH:  I do, Judge.

4                    THE COURT:  And you have no objection to your

5      client being adjudicated a level one sex offender?

6                    MR. MCCULLOUGH:  No objection.

7                    THE COURT:  So he will be -- nor does the

8      Court for that matter.  So the defendant will be

9      adjudicated a level one sex offender for purposes of

10     the sex offender registry act.

11                   THE CLERK:  Serving defendant with a copy of

12     the sex offender registration form.

13                   Mr. Granados, you have the right to appeal

14     the Court's sex offender risk level determination.  The

15     appeal must be brought pursuant to the CPLR Articles

16     55, 56 and 57.  Your assigned counsel will continue

17     representing you throughout the pendency of the appeal.

18     Two copies of a notice of appeal must be filed with

19     this court within 30 days.

20                   MR. MCCULLOUGH:  Acknowledge receipt.

21                   THE COURT:  Okay, good luck to you.

22                   (Continued on the following page.)

23

24

25

                                                      J.H.

Proceedings                          8

1              MR. MCCULLOUGH:   Thank you.

2              MS. FINKELSTEIN:   Thank you very much, Judge.

3     *          *          *          *          *          *

4     This is certified to be a true and accurate transcript of my

5     stenographic notes taken in the above-captioned matter.

6

7                                  _____
                                   Joanne Horrocks, CSR
8                                  Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25