# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 16-CV-2212 (JFB)
_____

JOSE DEJESUS GRANADOS,

Petitioner,

VERSUS

HON. MADELINE SINGAS AND MICHAEL SPOSATO,

Respondents.
_____

**MEMORANDUM AND ORDER**
October 24, 2016
_____

JOSEPH F. BIANCO, District Judge:

On May 3, 2016, Jose DeJesus Granados ("petitioner" or "Granados") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 and 2254, challenging his conviction in New York State Court for one count of rape in the third degree and one count of criminal sexual act in the third degree. (Pet. for Habeas Corpus ("Pet."), ECF No. 1.) Petitioner pled guilty to these charges in 2009 and was sentenced to ten years of probation and also adjudicated a level one sex offender.

In the instant habeas petition, Granados principally challenges his conviction on the following grounds: (1) his guilty plea in 2009 was not knowing and voluntary because he received ineffective assistance of counsel, (2) the District Attorney's office in the County of Nassau (the "State") failed to disclose *Brady* material, and (3) he is actually innocent. Respondents, Madeline Singas, District Attorney, County of Nassau, and Michael Sposato, Sheriff, Nassau County, have moved to dismiss his petition, arguing that it is untimely and that Granados has failed to establish his actual innocence. For the reasons that follow, this Court grants respondents' motion to dismiss.

I. BACKGROUND

The Court has adduced the following facts from the instant petition and underlying record.

A.   Factual Background

According to the police, on or about June 11, 2009, the victim's mother found an explicit picture of petitioner's genitalia on the victim's phone. She reported the discovery to the police, who performed an investigation. Petitioner, who was thirty-three years old at the time, was questioned by the police and admitted that he had engaged in sexual intercourse with the fifteen-year-old

victim. The police located the same explicit image on petitioner's phone that had been discovered on the victim's phone. Petitioner was charged with four counts of rape in the third degree and six counts of criminal sexual act in the third degree.

On November 12, 2009, petitioner pled guilty to one count of rape in the third degree and one count of criminal sexual act in the third degree. At the plea colloquy, he admitted that he had oral sex and sexual intercourse with the victim. (November 12, 2009 Minutes of Plea at 11-12.) At the outset of the plea proceedings, petitioner was instructed to inform the court if there was anything in the proceeding that he did not understand. (*Id.* at 4.) The court asked him whether he had a chance to discuss the plea with his attorney prior to the plea allocation and whether he was satisfied with the manner in which his attorney had represented him, and he answered "yes" to both questions. (*Id.* at 6.) In addition, the court asked him whether he "underst[ood] that by pleading guilty . . . in th[e] case, [his] plea may result in deportation or denial of naturalization." (*Id.* at 5.) He responded in the affirmative. (*Id.*) He also stated that he understood that he would be required to register as a person convicted of a sex offense. (*Id.* at 9.) As part of the plea allocation, petitioner also affirmed that he was aware that by pleading guilty he was giving up his right to a trial with the assistance of his attorney, his right to confront the witnesses testifying against him, the right to call his own witnesses, and the right to testify in his own defense, and, further, that, were he to go to trial, the State would have to prove his guilt beyond a reasonable doubt. (*Id.* at 6.) At the end of the plea colloquy, the judge concluded that petitioner understood the nature of the charges against him, the consequences of his plea, and the rights he was waiving, and his guilty plea was entered. (*Id.* at 11.)

Petitioner was sentenced to probation on January 8, 2010. When asked at his sentencing if he had anything he wanted to say, he stated only that "I'm very sorry, and I'm thankful, and I'm grateful for this opportunity." (January 8, 2010 Minutes of Sentencing at 3.) Petitioner did not appeal from his judgment of conviction or from his sex offender designation. His judgment of conviction became final on February 8, 2010. On November 9, 2010, he was deported.

At an unknown date, petitioner reentered the United States without first applying for leave to do so. He was arrested by Immigration and Customs Enforcement on March 12, 2015 and charged with reentry after removal.

B.  Procedural Background

On April 16, 2015, petitioner moved in New York State court pursuant to New York Criminal Procedure Law § 440.10(1)(h) to vacate his sentence. In connection with this motion, he submitted an affidavit (the "Cruz Affidavit") prepared by his wife, Leyda Cruz, who is the victim's aunt. In her affidavit, Cruz states that she was informed by the victim's mother that the victim "has been hospitalized at North Shore University Hospital and diagnosed as a paranoid schizophrenic with hallucinations for which she takes medication . . . [and has been] diagnosed as bi-polar." (Cruz Aff. ¶ 3.) She also claims that "sometime after the alleged rape on January 3, 2009 when it was reported to the police . . . , my niece was taken to a medical doctor who determined that she was still a virgin. She told me that Detective Trujillo had investigated the case and was aware of the medical doctor's report." (*Id.* ¶ 4.) Finally, she states that "I believe [the victim] fabricated this story." (*Id.* ¶ 7.)

2

On August 17, 2015, Nassau County Supreme Court denied the petition. Petitioner moved for leave to appeal from the denial of his motion to the Appellate Division, Second Department, but his motion for leave to appeal was denied on January 22, 2016.

On May 3, 2016, petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. §§ 2241 and 2254. On June 23, 2016, respondents moved to dismiss the petition pursuant to Federal Rule of Civil Procedure 12(b)(6). On June 28, 2016, petitioner submitted a letter in opposition to the motion to dismiss. Oral argument was scheduled for July 28, 2016, but both parties rested on their papers. On October 5, 2016, petitioner was sentenced to time-served on his illegal reentry charge.

II. DISCUSSION

a. Timeliness of Petition

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No 104-132, 110 Stat. 1214, which, among other things, amended 28 U.S.C. § 2244(d)(1) to provide a one-year limitation period for filing a petition for a writ of habeas corpus by a person in state custody pursuant to a state court judgment. The general rule is that the limitation period will begin to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, the statute also provides three exceptions under which the one-year limitation period will commence on a later date, specifically:

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

§§ 2244(d)(1)(B)-(D). With respect to the final exception (§ 2244(d)(1)(D)), the "burden of demonstrating due diligence rests with petitioner." *Shabazz v. Filion*, 402 F. App'x 629, 630 (2d Cir. 2010). Additionally, evidence is not newly discovered simply because petitioner did not possess it until recently. Rather, if the evidence could have been obtained earlier, "the date when the evidence was actually obtained has no effect on the AEDPA limitation period." *Duamutef v. Mazzuca*, No. 01CIV2553WHPGWG, 2002 WL 413812, at *9 (S.D.N.Y. Mar. 15, 2002).

As noted above, petitioner's judgment of conviction became final on February 8, 2010.[1] Accordingly, under § 2244(d)(1)(A) of the AEDPA, petitioner had one year, until

---

[1] If a petitioner does not file a direct appeal of his conviction, it becomes "final" when his time to file such an appeal expires. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54, 181 L. Ed. 2d 619 (2012). Under

3

February 8, 2011, to file his habeas petition. Granados's petition, filed over five years after the deadline, is plainly untimely unless one of the exceptions enumerated in §§ 2244(d)(1)(B), 2244(d)(1)(C), or 2244(d)(1)(D) applies.[2] However, an examination of Granados's claims reveals that no such exceptions apply. Granados does not argue (nor is there any basis in the record to support an argument) that there was any legal impediment barring him from filing his petition, that there has been any intervening and applicable establishment of a constitutional right to which he would be retroactively entitled, or that the factual predicate for his claims was not discoverable through the exercise of due diligence in the year prior to the filing of his habeas claim.

1. Ineffective Assistance Claim

Granados's principal argument in his petition is that because of the ineffective representation of his counsel, his guilty plea was not knowing and voluntary and therefore should be withdrawn. Granados asserts that his counsel's performance was deficient in a number of respects. Granados alleges that his counsel was ineffective in the investigation of the crime based on his failure to file any motions, make discovery demands pursuant to New York Criminal Procedure Law § 240.20, interview any alleged witnesses, visit the crime scene, or hire an investigator. (Pet. ¶ 11.) Granados also argues that his counsel's advice concerning whether to accept the guilty plea was inadequate because he failed to inform petitioner of his right to a trial, discovery, motion practice, and an appeal; the possibilities of success at trial; or how the victim might be impeached. (Pet. ¶ 16.) Finally, Granados alleges that his counsel did not convey to him the immigration consequences of his guilty plea, specifically, that he could face deportation as a consequence of his plea. (Pet. ¶ 10.)

From a review of these arguments, it is clear that none of the exceptions to the general rule that the one-year limitation period runs from the date the judgment becomes final apply in the instant case.

First, petitioner does not identify any legal bar that prevented him from seeking habeas relief based on the ineffective assistance of his counsel. Second, he does not identify a new constitutional right pertaining to his counsel's performance that would operate retroactively to provide him with relief.[3] The third and final possible justification for the belated filing of his

---

New York law, a petitioner has thirty days during which to file his appeal. *See* N.Y. Crim. Pro. L. § 460.10(1)(a). Accordingly, as petitioner's judgment of conviction was entered on January 8, 2010, it became final thirty days later, on February 8, 2010, when his time to appeal the judgment expired.

[2] Petitioner filed his state petition in 2015, at which time the time period in which he was able to file his federal habeas petition was stayed. Therefore, the relevant question is whether any of these exceptions applied in 2015, i.e., six years after the entry of his guilty plea in 2009 and five years after the one-year limitation period provided for by AEDPA.

[3] Petitioner does note that *Padilla v. Kentucky*, which requires an attorney to advise her client of the immigration consequences of his plea, was issued after his conviction, and he argues that his guilty plea should be withdrawn because his counsel allegedly failed to advise him that he could be deported as a result of his plea. (Pet. ¶ 10.) *See also Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). However, the Supreme Court has made clear that *Padilla*'s holding does not apply retroactively to defendants whose convictions, like Granados's, became final before *Padilla* was decided. *Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013); *see, e.g.*, *Desrosiers v. Lee*, No. 11-CV-00804 CBA, 2013 WL 702912, at *4 (E.D.N.Y. Feb. 26, 2013) (applying *Chaidez*). Accordingly, *Padilla*'s holding does not apply to petitioner's case. In any event, as noted *supra*, the court advised him at the time of his plea that he could be deported due to his guilty plea.

4

petition is that the factual predicates for his ineffective assistance claims were not discoverable with an exercise of reasonable diligence until the year prior to the filing of the habeas petition. Petitioner does not attempt to make this argument and failing to assert the claim can alone be grounds to find the exception inapplicable. *See, e.g.*, *Goodwin v. Pallito*, No. 2:14 CV 110 (WKS), 2015 WL 778613, at *4 (D. Vt. Feb. 24, 2015) (concluding that § 2244(d)(1)(D) would not apply where petitioner "d[id] not assert that he observed the alleged ineffective conduct only recently"). Nevertheless, the Court independently examined the record and did not identify any basis to conclude that the facts underlying his ineffective assistance claim would have been undiscoverable until 2015.

For instance, petitioner argues that his attorney was ineffective for failing to properly investigate the claim. However, his attorney's allegedly deficient performance took place prior to the entry of his guilty plea in 2009. Although Granados would likely have known that his attorney did not undertake any investigation of his case at the time of his guilty plea, he certainly could have uncovered his attorney's alleged dereliction with reasonable diligence within the year following his conviction. *See Hector v. Greiner*, No. 99 CV 7863 (FB), 2000 WL 1240010, at *1-2 (E.D.N.Y. Aug. 29, 2000) (holding that § 2244(d)(1)(D) would not operate to save untimely ineffective assistance claim alleging "trial attorney provided ineffective assistance by failing to conduct a pretrial investigation uncovering the new evidence and allowing [medical examiner's allegedly false] testimony to go unchallenged" because this allegedly ineffective conduct occurred, and the petitioner was on notice of it, at the time of the trial); *Yekimoff v. New York State Div. of Parole*, No. 02-CIV. 8710(BSJ)(DF), 2004 WL 1542256, at *4 (S.D.N.Y. July 8, 2004) (refusing to apply § 2244(d)(1)(D) to the petitioner's claim of ineffective assistance leading up to guilty plea because factual predicate of this claim would have been evident prior to entry of plea), *supplemented*, 2004 WL 2211661 (S.D.N.Y. Oct. 4, 2004).

Likewise, there were a number of alleged deficiencies in petitioner's representation that, taking petitioner's allegations as true, would have become apparent during the 2009 plea colloquy. For instance, his attorney's alleged failure to advise him concerning his trial rights would have been evident when the judge explicitly advised petitioner that he was giving up these rights by pleading guilty at his plea colloquy. Similarly, with respect to petitioner's argument that his counsel was ineffective because he failed to warn Granados about the immigration consequences of pleading guilty, the judge expressly advised him that his guilty plea could result in his deportation. He also certainly became aware of these consequences when he was deported in 2010.[4] *See, e.g.*, *Chang-Cruz v. Hendricks*, CIV. 12-7167(KM), 2013 WL 5966420, at *3

---

[4] Additionally, petitioner appears to separately assert that his attorney was ineffective because he failed to advise Granados that he would be arrested upon reentry following his deportation. This argument is not properly before this Court because it has not been exhausted in state court. Although petitioner did assert his ineffective assistance claim in his state court petition, he did not raise this particular deficiency as a basis for his claim. "In order to have fully exhausted his claim of ineffective assistance of trial counsel for federal habeas corpus purposes, petitioner must have presented each factual contention comprising the basis for that claim to the state courts . . . . 'To have raised only certain of the alleged instances of ineffective assistance to the state courts does not satisfy the exhaustion requirements of 28 U.S.C. § 2254(b).'" *Collins v. Herbert*, 992 F. Supp. 238, 241 (W.D.N.Y. 1997) (quoting *Minor v. Henderson*, 754 F. Supp. 1010, 1020 (S.D.N.Y. 1991)). In any event, the Court rejects any argument that counsel was constitutionally

5

(D.N.J. Nov. 7, 2013) (noting that statute of limitations under AEDPA on ineffective assistance claim based on counsel's failure to advise regarding the immigration consequences of the petitioner's guilty plea would have commenced after being "instructed by the state court at the plea hearing that his guilty plea could impact his immigration status," even if the "precise legal consequences" of his guilty plea did not materialize until removal proceedings were commenced against him); *Lopez v. Endicott*, No. 06-C-0668 (WEC), 2007 WL 4410391, at *4 (E.D. Wis. Dec. 13, 2007) (same). The same analysis applies with respect to petitioner's claim that his attorney failed to advise him that he would be required to register as a sex offender, another fact of which the court advised him at the time of his plea.

Accordingly, because Granados's ineffective assistance claim was not filed within a year after his judgment of conviction became final and none of the grounds that could trigger the running of the limitation period at a later date apply, petitioner's claim is untimely.

### 2. *Brady* Claim

Petitioner also argues that he is entitled to habeas relief on the basis that the State failed to comply with its *Brady* obligations. Specifically, he alleges that the State withheld information pertaining to the medical examination of the victim that allegedly revealed that she was a virgin after the assault. This claim is, likewise, untimely.

Again, petitioner asserts this claim well after the one-year limitation period following his judgment of conviction became final. He does not allege that he was prevented from filing the claim or that there has been a recent change in the law that would have triggered the limitation period on a later date. Petitioner does not contend that he only recently became aware that the State supposedly withheld the results of the victim's medical examination. Again, an independent examination by this Court failed to find any indication that he did recently become aware of this: the Cruz affidavit is silent with respect to when the information pertaining to the examination was uncovered or communicated to petitioner. Thus, the Court has no basis to conclude that his *Brady* claim is timely under § 2244(d)(1)(D) because the allegations in the Cruz affidavit were not—and could not have been— uncovered with reasonable diligence until the year before he filed his petition.

Therefore, petitioner's *Brady* claim is likewise time-barred.

### 3. Actual Innocence Claim

As detailed above, petitioner failed to file his habeas claims within the applicable limitation period. However, in *McQuiggin v. Perkins*, the Supreme Court established that "a convincing showing of actual innocence" may "serve[] as a gateway" by which a petitioner can pursue habeas relief that would otherwise be barred by the statute of limitations. 133 S. Ct. 1924, 1928 (2013).

In establishing this exception, the Supreme Court cautioned that the standard to show an actual innocence claim is demanding; the petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.*

---

ineffective for failing to advise petitioner that he would be arrested for illegally reentering the United States after deportation.

6

at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). A claim of actual innocence must be both "'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 521 (2006)). To be credible, a claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

Petitioner rests his actual innocence claim on the affidavit prepared by his wife; however, this submission does not contain the type of credible and compelling evidence required to show actual innocence. Her affidavit is based entirely on hearsay, which makes it "particularly suspect" under the circumstances. *See Herrera v. Collins*, 113 S. Ct. 853, 869 (1993) (noting that defendant's affidavits submitted in support of his actual innocence claims were "particularly suspect" because they consisted of hearsay). Nor are her vague assertions about her niece's mental health, about which the record does not indicate Cruz has personal knowledge, the kind of concrete evidence that would cause "any reasonable juror [to] have reasonable doubt" about petitioner's guilt. *Rivas*, 687 F.3d at 543. His allegations of actual innocence are especially unconvincing in light of the fact that petitioner admitted to committing the crime, both during his initial, recorded interview by the police and then subsequently during his guilty plea. *See Herrera*, 113 S. Ct. at 869 (rejecting actual innocence argument where the petitioner provided no explanation as to why he previously pleaded guilty); *Germain v. Racette*, No. 913-CV-1530 (MAD)(DEP), 2015 WL 7709606, at *6 (N.D.N.Y. Sept. 10, 2015) (observing that entry of a knowing and voluntary guilty plea is "a fact that works against a finding of actual innocence"), *report and recommendation adopted*, No. 913-CV-1530 (MAD)(DEP), 2015 WL 7573225 (N.D.N.Y. Nov. 25, 2015). Additionally, the affidavit does not address the fact that the explicit picture of petitioner's genitalia was found on the victim's phone.

Further, the Supreme Court in *McQuiggin* also held that a petitioner is not required to prove due diligence in order to maintain a viable claim of actual innocence; however, it did note that it was error to "eliminate[] timing as a factor relevant in evaluating the reliability of a petitioner's proof of innocence." 133 S. Ct. at 1935. The Court observed that a petitioner's diligence should be part of the "assessment [of] whether actual innocence has been shown" and a delay in presenting exculpatory evidence can "seriously undermine the credibility of [an] actual innocence claim." *Id.* at 1935-36.

Petitioner's contentions of actual innocence are also undermined by the fact that, though he was supposedly not guilty, he took no effort to appeal his conviction for five years. This delay is especially damaging to petitioner's claim because there is nothing in the Cruz affidavit to suggest that some or all of that information was not available many years ago (for instance, as alleged, the medical examination can be reasonably inferred to have occurred around the time of the assault) or that Granados could not have uncovered it with reasonable diligence. Nor does Granados even claim that he only recently became aware of it. As noted,

7

although Granados is not required to prove diligence to maintain his actual innocence claim, the fact that he took no effort for many years to obtain this supposedly exculpatory evidence that he could have uncovered with reasonable diligence several years earlier further undermines his claim of actual innocence.

b. Equitable Tolling

Although the instant petition is untimely, in "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must make two showings: (1) he must demonstrate that "extraordinary circumstances prevented him from filing his petition on time"; and (2) he must have "acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17 (citation omitted). The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005); *Muller v. Greiner*, 139 F. App'x 344, 345 (2d Cir. 2005).

Here, petitioner cannot satisfy either prong. He does not identify any extraordinary circumstances that prevented him from timely filing his petition, nor has the Court located any such circumstances in its review of the record. Further, as described more fully above, there is no evidence that Granados did anything to pursue his claim in the five-year period between his conviction and his state court appeal. *See Cruz v. McGinnis*, No. 11-CV-3442 (JG), 2011 WL 5848579, at *6 (E.D.N.Y. Nov. 22, 2011) (holding that a "long" three-year "period of inaction reveals that [the petitioner] did not diligently pursue his rights, making equitable tolling inappropriate"); *Morton v. Ercole*, No. 08 CIV. 0252 (RJS)(FM), 2010 WL 890036, at *2 (S.D.N.Y. Mar. 10, 2010) ("Courts generally have found that periods of delay lasting for more than a year do not exhibit due diligence."). Accordingly, the Court concludes that Granados is not entitled to equitable tolling.

III. CONCLUSION

For the reasons stated above, respondents' motion to dismiss is granted in its entirety.[5]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 24, 2016
Central Islip, NY

\*\*\*

Petitioner is represented by Thomas F. Liotti, Law Offices of Thomas F. Liotti, 600 Old Country Road, Suite 530, Garden City, NY 11530. Respondents are represented by Monica Marie Cullen Leiter, Nassau County District Attorneys Office, 262 Old Country Road, Mineola, NY 11501.

---

[5] Petitioner also challenges his guilty plea on the ground that the plea court failed to advise him of the consequences of his plea as required by the New York Court of Appeals in *People v. Peque*, 22 N.Y.3d 168 (2013). However, this claim is factually untenable and provides no basis for habeas relief in this case. As indicated above, petitioner was expressly advised at his plea colloquy that his guilty plea could result in his deportation.

8